

**John C. Tilley**
Justice and Public Safety Cabinet
Secretary

**Matthew G. Bevin**
Governor

# KENTUCKY STATE POLICE
**919 VERSAILLES ROAD**
**FRANKFORT, KY  40601**
www.kentuckystatepolice.org
Custodian of Records Phone: (502) 782-1786
Custodian of Records Fax: (502) 573-1636

**Richard W. Sanders**
Commissioner

September 20, 2016

Jonathan C. Shaw, Esq.
Porter Banks Baldwin & Shaw
PO Box 1767
Paintsville, KY 41240-1767

RE:  Open Records Request (16-1581)

Dear Mr. Shaw:

You requested a copy of Kentucky State Police case 14-15-0262 pertaining to the death of Billy Collins Jr., pursuant to the provisions of the Kentucky Open Records Act. Your payment of $26.00 has been received and the records are enclosed.

In accordance with KRS 61.880, if you so request, the Attorney General will review this action and issue a written opinion to this agency stating whether we have acted consistently with the provisions of the Kentucky Open Records Act.

If the Kentucky State Police can assist you further please let me know.

Sincerely,

Emily M. Perkins
Official Custodian of Records
Legal Services Branch

Enclosure



KentuckyUnbridledSpirit.com

An Equal Opportunity Employer M/F/D

# KYIBRS REPORT
## COMMONWEALTH OF KENTUCKY



**KSP RECORDS**

### ADMINISTRATIVE

| AGENCY ORI/NAME   **KSP1400 KY STATE POLICE, POST 14** | | | | INCIDENT NUMBER   **KY 14-15-0262** | | | |
|---|---|---|---|---|---|---|---|
| INCIDENT DATE/TIME | | EXACT/ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | CLEARED |
| **05/29/2015 20:30 TO 05/29/2015 21:31** | | **ESTIMATE** | **05/29/2015** | **21:31** | **22:12** | **23:01** | **02:35** |

| REPORTED BY:  **FUGITT, GREG** | HOW REPORTED |
|---|---|
| LICENSE/ID STATE:          LICENSE/ID NUMBER: | **OTHER AGENCY** |

ADDRESS:  **215 NORTH MAIN CROSS ST**

| CITY: | STATE:  **KY** | ZIP CODE:  **41230** | PHONE NUMBER: |
|---|---|---|---|

| EXACT LOCATION OF OFFENSE | **LOUISA POLICE DEPARTMENT** | | | SECTOR NO: |
|---|---|---|---|---|
| | ADDRESS:  **215 NORTH MAIN CROSS ST ST E** | | | |
| | CITY:   **LOUISA** | | STATE:  **KY**   ZIP CODE:  **41230** | |
| | COUNTY: **LAWRENCE** | LATITUDE  **38 DEG**   **7.021 MIN** | LONGITUDE  **82 DEG**   **36.257 MIN** | |

### OFFENSE DATA

| SEQUENCE #   **1**   OF   **1** | LOCATION TYPE:  **GOVERNMENT/PUBLIC BUILDING** | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|
| OFFENSE DESCRIPTION:  **DEATH INVESTIGATION** | | | |

| OFFENSE CODE: **03009** | ASCF CODE: **0** | KRS CODE: ***.*** | CLASS: | DEGREE: **O** | COUNTS: **1** | | |
|---|---|---|---|---|---|---|---|
| BIAS MOTIVATION:  **NONE (NO BIAS)** | | | METHOD ENTRY: | NUMBER PREMISES: | | | |
| SCHOOL NAME: | | | | SCHOOL TYPE | | CAMPUS? | |
| OFFENDER SUSPECTED OF USING:  **DRUGS/NARCOTICS** | | | | COURT ORDER TYPE: | | | |

| SEQUENCE #   OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|
| OFFENSE DESCRIPTION: | | | |

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: | | |
|---|---|---|---|---|---|---|---|
| BIAS MOTIVATION: | | | METHOD ENTRY: | NUMBER PREMISES: | | | |
| SCHOOL NAME: | | | | SCHOOL TYPE: | | CAMPUS? | |
| OFFENDER SUSPECTED OF USING: | | | | COURT ORDER TYPE: | | | |

| SEQUENCE #   OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|
| OFFENSE DESCRIPTION: | | | |

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: | | |
|---|---|---|---|---|---|---|---|
| BIAS MOTIVATION: | | | METHOD ENTRY: | NUMBER PREMISES: | | | |
| SCHOOL NAME: | | | | SCHOOL TYPE | | CAMPUS? | |
| OFFENDER SUSPECTED OF USING: | | | | COURT ORDER TYPE: | | | |

### PROPERTY DATA

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| | | | | | | |

**GENERAL**

| PROPERTY DESCRIPTION | | | | | |
|---|---|---|---|---|---|
| OWNER APPLED NUMBER | | SERIAL NUMBER | | | |
| MAKE | | MODEL | | | OWNER |

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| | | | | | | |

**GENERAL**

| PROPERTY DESCRIPTION | | | | | |
|---|---|---|---|---|---|
| OWNER APPLED NUMBER | | SERIAL NUMBER | | | |
| MAKE | | MODEL | | | OWNER |

| TOTAL STOLEN VALUE:  **$0.00** | TOTAL RECOVERED VALUE:  **$0.00** | TOTAL VEHICLES STOLEN:  **0** | TOTAL VEHICLES RECOVERED:  **0** |
|---|---|---|---|

### STATUS

| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY |
|---|---|---|---|---|---|
| **OPEN** ^ | | | | | YES ☐ |

| SUBMITTING OFFICER | INVESTIGATING OFFICER | UNIT/BADGE # | REVIEWED BY | TIME SPENT |
|---|---|---|---|---|
| **C CARTER** | **C CARTER** | **701** | **B CRAMER** | **8 hrs** |

# KYIBRS REPORT
## COMMONWEALTH OF KENTUCKY

**KSP RECORDS**

### VICTIM DATA

| VICTIM SEQUENCE | VICTIM NAME | PHONE |
|---|---|---|
| 1 of 1 | COLLINS, BILLY J JR | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

| Address Unknown ☐ ADDRESS: | | VICTIM TYPE: INDIVID |
|---|---|---|

| CITY: LOUISA | STATE: KY | ZIP CODE: 41230 | KY RESIDENT: RESIDENT |
|---|---|---|---|

| DATE OF BIRTH: | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER |
|---|---|---|---|
| MALE | WHITE | NOT HISPANIC | YES ☐ |

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| VICTIM OF OFFENSE(S) | AGG ASSAULT/ HOMICIDE CIRC | ADDTL JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| 03009 | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|
| | |

### SUSPECT/ARRESTEE DATA

| SUSPECT SEQ. # | NAME: | ARRESTED? | ARREST DATE |
|---|---|---|---|
| of | ALIAS: | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | | | |
|---|---|---|---|---|---|---|---|---|
| of | | | 1 | | 4 | | 8 | |
| | ARRESTEE ARMED WITH | | 2 | | 5 | | 7 | |
| | | | 3 | | 6 | | 9 | |

### SUSPECT/ARRESTEE DATA

| SUSPECT SEQ. # | NAME: | ARRESTED? | ARREST DATE |
|---|---|---|---|
| of | ALIAS: | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | | | |
|---|---|---|---|---|---|---|---|---|
| of | | | 1 | | 4 | | 7 | |
| | ARRESTEE ARMED WITH | | 2 | | 5 | | 8 | |
| | | | 3 | | 6 | | 9 | |

### WITNESS DATA

| WITNESS SEQUENCE | WITNESS NAME | PHONE |
|---|---|---|
| of | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: | DATE OF BIRTH |
|---|---|

| CITY: | STATE: | ZIP CODE: | SSN: |
|---|---|---|---|

## KYLE'S REPORT: UOR2 SUPPLEMENT

**KSP RECORDS**

### COMMONWEALTH OF KENTUCKY

**SYNOPSIS:**

On Friday, May 29, 2015 at approximately 2212 hours, I was contacted via telephone by Sgt. J. Goble, Unit 164. Sgt. Goble told me Kentucky State Police Post 14 had been contacted by Chief Greg Fugitt with the Louisa Police Department in reference to a deceased male. Sgt. Goble told me I would be the lead investigator on this incident.

The preliminary results of this investigation revealed Billy J. Collins Jr, DOB:                   had been arrested earlier that evening by Sgt. Steven Wilburn, Unit 523. Mr. Collins had been transported to Louisa Police Department post-arrest for processing where he became combative and barricaded himself inside the police department. Force was used against Collins to attempt to bring him under control. The officers who used force against Collins were Sgt. Steven Wilburn, Unit 523, Officer Jordan Miller, Unit 322, Deputy Mason Keefer, Unit 732 and Deputy Douglas Wilhite Jr, Unit 220. The deputies are employed by the Lawrence County Sheriff's Office.

I was able to determine after a short stand-off with Collins, he was taken back into custody after at which times he began to show signs of a medical emergency. Netcare EMS was dispatched to the scene and administered care to Collins until he was transported to Three Rivers Medical Center where he was pronounced dead by Coroner Mike Wilson at 2227 hours.

An autopsy was conducted on Saturday, May 30, 2015 at the Kentucky Medical Examiner's Office in Frankfort, Kentucky by Dr. Bill Ralston. Preliminary findings conclude Collins' cause of death was due to a cardiac event with manner of death pending further investigation.

Preliminary results of this investigation suggests no laws were violated by any officer involved in this incident. I am reviewing all evidence, including video, audio, physical items, and interviews I have conducted. I am reviewing agency policies, response to resistance procedures of both agencies and agency officer's conduct. My training and experience, combined with the evidence indicates officers did not violate Collins' civil rights, or use excess force against Collins during the stand-off.

This investigation is currently on-going and incomplete at this time.

**MODUS OPERANDI:**
Billy J. Collins Jr, DOB:                   was arrested on Friday, May 29, 2015 by Louisa Police Department. While in custody, Collins initiated not only a physical altercation but also a barricade/stand-off incident with law enforcement where force was applied to gain control. During the incident Collins' suffered from a medical emergency and died shortly thereafter.

**DATE & TIME OF OCCURRENCE:**
Friday, May 29, 2015 from approximately 2030 hours to 2131 hours.

**ACCUSED:**
NONE

**SUSPECTS:**
** OFFICERS ARE LISTED AS WITNESSES AT THIS TIME

**STOLEN PROPERTY:**
NONE

## KY**RS REPORT: UOR2 SUPPL**ENT

**KSP RECORDS**

### COMMONWEALTH OF KENTUCKY

*OTHER PROPERTY:*
NONE

*EVIDENCE & HOW MARKED:*
SEE ATTACHED EVIDENCE SHEET

*EVIDENCE DISPOSITION:*
Stored at Post 14 as evidence.

*INVESTIGATION:*
SEE ATTACHED INVESTIGATION

*STATUS OF CASE:*
OPEN

*ATTACHMENT*
Photos
Interviews
KSP - 41's
Video/Audio Recordings
Police documents

## KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

**ORI:**   **KYKSP1400**                                    Incident Number:   **14-15-0262**

**Offense(s):**   **Death Investigation**

### INVESTIGATION

**INVESTIGATION:**

**Friday, May 29, 2015; 2212 Hours: Notification of complaint.**

At approximately 2212 hours, I was contacted via telephone by Sgt. J. Goble, Unit 164. Sgt. Goble told me Kentucky State Police Post 14 had been contacted by Chief Greg Fugitt with the Louisa Police Department in reference to a deceased male. Sgt. Goble told me I would be the lead investigator on this incident.

**Friday, May 29, 2015; 2301 Hours: Arrival at Three Rivers Medical Center.**

At approximately 2301 hours, I arrived at the Three Rivers Medical Center. I observed Sgt. E. Kouns, Unit 162 and Tpr. J. Moore, Unit 854 were already at the emergency room. Sgt. Kouns told me the Coroner Mike Wilson had been contacted and there were family members inside the room where the deceased was located. Tpr. Moore told me he had taken photos of the deceased with his issued camera. I have attached the photos to this investigation. I began taking photographs of the deceased who was lying on his back. I observed what appeared to be superficial injuries on his head, upper torso and arms. A nurse came into the room and told me hospital staff had taken a rectal temperature upon Collins' arrival and noted it was 101 degrees. I was told by Sgt. Kouns the Netcare EMS staff was still on scene and ready to be interviewed. A nurse handed me a bag of personal belongings owned by Collins. The bag contained one pair of denim pants, one zippo holster, one brown belt and one pocket watch. I collected this as Item 17 at 2330hrs. (See Evidence Log)

**Friday, May 29, 2015; 2315 Hours: Netcare EMS Staff Interviews.**

Christopher Salyers
Netcare EMT
DOB:


At approximately 2315 hours I began an audio recorded interview with Christopher Saylers, DOB:             in a consultation room at TRMC. I asked Salyers to explain how he was

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | _(initials)_ |
|---|---|---|---|---|
| Officer Making Report | Badge No. | Time Spent | Date | Reviewed By |

14-15-0262 -15

## KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

**ORI:**   **KYKSP1400**                                      **Incident Number:**   **14-15-0262**

**Offense(s):**   **Death Investigation**

notified to respond to Louisa Police Department in reference to Collins and what he observed. Saylers told me they were dispatched to respond to the Louisa Police Department and that was the only information they had at that time. Salyers said he contacted the Lawrence County 911 Center for further information. Salyers said he was told an individual "got pretty rough" with officers at the police department and barricaded himself. Salyers said he "guessed" all four "went in" on Collins. Salyers said two EMS units responded to the police department and while on the way they were told to "step it up" because CPR was being performed on Collins at that time. Salyers said when he arrived on scene he observed Collins lying on his back in the hallway of the police department. Salyers said the fire chief and a couple of firemen were performing CPR on Collins. Salyers said they EMS took over and began adminstering care to Collins. Salyers said he asked Chief Fugitt what had happened and he responded Collins had gotten "rough" with them and someone had tased him two times. I asked Salyers if any officers made any statements and he said they did not. Salyers said Chief Fugitt was the only police officer who made the statement he was tased two times and then collapsed. I asked Salyers what Collins' status was when he arrived and he responded Collins was deceased. Salyers had no further information. I concluded the interview at 2318 hours.

Jonathan Williams
Netcare Paramedic
DOB:


At approximately 2320 hours I intiated an audio recorded interview with Jonathan Williams, DOB:              at the same location.  I asked Williams to explain how he was notified to respond to the police department and what he observed. Williams said they received the call to respond to the Louisa Police Department. Williams said during the response they were instructed to "step it up" due to the patient being in cardiac arrest. Williams said he arrived at the police department and observed Collins lying in a small corridor near the foyer of the police department. Williams said Collins was in cardiac arrest and CPR was in progress. Williams told me Collins was lying on his back at that time and he observed discoloration indicative of cardiac arrest. I asked Williams if any officers made statements to him. Williams said when he asked what happened he was told Collins had been "tased". Williams said he overheard Chief Fugitt say Collins had been tased. Williams had no further information. I concluded the interview at 2322 hours.


| Det. Chris Carter | 701 | 8hrs | 06/30/15 | 164 |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |

14-15-0262 _06

## KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

**ORI:**   **KYKSP1400**                        **Incident Number:**   **14-15-0262**

**Offense(s):**   **Death Investigation**


Thomas Jarvis
Netcare EMT


At approximately 2325 hours I initiated an audio recorded interview with Thomas Jarvis, DOB: at the same location. I asked Jarvis how he was notified to respond to Louisa Police Department and what he observed. Jarvis told me told to respond to the police department for a unknown reason. Jarvis said while they were responding they were told to run "code" to the police department. Jarvis said he made entry first and observed Collins lying on the floor with the fire department performing CPR. Jarvis said Collins was lying on his back. Jarvis said Collins was deceased upon arrival. I asked Jarvis if he heard anyone make any statements and said replied he did not. I asked Jarvis if he observed anything else and he told me he observed "taser prongs" on Collins' right side. I concluded the interview at 2327 hours.

Michael Akers
Netcare EMT
DOB:


At approximately 2318 hours I initiated an audio recorded interview with Michael Akers, DOB: at the same location. I asked Akers how he was notified to respond to the Louisa Police Department and what he observed. Akers said he was dispatched to the police department for an "unknown cause/problem". Akers said upon arrival he observed a male lying on his back in the small front corridor of the police department. Akers said Collins was blue from the neck up. Akers said he started ventilation on Collins, rolled him over and continued compressions. Akers said Collins was then placed on a stretcher, then placed into the ambulance. I asked Akers if any police officers made statements to him and he said they did not. I asked Akers if Collins was alive or deceased when he arrived. He described Collins as "very lifeless". I asked Akers if he noticed anything suspicious and he said nothing other than the "taser barbs" and handcuff key which was located underneath him. Akers had no further information and I concluded the interview at 2330 hours.


| Det. Chris Carter | 701 | 8hrs | 06/30/15 | 164 |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |

## KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

**ORI:**   **KYKSP1400**                                **Incident Number:**   **14-15-0262**

**Offense(s):**   **Death Investigation**

After I concluded the interviews with the EMS staff I observed Lawrence County Coroner Mike Wilson on scene. Coroner Wilson told me he had pronounced Mr. Collins deceased at 2227 hours. Wilson told me he had scheduled an autopsy to be performed at the Kentucky Medical Examiner's Office in Frankfort the next day at 1300 hours. Coroner Wilson removed the deceased from the hospital to Wilson's Funeral Home in Louisa, Kentucky to prepare him to transport.

After Wilson removed the body I observed a taser barb with the wire still intact. I collected this item at 2330 hours and listed it as Item 1. Sgt. Kouns told me Trooper D. Vossmer, Unit 383 was currently standing by at the Louisa Police Department conserving the scene.

**Friday, May 29, 2015; 2359 Hours: Arrival at Louisa Police Department/Scene Processing.**

At approximately 2359 hours, I arrived at the Louisa Police Department. I observed Tpr. Vossmer on scene. I also spoke with Louisa City Attorney Eldrick Adams who told me the chief and officers involved where waiting inside the police department. I observed the scene. Tpr. Vossmer told me the scene had been undisturbed from the time he had arrived. I entered the police department through the front door and observed Chief Fugitt, Sgt. Steven Wilburn, Unit 523 and Officer Jordan Miller, Unit 322 standing inside the office. I told the officers I needed to process the scene and collect evidence prior to interviewing them. All officers agreed to standby until scene processing was complete.

At approximately 0020 hours, I began to inspect the scene. I began taking photographs of the entire area. I observed a deployed/spent taser cartridge on the entrance ramp with no barbs attached. I collected this as Item 2 at 0034hrs. I observed a deployed/spent taser cartridge lying on the banister at the ramp with no barbs intact. I collected this as item 3 at 0037hrs. Inside the foyer area I observed a taser barb I collected as Item 4 at 0039hrs. I observed eight pieces of taser wire with no barbs intact in the center of the foyer area. I collected these as Item 5 at 0041hrs. I observed a deployed/spent taser cartridge lying in the floor of the booking area with wires intact extending into the foyer, no barbs intact. I collected this as item 6 at 0043 hours. I observed one taser wire near the City Hall door/entrance and collected it as Item 7 at 0044hrs. I observed one taser barb located behind the foyer door/exit and collected it as Item 8

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | ᏞᏫᎢ |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |

## KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

**ORI:** **KYKSP1400**                    Incident Number:    **14-15-0262**

**Offense(s):**    **Death Investigation**

at 0046hrs. I observed a piece of whistle chain and a handcuff key located in the foyer area. I collected these as Item 9 at 0048hrs. I observed one black baseball cap, one pair of flipflop sandals, and one taser wire located in the foyer area. I collected these as Item 10 at 0051hrs. I observed a slightly long piece of whistle chain located another piece of whistle chain on the floor near Item 10. I collected it as Item 11 at 0054hrs. I observed a small piece of whistle chain located on a shelf inside the foyer. I collected it as Item 12 at 0054hrs. I observed a pair of black gloves, one pair of steel hinge handcuffs and one pair of black ASP handcuffs in the booking area used during the standoff with Collins. I collected these as Item 13 at 0056hrs. This concluded scene processing.

I returned to the office area where the officers were still waiting. I took photos of Sgt. Wilburn and Officer Miller and asked both officers if either of them had sustained injuries. Wilburn told me he had sustained a minor cut on his hand, along with minor scratches/abrasions. Miller did not indicate he had been injured. I have attached the photos to this investigation.

### Saturday, May 30, 2015; 0110 Hours: Louisa Police Officer's Interviews.

Steven Wilburn
Louisa Police Sergeant, Unit 523
DOB:

At approximately 0110 hours I initiated an audio recorded interview with Sgt. Steven Wilburn, DOB:                at Louisa City Hall. Investigative Lieutenant Scott Felder, Unit 72 was also present. I told Sgt. Wilburn he was voluntarily speaking with me and he agreed to continue. I asked Wilburn how he came to come into contact with Collins. Wilburn told me he was sitting at the Lawrence County High School watching traffic to ensure everyone was leaving safely from the graduation ceremony. Wilburn said Chief Fugitt notified him via radio about a truck that had traveled down the hill behind the high school and gotten stuck in a ditch. Wilburn told me Collins had just gotten out of the vehicle when he arrived. Wilburn said he began speaking with Collins. Wilburn learned Collins' Kentucky operators license were suspended, as well as Collins had no insurance on the vehicle he was operating. Wilburn said there were people handing out bibles at the conclusion of the graduation and Collins began screaming and cursing at those people. Wilburn told me he was able to calm Collins down and have him walk over and get into his patrol vehicle. Wilburn said he did not handcuff Collins because of prior encounters with him. Wilburn said when he had interacted with Collins in the past, if he was

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |



**KENTUCKY STATE POLICE**
**KYIBRS SUPPLEMENTARY REPORT**

ORI:    **KYKSP1400**                                    Incident Number:    <u>14-15-0262</u>

Offense(s):    <u>Death Investigation</u>

handcuffed he became combative.

Wilburn said Collins was calm post-arrest, and transported to the Louisa Police Department without incident. Wilburn said he opened the door of his patrol car and asked Collins to exit. Wilburn said Collins refused to exit and told me he wanted to sit in the vehicle. Wilburn told me he told Collins he would have to come inside the police department. Wilburn said Collins told him he wanted to stay inside the vehicle because it was cooler. Wilburn said he told Collins the vehicle was no longer running and it would become hot quickly. He told Collins it would be cooler inside the police department and he wanted him to come inside so he could do his paperwork (processing for jailer). Wilburn said Collins said something to the effect of "Fuck you motherfucker, I guess I'll go." Wilburn said Collins exited the vehicle and he began to tell him to calm down. Wilburn said he and Collins walked up the ramp to the back door of the police department and as he opened the door, Collins grabbed on to the banister of the ramp. Wilburn said Collins began cursing at people walking across the street in the area of Giovanni's Pizza. Wilburn said he activated his body camera at that time. Wilburn explained he knew he was going to have to go "hands on" with Collins due to his behavior. Wilburn told me he ordered Collins to stop cursing and to let go of the banister. Wilburn explained he attempted to pull Collins backward and he "tensed up" and tightened his grip. Wilburn said he attempted to handcuff Collins' left hand. Wilburn told me he was able to get the handcuff latched but not secured completely. Wilburn told me he continued to struggle with Collins until he got the handcuff secured and he thought that was how he injured his finger. Wilburn said his handcuffs were the stainless steel hinged handcuffs. Wilburn said Collins "yanked" away again and he told him if he didn't let go of the banister he was going to "tase" him. Wilburn told me Officer Miller arrived at that point as he continued to struggle with Collins. Wilburn said Collins had the handcuff in a position he could not control or gain leverage. Wilburn told me he disengaged and let go of Collins so he could equip his taser and remove the cartridge. Wilburn said Miller began walking up the ramp at that time as he was telling him repeatedly he was going to tase him if he did not comply with his orders and let go of the banister. Wilburn told me Collins remained combative and told him he was getting "pissed off" and he wasn't going to like it or it was going to "get bad". Wilburn said he administered a "drive stun" to Collins left upper shoulder area. Wilburn told me Collins released the banister and attempted to strike his face which was not successful. Wilburn said Collins struck him in the chest and knocked him backward. Wilburn told me he observed Officer Miller equip his taser and deployed it into Collins' right side. Wilburn said he attempted to grab Collins and ended up behind him on the opposite side of the door toward Pike Street. Wilburn told me Collins got into the open door of

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | [initials] |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |



**KENTUCKY STATE POLICE**
**KYIBRS SUPPLEMENTARY REPORT**

ORI:  **KYKSP1400**                                    Incident Number:    **14-15-0262**

Offense(s):    **Death Investigation**

the police department at that time and barricaded himself in the foyer area.

Wilburn said he attempted to push the door open but Collins was pushing against the door as well. Wilburn told me he observed Collins removing the taser barbs during that time. Wilburn was not sure if Collins removed the barbs while he was entering the door or after he had barricaded. Wilburn said he began to hit the door in an attempt to force entry. Wilburn said he observed Deputy Mason Keefer arrive at that point. Wilburn told me he explained to Keefer what had occurred and they developed a plan where Wilburn would open the door enough so that Keefer could deploy taser through the crack created by Wilburn. Wilburn said he was able to force the door open approximately 12 inches and Deputy Keefer deployed taser at that time. Wilburn said Keefer's taser did make contact with Collins' body. Wilburn described the contact as a "small spread on his stomach". Wilburn told me Collins slammed the door back with one hand, stepped back and was attempting to pull the barbs out with the other hand. Wilburn said Collins then placed his body against the door and tried to rip the wires apart since he was unsuccessful at removing the taser barbs. Wilburn told me he observed blood on Collins' stomach at that time. Wilburn said Deputy Wilhite had arrived on scene by that time. Wilburn said he remembered he had a key to the back door of the police department so he entered through that door.

Wilburn said his plan was to tase him in the back to pull him off the door so the other officers could gain entry and take Collins back into custody. Wilburn told me he came through the back door and at that time Chief Fugitt asked for an update by radio and he was able to update him on the situation. Wilburn said he checked the monitor in the foyer area and observed Collins still pressed against the exterior door of the foyer. Wilburn told me he replaced the taser cartridge he had removed to perform the drive stun and opened the door to the foyer area. Wilburn said he deployed his taser and struck Collins in the back near the spine. Wilburn said Collins released the door and turned toward him while the other officers made entry. Wilburn explained Collins was given verbal commands to get on the ground and continued to remain combative. Wilburn said he deployed another cycle on the taser. Wilburn told me one officer gave baton strikes to the leg to enable him to take Collins to the ground. Wilburn said after Collins was placed on the ground he was still resisting arrest by refusing to give officers to hands to be handcuffed. Wilburn told me he deployed another cycle on his taser while giving orders for Collins to bring his hands out from under his body to be handcuffed. Wilburn said Keefer was able to get ahold of the left hand which was already handcuffed and pulled it behind his back. Wilburn told me Officer Miller was able to gain control of Collins' right arm and

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | 1w-l |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |



# KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

**ORI:**   **KYKSP1400**                                    **Incident Number:**   **14-15-0262**

**Offense(s):**   **Death Investigation**

pulled it behind his back. Wilburn said Collins was still uncooperative so Miller handcuffed his right hand with his handcuffs and then attached those handcuffs to Wilburn's handcuffs which were already attached to Collins' left hand. Wilburn said he stepped back and observed he had blood on his hands and observed blood in the floor and on Collins so he contacted dispatch and requested EMS. Wilburn told me he told dispatch they had multiple taser deployments. Wilburn said Collins was still "kind of kicking around" and he placed his foot on his leg to keep him from kicking.

Wilburn said Keefer told him he had blood all over him and told him to clean himself up. Wilburn told me he walked back through the police department trying to clean himself and bandage his hand when the Chief arrived. Wilburn said he observed Collins resting upright against the wall in a seated position. Wilburn told me Collins was still mumbling and moving around. Wilburn said he stepped outside to speak with the Chief when he heard someone say they didn't think Collins was breathing. Wilburn told me the fire department chief began CPR. Wilburn said Netcare EMS arrived shortly after and transported him to TRMC.

I asked Wilburn how many times he thought he had tased Collins and he said approximately three times and drive stunned approximately two to three times. Wilburn told me he thought Deputy Keefer may have cycled his taser three times. Wilburn said the only force he used against Collins was trying to control him to be handcuffed and the taser usage. Wilburn told me when Collins was arrested for Disorderly Conduct he was told several times to stop his behavior and continued to persist and that's when he was arrested. I asked Wilburn if there was any alcohol involved and he responded that he tried to perform field sobriety tests on Collins at the high school but he was uncooperative. Wilburn told me there were empty beer bottles in the back of the truck and a bucket of beer on ice inside the truck. Wilburn said Collins told him he had not been drinking alcohol and agreed to submit to a Preliminary Breath Test which did not indicate the presence of alcohol. Wilburn told me he did not suspect Collins to be under the influence of alcohol. Wilburn said Collins was on medication for mental issues; however, he was unsure of his diagnosis. Wilburn explained they had dealt with him on prior incidents where he has refused to take his medication and exhibits similar behavior. Wilburn said a "be on the look out" call had been issued on his vehicle recently due to his ex-wife calling in a complaint in reference to Collins having an "episode" and she was afraid he was going to harm someone or himself. Wilburn told me units were unable to locate him. I asked Wilburn why Collins was not initially handcuffed and he said he had just calmed him post-arrest and he knew if he attempted to handcuff him it would agitate him so he did not apply

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | لول |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |

14-15-0262 -12



**KENTUCKY STATE POLICE**
**KYIBRS SUPPLEMENTARY REPORT**

ORI:   **KYKSP1400**                                    Incident Number:   **14-15-0262**

Offense(s):   **Death Investigation**

handcuffs. Wilburn said Collins was calm when he entered his patrol vehicle and calm the entire time he was transported until he reached the police department. Sgt. Wilburn had no further information. I concluded the interview at 0124 hours.


Jordan Miller
Louisa Police Officer, Unit 322
DOB:

At approximately 0128 hours I initiated an audio recorded interview with Officer Thaddius Jordan David Miller, DOB:                    . Officer Miller agreed to participate in voluntarily giving a statement in reference to the incident. Lt. S. Felder, Unit 72 was also present. I asked Miller to begin with how he came into contact with Collins. Miller said he began responding to the Louisa Police Department after Wilburn had arrested Collins because he tends to "buck up" every now and then. Miller told me he was passing the Dollar General Store when Wilburn contacted him via radio to ensure he was on his way. Miller said when he arrived at the police department he observed Collins hanging on to the banister of the entrance ramp. Miller said he could also hear Collins yelling and screaming at Wilburn. Miller told me he exited his vehicle and Collins says "get this mf'er off me". Miller said he asked Collins to go inside the police department. Miller explained he and Wilburn asked Collins multiple times to go inside the police department. Miller said he heard Wilburn warn Collins several times if he did not comply he would be tased. Miller told me Wilburn drive stunned Collins in the neck for three to four seconds which was ineffective. Miller said Collins then threw a punch which appeared to strike Wilburn in the chest. Miller told me he then equipped his taser and deployed it in the direction of Collins which made contact. Miller said this was also ineffective. Miller said Collins yelled and pulled the wires out, unsure if the barbs came out with the wires.

Miller said Collins then barricaded himself in the foyer area of the police department. Miller said Wilburn radioed for backup and Deputies M. Keefer, Unit 732  and D. Wilhite, Unit 220 arrived shortly thereafter. Miller said after the deputies arrived, Wilburn said he remembered having a key to the back door of the police department. Miller said Wilburn told them he was going to go inside the back way and surprise Collins from behind. Miller said as he waited for Wilburn to make his way through the rear door he equipped his asp baton. Miller said Wilburn opens to the door and deploys his taser which was effective enough to force Collins to release the door for the officers to make entry. Miller said he struck Collins at least two to three times

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | (64 |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |

## KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

**ORI:** **KYKSP1400**                    **Incident Number:** **14-15-0262**

**Offense(s):** **Death Investigation**

with his asp baton to his body. Miller said he and the deputies took Collins to the ground. He observed Collins was already handcuffed on his left hand, so they began working on getting his arms out from under his body. Miller said while Collins was still refusing to comply and be handcuffed he delivered "several" closed empty hand strikes to Collins' back in order to achieve compliance. Miller told me Keefer was able to get Collins' left hand free and placed it behind his back. Miller said he grabbed the left and hand and pulled out his handcuffs and locked them into Wilburn's handcuffs.

Miller described his handcuffs as black ASP handcuffs. Miller said after Collins was secured he holstered his asp baton and began searching for a towel for Keefer to clean blood that was on him. Millers told me Collins was still making sounds at that point. Miller said he found some tissue paper and gave it to Keefer. Miller explained by that time Collins had already been rolled onto his buttocks and was in a seated position. Miller said after that, someone said Collins didn't appear to be responsive. I asked Miller if Collins was saying anything during that time and Miller replied after Collins was secured he said nothing other than groans. Miller told me Chief Fugitt came into the room and adminstered a sternum rub which was not succesful. Miller said EMS was already en route at that time.

I asked Miller what different types of physical force he used on Collins and he replied Taser deployment, asp baton strikes (opened) and closed empty hand strikes. Miller said he struck Collins in the upper body with the baton. I asked Miller if he felt those strikes were effective and he responded he didn't know, he was just trying to get Collins onto the ground due to how combative he was at that time. Miller told me the only thing he used his baton for after he delivered the strikes was attempted to use it as a pry bar to pry Collins right arm out from under him which was not effective. Miller said he "tucked" his baton under his right knee when he began delivering closed hand strikes. Miller told me he gave the closed hand strikes to Collins lower back/rib area on the right side. Miller said he delivered two to three closed hand strikes which he felt were potentially effective. I asked Miller how Collins was brought to the ground when they made entry and he said he did not know exactly. Lt. Felder asked Miller if the door to the police department was locked when Collins was grabbed onto the railing of the ramp and Miller said he did not know. Miller told me the foyer door is always open/unlocked. Felder asked Miller at what point was Collins able to barricade inside the foyer. Miller said Collins barricaded after he broke the leads/wires from his taser deployment. Miller said it was unclear to him how Collins gained entry into the foyer. I asked Miller how the foyer door got damaged and he replied they had tried to make entry before backup arrived but could not

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | 164 |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |

## KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

**ORI:**   **KYKSP1400**                                          **Incident Number:**   **14-15-0262**

**Offense(s):**   **Death Investigation**

defeat Collins hold. Felder asked Miller if they had fear of Collins obtaining police weapons from inside the police department and Miller replied if Collins could have gotten the interior door open he could have forced his way into the department's weapon locker and obtained a firearm. I asked Miller if the door into the department was closed and locked and he said he did not know but the door is usually locked and secure. Miller had no further information so I concluded the interview at 0142 hours.

Prior to leaving the police department I was able to obtain the officer's response to resistance reports, body camera footage and taser information downloads. I also took photos of the tasers; however, I did not collect the tasers as evidence due to the Louisa Police Department's limited resources/equipment.

### Saturday, May 30, 2015; 0201 Hours: Sheriff's Deputies Interviews at LCSO.

Mason Keefer
Sheriff's Deputy, Unit 732
DOB:

At approximately 0201 hours I initiated an audio recorded interview with Deputy Mason Keefer, DOB:                       with the Lawrence County Sheriff's Department. I utilized their interview room for this process. Also present was Lt. Felder. I told Keefer he was partipation in the interview was voluntary and he agreed to speak with me. I asked Keefer to explain how he came to have contact with Collins. Keefer told me he heard Wilburn take Collins in custody while he was at the Sheriff's Office. Keefer said he also heard Wilburn ask for Officer Miller to respond as well. Keefer said he could hear Collins in the background of the radio traffic so he knew something was "up". Keefer told me he started out the back door of the Sheriff's Office and by the time he reached Kelly Brother's Furniture he heard Wilburn screaming into the radio for backup. Keefer said he couldn't make out exactly what Wilburn was saying. Keefer said when he arrived he observed Collins barricaded inside the foyer area of the police department. Keefer told me he observed Collins was bleeding and he saw blood on the walls. Keefer said it appeared to him that Wilburn had cut his finger. Keefer explained he was told Collins had barricaded himself and he had been tased, but had broken the leads. Keefer said he and Wilburn pushed the door open enough so he could deploy his taser into Collins left side abdomen/rib area. Keefer told me Collins grabbed the taser "wires" and pulled them out. Keefer said he commented to Wilburn that the taser was ineffective to which Wilburn directed

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | 16-1 |
|---|---|---|---|---|
| Officer Making Report | Badge No. | Time Spent | Date | Reviewed By |



**KENTUCKY STATE POLICE**
**KYIBRS SUPPLEMENTARY REPORT**

ORI:   **KYKSP1400**                              Incident Number:   **14-15-0262**

Offense(s):   **Death Investigation**

him to try again. Keefer said he cycled his taser multiple times for a total of what he believed to be four. Keefer told me he hoped since Collins had the taser wires inside his hands this would be effective and subdue Collins. Keefer said the follow-up attempts were ineffective and Wilburn then went around to the rear of the police department.

I asked Keefer if he was giving Collins loud verbal commands during the taser deployments and he responded he believed so but he wasn't sure. Keefer said as Wilburn left to go around to the back door to make entry, Collins began punching the glass of the foyer door and this made him fear he would break glass and cause a glass hazard. Keefer told me Wilburn opened the front door and deployed his taser into Collins' back which enabled him to get the foyer door open. Keefer said they made entry into the foyer area and attempted to gain control of Collins. Keefer told me Collins was still struggling with them so he delivered a closed hand strike to Collins face with his right hand. Keefer said a brachial stun was not possible at that time. Keefer said they were able to take Collins to the ground at that time and Collins pulled his hands underneath his body and refused to be handcuffed. Keefer said he struck Collins with his asp batron with "closed mode" techinque in the rib area in an attempt to gain compliance for handcuffing. Keefer said when he was finally able to gain control of Collins left arm he observed a handcuff already on his left hand. Keefer told me he was able to pull the left hand behind his back, then Miller was able to get the right arm free and placed another set of handcuffs on Collins right hand to be joined to the left hand cuffs.

Keefer said after Collins was secured he checked the scene to see if anyone was hurt and no one reported injury. Keefer told me Collins was then rolled to his side and they tried to sit him upright.  Keefer said EMS was notified and the fire department was on scene as well as they came in and took over.

I examined the physical force used by Keefer against Collins. Keefer said he deployed his taser, he delivered one to two closed empty hand strike to Collins left side face and used the "closed mode" baton techinque and delieverd strikes to Collins back. Keefer told me he may have used the baton to stroke his legs as well. I asked Keefer how Collins was taken to the ground and he responded he was unsure, but he thought he and Miller forced him to the ground. I asked Keefer if Collins was making any statements or saying anything after he was secured and under control. Keefer said he was not, and he thought someone said "Billy why are you doing this?" Keefer told me he didn't remember Collins saying anything. I asked Keefer when he observed Collins could be in a medical emergency. He replied after he had checked

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | |
|---|---|---|---|---|
| Officer Making Report | Badge No. | Time Spent | Date | Reviewed By |

14-15-0262 - 17



**KENTUCKY STATE POLICE**
**KYIBRS SUPPLEMENTARY REPORT**

ORI:    **KYKSP1400**                                    Incident Number:    **14-15-0262**

Offense(s):    **Death Investigation**

to ensure no officer was hurt or stabbed he observed Collins face turning dark. Keefer said this is what caused him to insist Collins then be rolled onto his side to take pressure off his chest. Keefer told me when they rolled Collins to his side he was still breathing. Keefer said Chief Fugitt arrived shortly thereafter. I asked how much time passed that Collins was handcuffed face down and Keefer said he was unsure but he felt it was one minute or less. Keefer told me he believed during that time period he observed blood on Wilburn and instructed him to clean himself. I asked Keefer how they rolled Collins and into what position. Keefer said Collins head was toward City Hall and they rolled him onto his left side where he observed he was breathing. Keefer told me they then sit Collins upright onto this buttocks leaned against the interior doorway of the police department. Keefer said the fire department arrived and began caring for Collins and he went to the restroom to wash the blood from his arms. Keefer told me he laid a pair of leather gloves on the table. Keefer identified the uniform lying on the table belonged to him. I observed the whistle chain was broken. Keefer confirmed the whistle chain was broken during the altercation. Keefer said as they were able to handcuff Collins he observed a handcuff key lying on the floor in front of him and thought it belonged to one of the other officers. Keefer told me by the time they got Collins seated upright he noticed the key belonged to him. Keefer said he keeps a handcuff key, car key and jump drive on his whistle chain and all these items were on the floor. Deputy Keefer had no further information. I concluded the interview at 0211 hours.

Douglas Wilhite Jr.
Sheriff's Deputy, Unit 220
DOB:

At approximately 0214 hours I intiated an audio recorded interview with Deputy Douglas Wilhite Jr, DOB:                    . I told Wilhite his participation in speaking with me was voluntary and he agreed to speak with me. Lt. Felder was also present. I asked Wilhite to tell me how he came to have contact with Collins. Wilhite told me he had left the Lawrence County High School graduation ceremony and as he was leaving he observed a vehicle had driven through the grass on the lawn and into a ditch. Wilhite said he observed the driver was Billy Collins. Wilhite said Collins was subsequently arrested during that time. Wilhite said he returned to the Sheriff's Office to see what court process he needed to serve and work on case work. Wilhite told me he and Deputy Keefer were both present at the Sheriff's Office when he heard Wilburn call for assistance at the police department with noise in the background. Wilhite said Keefer began to head toward the police department at that time. Wilhite told me shortly thereafter,

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | ᴜ |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |



**KENTUCKY STATE POLICE**
**KYIBRS SUPPLEMENTARY REPORT**

ORI:   **KYKSP1400**                                    Incident Number:   **14-15-0262**

Offense(s):   **Death Investigation**

Wilburn yelled on the radio for backup, but he was unsure exactly what Wilburn had said. Wilhite said dispatch directed him to respond to the police department at that time.

Wilhite said when he arrived he observed Wilburn, Keefer and Miller at the foyer door of the police department. Wilhite told me when he made his was up the ramp he observed Collins had barricaded himself inside the foyer and was holding against the door with his feet against the back wall. Wilhite said Collins had taser probes hanging in his shirt and seemed to not have any effect on him. Wilhite told me he asked Collins what he was doing and he would not respond to him. Wilhite said Wilburn remembered he had a key to the back door so he made entry through that door. Wilhite told me Wilburn opened the door and deployed his taser into Collins' back which was effective. Wilhite said he was behind Keefer as they made entry into the foyer area. Wilhite told me Wilburn and Keefer were already there "hands on" to gain control of Collins. Wilhite said Collins pushed Keefer back toward him, which pushed him toward the City Hall door. Wilhite told me Miller had made his way into the room by that time. Wilhite said he observed Collins had one handcuff already on his left wrist. Wilhite told me after Collins was tased for what he thought was the second time, Collins began to go to the ground. Wilhite said they were attempting to gain control of Collins' right wrist for handcuffing. Wilhite told me he wasn't able to assist until Miller moved. Wilhite said Miller changed his position so he was able to remove his asp baton from the holster and attempted to pry Collins right arm out from under his body. Wilhite told me they were able to get control of his wrist. Wilhite said Miller took his handcuffs out from his belt and applied them to Collins' right wrist, then secured them to the other set of handcuffs. Wilhite told me Collins was lying on his belly for approximately one minute until he and Keefer rolled him over and placed him into a seated position against the interior door to the police department. Wilhite said he checked Collins' pulse and he confirmed he had a pulse and was breathing at that time; however, he was not talking. Wilhite said he called for EMS at that time.

Wilhite said prior to EMS arrival, first responders with the fire department arrived and observed he had stopped breathing. Wilhite explained the fire department began CPR on Collins. Wilhite said shortly after, EMS arrived and took over life saving efforts and transported Collins to TRMC.

I asked Wilhite how Collins was taken to the ground and he responded as Collins pushed Keefer, he was also pushed backward but he thought Collins may have been going down unassisted, possibly due to the taser usage. Wilhite told me Collins was making a "grunting"

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |

14-15-0262 -18



## KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

**ORI:**   **KYKSP1400**                                    **Incident Number:**   **14-15-0262**

**Offense(s):**   **Death Investigation**

noise. I asked Wilhite if he struck Collins with his baton and he said he did not, he only used the tool to pry Collins right arm to gain control for handcuffing which was effective. I asked Wilhite if Collins was communicating at all during the incident and he said no, other than "grunting and groaning". Wilhite said he thought Collins told him to "go away" and leave him alone when he asked what he was doing early on in the stand-off.

I asked Wilhite if there was anything he wanted to add. Wilhite said the Sheriff's Office had received a call last night in reference to Collins' behavior. Wilhite said Collins' ex-wife had contacted 911 and reported Collins was "driving 90 miles per hour" on KY – 32 and said he was going to hurt someone. Wilhite told me he responded to the area and observed for him but did not make contact. I concluded the interview at 0222 hours.

Prior to leaving the Sheriff's Office I was able to obtain both deputies response to resistance reports, as well as photos of Keefer's taser and taser report. I also took photos of both deputies and inquired about injuries. Keefer reported only minor scratches, Wilhite reported no injuries.

### Saturday, May 30, 2015; 1300 Hours: Autopsy at the Kentucky Medical Examiner's Office, Frankfort.

At approximately 1300 hours, Lt. S. Felder and I arrived at the Kentucky Medical Examiner's Office in Frankfort, Kentucky. Felder and I spoke with Dr. Bill Ralston who would be performing the autopsy. I explained the details of the investigation up to that point to Ralston as he began the autopsy. I took photos during the autopsy process; however, Ralston took photos and completed a separate report. During the autopsy process I collected seven items and labeled them as Item 18. These items are listed as three plastic cups containing taser barbs, one cup containing taser wires, a DNA card, 2 envelopes containing fingernail clippings from both hands at 1500 hours.

Ralston removed the deceased clothing and bagged the items, then relinquished them to me. I labeled these items as Items 14,15, and 16. Item 14 is one blue superman tee shirt. Item 15 is a pair of plaid shorts. Item 16 is a pair of blue Hanes briefs.

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |

14-15-0262 - 19

### KENTUCKY STATE POLICE
### KYIBRS SUPPLEMENTARY REPORT

**ORI:**   **KYKSP1400**                    Incident Number:   **14-15-0262**

**Offense(s):**   **Death Investigation**

Preliminary findings conclude Collins' cause of death was due to a cardiac event with manner of death pending further investigation.

### Monday, June 1, 2015; 1800 Hours: Video obtained from Giovanni's Pizza.

At approximately 1800 hours, I arrived at Giovanni's Pizza and requested video of the time frame of the event. I have attached the video to this investigation.

### Tuesday, June 2, 2015 1226 Hours: Arrest scene documentation.

At approximately 1226 hours, I arrived at Lawrence County High School in reference to arrest scene documentation. I was accompanied by Chief G. Fugitt and Sgt. S. Wilburn. I took photos of the arrest site and checked all buildings in the area for video surveillance. The only building that had video was the Lawrence County High School. The high school had two cameras which captured two angles. The rear camera captured Collins traveling behind the school in his truck and onto the lawn area. The side camera on the band-building side did not capture Collins traveling on the lawn behind the building due to a common malfunction with the software. The arrest scene is almost completely out of camera view on the side camera video, but emergency lights can be seen flashing. I have attached the video with this investigation.

**STATUS OF CASE:**      Open

**ATTACHMENTS:**      Interviews, Photos, KSP-41

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | |
|---|---|---|---|---|
| Officer Making Report | Badge No. | Time Spent | Date | Reviewed By |



**KENTUCKY STATE POLICE**
**KYIBRS SUPPLEMENTARY REPORT**

ORI:   **KYKSP1400**                                    Incident Number:    **14-15-0262**

Offense(s):    **Death Investigation**

## SUPPLEMENT

**INVESTIGATION:**

**Tuesday, June 2, 2015; 1346 Hours: Chief G. Fugitt speaks with Shelley Collins at the Louisa Police Department.**

At approximately 1346 hours, Chief G. Fugitt began a video recorded inteaction with Shelley Collins at the Louisa Police Department. Collins initiated the contact. Collins began the conversation by inquiring if either officer had been placed on leave. Fugitt explained to her that up to that point there was no indication the officers had committed a criminal act and were not on leave. Fugitt told her if during the investigation there would be cause to believe the officers had committed a crime against her father he would take the appropriate action. Collins began to complain about the news media contacting her. Fugitt said he would attempt to contact the press to request them observe the family's privacy.

Collins began to speak about her father's past behavior during the interview. Collins said her father  was "crazy and gets crazy". Collins said Amanda was blaming herself by thinking if she had filed for another "mental warrant" on Mr. Collins it could have helped. Collins said she didn't think her father took his medication in reference to mental issues. Fugitt concluded the recording at 1355 hours. I have attached a copy of this recording to this investigation.

**Tuesday, June 2, 2015; 1400 Hours: Covert interview with Collins Family at the Lawrence County Courthouse.**

At approximately 1400 hours, I began an audio recorded interview with the Collins Family at the Lawrence County Courthouse. During this interview I had an audio recorder activated inside the front pocket of my coat. Billy Collins was the first to arrive at the courthouse, followed by other family members of the Collins family. The purpose for this interview was to meet with the family and explain what I had accomplished on the investigation up to that point. The interview was also to gain insight on Collins' mental state and behavior in the past years, and immediate time frame prior to the arrest. I explained to Mr. Collins what I had done up to that point. I reminded Mr. Collins of a statement he had made on the telephone with me prior to this interview in reference to the police officers prior knowledge of Collins. Collins told me the officers knew Collins, knew how to deal with him and he was concerned about Collins not

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |

14-15-0262 21

# KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

**ORI:**   **KYKSP1400**                                    **Incident Number:**   **14-15-0262**

**Offense(s):**   **Death Investigation**

being handcuffed. One of Collins' other family members who had arrived chimed into the conversation and said "he does have a tendency to get rowdy, and he does have a tendency to get loud, but he's never tried to hurt any of them". I told the family this was why I wanted to speak with them to get a family background and look into his past. As I retrieved a notepad to write on, Mr. Collins attempted to interfere with the interview. Collins told me his father's behavior and mental history had no bearing on the incident. I told Collins I didn't understand his reasoning due to the fact of how he insisted law enforcement had prior contacts with Collins and should know how to deal with him. I asked him to elaborate on that subject he insisted the details were not pertinent. Collins told me he had contacted several attorneys and "any lawyer in the country would take this case the way the United States is today." Collins told me if I needed information at a later date he would give it to me. Collins began to make accusations that his father had been harassed by Sgt. Wilburn in the past. Collins said Wilburn saw him at a stoplight and cast him a "shit eating grin".

I asked Collins to tell me about the most recent interaction prior to this last encounter his father had with law enforcement. He told me he had been arrested recently for Driving Under the Influence and was arrested without incident. I asked Angie Collins (ex-wife) why she had the occsasion to contact Lawrence 911 recently in reference to Collins. Angie said she was worried because Collins was out driving his truck "crazy". Angie said she didn't know if Collins had been drinking. Angie said "Joe", as she refers to her son Billy Collins, had contacted her and said he was worried about his father. Billy Joe confirmed he had left his residence on the night Angie contacted 911. Billy Joe said he and Collins had "gotten into it" prior to him leaving his residence. Billy Joe began telling me again, this information had no bearing on the investigation. I asked Billy Joe if he felt it was pertinent to the case for me to invesitgate the involved officers' prior response to resistance reports and conduct and he said it was. However, in Billy Joe's opinion it was not pertinent to look into his father's conduct. I asked Billy Joe if I couldn't check the conduct his father, why should he expect me to check the conduct of the officers if he requested I conduct and unbiased invesitgation. I asked Billy Joe if he wanted an unbiased investigation and he did not answer. I told Joe if he didn't want me to check his father's background I couldn't look into the officers' background and he replied "Well don't do it then." I told Billy Joe what he was asking did not make sense and Billy Joe's family began to agree with me. Billy Joe then asked if he had to be present for the interview and I told him he did not and he replied "See ya." Billy Joe began to walk toward his vehicle. He told his family if they wanted to take control of handling the situation they could, but if they wanted him to handle the situation as he had been he would continue. Billy Joe went on to tell his family

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | 101 |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |

14-15-0262  22



**KENTUCKY STATE POLICE**
**KYIBRS SUPPLEMENTARY REPORT**

ORI:    **KYKSP1400**                                    Incident Number:    **14-15-0262**

Offense(s):    **Death Investigation**

they didn't need to stand up there and "rat" on Collins about all the stuff he had done prior. Billy Joe's family told him I would find these incidents out regardless of his cooperation. Billy Joe's family began to reason with him. Billy Joe said what were going to try to do is blame the outcome of the situation on Collin's past. I suggested Billy Joe leave since he had opted to do so. Billy Joe decided to stay.

Before I went further with the interview I documented the parties who were present. Angie Collins can be reached at                , Amanda Adkins (biological daughter) can be reached at                , Sheila Bowens can be reached at                . I asked Angie to explain the circumstances behind her most recent call to Lawrence County 911. Angie said she was contacted by Joe who told her his father was driving the truck and wanted to know what she thought they should do. Angie said they were worried about him so she contacted 911 and reported she thought Collins may hurt himself or someone else with his vehicle. Joe said he and his father got into an argument, his father got his "shit" and left. I asked if there was anything in particular they had been arguing about. Joe responded they argued all the time.

I brought up the fact the family had mentioned Collins had been "202A" approximately two years ago. I asked if Collins had been formally diagnosed with any mental illness. Amanda told me Pathways had diagnosed Collins with bipolar disorder and schizophrenia. I asked if they had encountered any behavior associated with schizophrenia and they said they had not. I asked if Collins had ever been violent toward any of them and Angie said he would become violent after drinking alcohol. The family agreed they had never contacted police in reference to domestic violance. I asked if anyone had spoken with Collins on the day of the arrest in question and they said they had not; however, they had spoken with multiple people who witnessed Collins attend the graduation ceremony and observed Collins behaving normally.

I spoke with the family at length about Kentucky State Police policy and procedure and loosely outlined what is common when dealing with combative subjects. I told them I would review both departments' policies and procedures when dealing with combative individuals, as well as the evidence I had collected. I also gave a brief outline of preliminary information I had collected through the investigation. I told the family after interviewing the officers, no officer involved had intentions of harming Mr. Collins during this interaction. Billy Joe Collins agreed, and said he felt none of the officers meant his father harm. Billy Joe began talking about the past trouble his father had with Sgt. Wilburn.

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | |
|---|---|---|---|---|
| Officer Making Report | Badge No. | Time Spent | Date | Reviewed By |

14-15-0262 - 23

## KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

**ORI:**   **KYKSP1400**                          **Incident Number:**   **14-15-0262**

**Offense(s):**   **Death Investigation**

Approximately 37 minutes into the interview all the Collins family left the area except Joe who remained for several minutes and spoke with me. A friend of the family was still present as well; however, I did not get his name. Joe went on to tell me Sgt. Wilburn used to reside in a close proximity to Mr. Collins. Joe said he felt Wilburn would attempt to provoke altercations. Joe said his father had made a comment about Wilburn's children and Wilburn said he would "get him". Joe said if any other officer would have arrested his father under same circumstances he would not be suspicious. Joe told me his chief concerns were what transpired during his transport to the police department from the high school to upset his father. Joe also said he was concerned about why he was tased so many times. I concluded the interview at 1618 hours.

**STATUS OF CASE:**     Open

**ATTACHMENTS:**     Cd containing interview

| Det. Chris Carter | 701 | 8hrs | 06/30/15 | $k\text{-}1$ |
|---|---|---|---|---|
| Officer Making Report | Badge No. | Time Spent | Date | Reviewed By |

14-15-0262  24

```
06/02/2015                                                          PAGE    1
10:18:14                     CAD Incident Detail                    USER JKNIP
```

```
CAD Incident: 2015-00007449         ESN  : 1416         L   F   E   R
Phone    :          -               Law  : KSP POST 14      4
Name     : LOUISA PD VIA LC911      Fire :
Address  : 215 NORTH MAIN CROSS ST  EMS  :
Community: LAWRENCE COUNTY          Rescue:
Jurisdctn:
                                    Disp : C
SubDivisn:                          Source: N9C
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
CAD Call Times: DEATH
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Incoming Call: 05/29/2015 21:31:15
Call Created : 05/29/2015 21:31:15  Created By: JLAMBERT  Pos:002 TERM 2
Call Send Time   :        21:32:08  Sent By  : JLAMBERT  Action:
Call Dispatch Time:       21:32:19  Event : DEATH  1      Language:
Call Enroute Time :       21:32:24  Law  :
Call Arrival Time :       22:12:10  Fire :
Call Clear Time   :       21:45:47  EMS  :
Call Closed  :05/31/2015 00:42:10   Rescue:

Original Dispatch Remarks:
  REQUEST ASSISTANCE FROM KSP IN REF TO A 10-15 THEY HAVE IS CAUSING
  THEM PROBLEMS
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                            Narratives
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Narrative By: 002\JLAMBERT   05/29/2015 21:40
LC911 RECONTACTED AND ADVISED LPD HAD A 10-15 ASSAULT THEM INSIDE THE PD AND
BARRICADED HIMSELF INSIDE A FOYER AT THE PD. LPD AND LCSO MADE ENTRY INTO THE
FOYER USING THEIR TASER ON THE SUBJECT SEVERAL TIMES. SUBJECT IS NOW
UNRESPONSIVE ENR WITH EMS TO THREE RIVERS MEDICAL CENTER. UNIT 383 UPDATED

Narrative By: 002\JLAMBERT   05/29/2015 21:40
162 NOTIFIED

Narrative By: 002\JLAMBERT   05/29/2015 21:55
164 AND 72 NOTIFIED

Narrative By: 002\JLAMBERT   05/29/2015 22:13
MADE CONTACT WITH ER STAFF AT THREE RIVERS. NURSE ADVISED THAT BILLY COLLINS WAS
BEING WORKED AS A FULL CODE AT THIS TIME NOT BREATHING. UNITS 162,164, 72, AND
20 UPDATED

Narrative By: 002\JLAMBERT   05/29/2015 22:33
MADE CONTACT WITH THREE RIVERS ER STAFF AND WAS ADVISED SUBJECT WENT 10-7 AND
TIME OF DEATH WAS 2201 UNITS 162,164,701,72, AND 20 ADVISED VIA TEXT.

Narrative By: 002\JLAMBERT   05/29/2015 22:36
66 NOTIFIED VIA TEXT. NEG CONTACT PUBLIC SERVICE.

Narrative By: 002\KBELT     05/30/2015 00:18
```

i4-15-0262-75

```
06/02/2015                                                      PAGE    2
10:18:14               CAD Incident Detail               USER JKNIP
```

CASE #: 14C150262-DEATH INVESTIGATION. U/701

Narrative By: 002\KBELT        05/30/2015 02:35
AUTOPSY SCHEDULED LATER THIS DATE AT 13:30 HOURS. U/701

Narrative By: 002\KBELT        05/30/2015 03:07
TTY WILL BE COMPLETED NEXT DATE. U/701, A/72

Narrative By: 002\KBELT        05/31/2015 00:41
DEATH INV. TTY MESSAGE #: 1505022199, SENT AND EMAILED TO SUPERVISORS.
························································································
                               Vehicle Information
························································································
························································································

| UNIT | DEPT STATUS/DSP/CASE | LOCATION/REMARK | USER | DATE | TIME |
|---|---|---|---|---|---|
| 383 | L01 DSP | | JLAMB | 05/29 | 21:32:19 |
| 383 | L01 ENR | | JLAMB | 05/29 | 21:32:24 |
| 162 | L01 DSP | | JLAMB | 05/29 | 21:46:12 |
| 162 | L01 ENR | | JLAMB | 05/29 | 21:46:19 |
| 854 | L01 ENR | | JLAMB | 05/29 | 21:46:32 |
| 162 | L01 ENR | THREE RIVERS MEDICAL CENTER | JLAMB | 05/29 | 22:01:10 |
| 383 | L01 1097 | AT LPD | JLAMB | 05/29 | 22:12:10 |
| 72 | L01 DSP | | DMETC | 05/29 | 22:12:10 |
| 701 | L01 DSP | | DMETC | 05/29 | 22:12:24 |
| 72 | L01 ENR | | DMETC | 05/29 | 22:28:18 |
| 701 | L01 ENR | | DMETC | 05/29 | 22:28:23 |
| 162 | L01 1097 | | DMETC | 05/29 | 22:42:30 |
| 854 | L01 1097 | THREE RIVERS MED CENTER | DMETC | 05/29 | 22:42:43 |
| 701 | L01 1097 | THREE RIVERS MED CENTER | DMETC | 05/29 | 23:01:00 |
| 701 | L01 ENR | L PD | DMETC | 05/29 | 23:55:16 |
| 854 | L01 ENR | LPD | DMETC | 05/29 | 23:55:32 |
| 701 | L01 1097 | | DMETC | 05/29 | 23:59:52 |
| 854 | L01 1097 | | DMETC | 05/29 | 23:59:58 |
| 162 | L01 1097 | LPD | DMETC | 05/30 | 00:00:13 |
| 701 | L01 CASE | 14C150262-DEATH INVESTIGATION | KBELT | 05/30 | 00:16:46 |
| | | 0000000178 | | | |
| 701 | L01 | Event Change---Old: OFFAST | KBELT | 05/30 | 00:17:50 |
| 162 | L01 | Event Change---Old: OFFAST | KBELT | 05/30 | 00:17:50 |
| 383 | L01 | Event Change---Old: OFFAST | KBELT | 05/30 | 00:17:50 |
| 854 | L01 | Event Change---Old: OFFAST | KBELT | 05/30 | 00:17:50 |
| 72 | L01 | Event Change---Old: OFFAST | KBELT | 05/30 | 00:17:50 |
| 72 | L01 1097 | LPD | KBELT | 05/30 | 00:38:21 |
| 383 | L01 1098 | | KBELT | 05/30 | 01:12:38 |
| 854 | L01 1098 | | KBELT | 05/30 | 01:12:39 |
| 162 | L01 1098 | | KBELT | 05/30 | 01:12:40 |
| 701 | L01 1097 | LCSO | KBELT | 05/30 | 01:52:39 |
| 72 | L01 1097 | LCSO | KBELT | 05/30 | 01:52:39 |
| 72 | L01 1098 | | KBELT | 05/30 | 02:35:28 |
| 701 | L01 1098 | | KBELT | 05/30 | 02:35:31 |
| 701 | L01 ENR | FRANKFORT REF AUTOPSY | JLAMB | 05/30 | 09:34:09 |
```

06/02/2015                                                              PAGE     3
10:18:15·                         CAD Incident Detail                   USER JKNIP


701    L01 OD              FRANKFORT                    JLAMB 05/30 10:59:34
72     L01 ENR             FRANKFORT                    JLAMB 05/30 11:22:33
701    L01 1098                                         ACRAW 05/30 17:32:34
72     L01 1098                                         ACRAW 05/30 21:45:45


LAB
97-  1247
98-  1519.

111.15-07(02 -77

**KENTUCKY STATE POLICE**
**KYIBRS SUPPLEMENTARY REPORT**

ORI:   **KYKSP1400**                                 Incident Number:   **14-15-0262**

Offense(s):
**DEATH INV.**

## INVESTIGATION

**INVESTIGATION: On Friday May 29, 2015 at approximately 2212 I was notified by Post 14 Dispatch of an incident involving the Louisa Police Department and Mr. Billy Collins. As I understood it, Mr. Collins had been disorderly with the public while at a high school graduation and was also observed driving a vehicle while being suspended. Once arrested by Sergeant Wilburn of L.P.D., Mr. Collins was transported to the Louisa Police Department to complete paperwork. Mr. Collins repeatedly ignored Sergeant Wilburn's verbal commands. Sergeant Wilburn delivered a drive stun with his issued Taser which was ineffective. Mr. Collins attempted to strike Sergeant Wilburn and subsequently barricaded himself in the foyer area of the Louisa Police Department. Additional officers arrived to assist to include Officer Miller, Deputy Mac Wilhite and Deputy Mason Kefer. During the struggle with Mr. Collins, officers utilized their Taser's, empty closed fists and their issued ASP. After Mr. Collins was finally restrained, he suffered a medical emergency. EMS had already been summoned due to the multiple Taser deployments. NETCARE EMS arrived and transported Mr. Collins to Three Rivers Medical Center where he later died. It is believed Mr. Collins had pre-existing heart related health issues.**

**I arrived at the Louisa Police Department at approximately 0038 on May 30, 2015. Detective Chris Carter U701 is the case officer and conducted the interviews with Sergeant Wilburn and Officer Miller. I was present in both of the interviews and left the Louisa Police Department at approximately 0150.**

**At approximately 0152 I arrived at the Lawrence County Sheriff's Office along with Detective Carter. Detective Carter conducted the interviews of Deputy Wilhite and Deputy Kefer. I was present in both of the interviews.**

**At approximately 0235 I left the Lawrence County Sheriff's Office and returned to my residence.**

| Lt. Scott Felder | 72 | 8 hours | June 2, 2015 | |
|---|---|---|---|---|
| Officer Making Report | Badge No. | Time Spent | Date | Reviewed By |

14-15- 0262-28

**KENTUCKY STATE POLICE**
**KYIBRS SUPPLEMENTARY REPORT**

ORI:   **KYKSP1400**                                  Incident Number:   **14-15-0262**

Offense(s):
DEATH INV.

At approximately 1122 on this same day I returned to work and met Detective Carter in Winchester so we could go to the autopsy of Mr. Collins in Frankfort. We arrived at the KSP Crime Lab in Frankfort at approximately 1247. After viewing the autopsey and obtaining evidence, we departed the Lab at approximately 1519.

STATUS  OF  CASE:
OPEN

ATTACHMENTS:
NONE

| Lt. Scott Felder | 72 | 8 hours | June 2, 2015 | |
|---|---|---|---|---|
| Officer Making Report | Badge No. | Time Spent | Date | Reviewed By |

14-15-0262-29

# COMMONWEALTH OF KENTUCKY

## Justice and Public Safety Cabinet

# OFFICE OF THE ASSOCIATE CHIEF MEDICAL EXAMINER

Central Laboratory Facility
100 Sower Boulevard, Suite 202
Frankfort, Kentucky 40601-8272
(502) 564-4545

## RECEIPT FOR PERSONAL EFFECTS/EVIDENCE

Case No. _15-333_

Name: _Billy Collins_     Age: _56_  Race: _W_  Sex: _M_

Received at: **Central Lab Facility  Frankfort, KY  ME Office**  Date: _5/30/15_   Time: _3:00pm_

From:

First Name _Ralston_   Last Name _Med Examiner_      Street & No. or Rural Route

City or Town          County      State       Official Title       Phone

**The following:**

Fingernail Clippings

(3) Tazer barbs

1 pair of underwear

1 pair of shots

1 Tee Shirt

DNA Card

1 ...

## KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

ORI:   KYKSP1400                           Incident Number:   14-15-0262

Offense(s):

### Supplement

INVESTIGATION:
05-29-15, 22:12;  I arrived at Louisa Police department to secure the scene reference this investigation. I was informed by Chief Greg Fugitt of Lousia Police Department, that this incident occurred in the foyer at the rear entrance of the Lousia Police Department. I secured the scene by placing crime scene tape to block the entrance to the ramp leading to the rear door of the building, and across the door leading into the foyer from the inside of the building. I logged all personnel present upon my arrival, including their name, title, unit number, and cell phone number of those that I could obtain one from.  The log that I prepared was given to Det. Carter U/701 the lead investigator of this incident, upon his arrival. I was relieved by Det. Carter, and Sgt. Kouns U/162 once all evidence was collected.

STATUS OF CASE:

ATTACHMENTS:

| Tpr. Daniel Vossmer | 383 | 3 hrs. | 05-30-15 | |
|---|---|---|---|---|
| Officer Making Report | Badge No. | Time Spent | Date | Reviewed By |

14-15-0262-33

PRATT & TOBIN, P.C.
Route 111 at Airline Drive
P. O. Box 179
East Alton, IL 62024

Fax No. (618) 259-6793

TELECOPIER INFORMATION SHEET

The following pages are for:

INDIVIDUAL:      Detective Chris Carter

FIRM:

CITY AND STATE:   Ashland, KY

FAX NO.          (606) 929-5754

FROM:            Mr. Gregory M. Tobin

COMMENTS:        Re: Billy Collins

                 Attached: Letter requesting records &

                          Release.


DATE TRANSMITTED:   06/26/15

Total Number of Pages:    3    (including Information Sheet)

    If you do not receive all the pages, please call Marla at
(618) 259-8011 as soon as possible.


    THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS
ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR
THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED.

    IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT,
YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE
RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US
BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE
ADDRESS VIA THE UNITED STATES POSTAL SERVICE. THANK YOU.

IU-15-07 (07 -34

**LAW OFFICES OF**
# Pratt & Tobin, P.C.
**A PROFESSIONAL CORPORATION**
Route 111 at Airline Dr. • P.O. Box 179 • East Alton, IL 62024-0179

618-259-8011
1-800-851-5562
fax: 618-259-6793
e-mail: pratttobin@sbcglobal.net

Paul L. Pratt (1934-1991)
Gregory M. Tobin (IL,VA,DC,MO,NY)
Robert W. Schmieder (IL)
Benjamin P. Tobin (IL,WI,MO)
William L. Rogers (IL,MO)
of counsel
David M. Galanti (IL,MO)
Leslie N. Collins (IL)
Raphael E. Ferris (PA)
Lenden A. Eakin (PA)

**June 22, 2015**

Kentucky State Police
919 Versailles Road
Frankfort, KY 40601

Re: **Billy Collins**
**DOB:**
**Date of Death:** 05/29/15
**SSN:**

Dear Sir/Madam:

Please forward all investigative material including but not limited to the following:

1. Photographs.
2. CDs, DVDs, or any other audio visual tapes.
3. Reports.
4. Statements.
5. Body camera recordings.
6. Investigative findings.
7. The entire contents of your file regarding the investigation of Billy Collins' death of May 29, 2015.

I have enclosed a Release authorizing the disclosure of the aforesaid to this office.

Sincerely,

Gregory M. Tobin

GMT/mcu

Enclosure

14-15-02102-35

**PRATT & TOBIN, P.C.**
Attorneys at Law
Route 111 at Airline Drive
P. O. Box 179
East Alton, IL 62024
(618) 259-8011 or (800) 851-5562

## INFORMATION RELEASE

TO WHOM IT MAY CONCERN:    Kentucky State Police
919 Versailles Road, Frankfort, KY  40601

You and any person associated with you are hereby authorized to give to PRATT & TOBIN, P.C., my attorneys, or their representatives, any and all information which may be requested in compliance with the Health Insurance Portability and Accountability Act (HIPAA).

This authorizes you to release to my attorneys all information and records you have for the period from _May , 2015_ to present.

You are also specifically authorized to release or discuss any information you have regarding my physical or mental condition and treatment rendered by you, and if necessary, to allow my attorneys or others appointed by him to examine any x-ray pictures taken of me or records which you may have regarding my condition or treatment, and further to receive copies or make photocopies of the same.

I understand that I have the right to revoke this authorization. I understand that information used or disclosed pursuant to this authorization may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law.

You are also specifically notified that previous Information Releases, if any, executed by the undersigned are hereby revoked and you are not authorized to discuss or release any information concerning my health, business or personal activities to any other attorney, person, firm or corporation. This Release will expire in 180 days from the date below.

DATED this _22nd_ day of _June_ , 20_15_.

X _____
NAME:    BILLY JOSEPH COLLINS

DOB:
SSN:

Witness:

_Marla Unsprung_

14-15-0267 21.



## KENTUCKY STATE POLICE

**Steven L. Beshear**
Governor

919 Versailles Road
Frankfort, Kentucky 40601
www.kentuckystatepolice.org

**J. Michael Brown**
Secretary

**Rodney Brewer**
Commissioner

5975 U.S. 60
Ashland, KY 41102

October 6, 2015

Hon. Anna Melvin
Lawrence County Commonwealth Attorney
P.O. Box 596
Paintsville, KY 41240

      RE:   **14-15-0262 / Complete Case Copy**
             **5 CD's**

Dear Ms. Melvin:

Enclosed you will find a copy of the above-mentioned case for your review and possible prosecution.

If I can be of further assistance to you, please feel free to contact me at (606) 928-6421.

Sincerely,

Lieutenant Aaron Martin, Unit 79

AM:rjb

Received By: _Kimberly H Compton_    Date: _10-14-15_

14-15-0262-38

KentuckyUnbridledSpirit.com

*Kentucky* UNBRIDLED SPIRIT

An Equal Opportunity Employer M/F/D



# KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

**ORI:** __KYKSP1400__                      **Incident Number:** __14-15-0262__

**Offense(s):** __DEATH INVESTIGATION__

## SUPPLEMENT

**SUPPLEMENT:** On Tuesday, November 24, 2015 I received a copy of the No True Bill from the Lawrence County Grand Jury. I have attached a copy of the No True Bill to this investigation.

At this time I am still awaiting a copy of the Medical Examiner's report. I will update the status of this investigation as I obtain further information.

**STATUS OF CASE:** Open

**ATTACHMENTS:** 1.) Copy of No True Bill

| Det. Daniel Cook | 914 | 8hrs. | 01/04/16 | |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |

14-15-0262-39

# 24TH JUDICIAL CIRCUIT
# LAWRENCE CIRCUIT COURT
## KSP CASE#  14-15-0262

COMMONWEALTH OF KENTUCKY                                    PLAINTIFF

VS.

## REPORT OF NO TRUE BILL AND
## ORDER OF DISMISSAL

*DEATH INVESTIGATION*                    *VICTIM: BILLY COLLINS JR*

The above styled case was referred to the Grand Jury for investigation
regarding the charges of
*DEATH INVESTIGATION*

The Grand Jury has not returned an indictment and requests the matter be
dismissed because:

_____No Witness appeared to give testimony

_X___Insufficient evidence was presented to warrant an indictment

_____Complaining witness has requested a dismissal

_____OTHER: _____

Foreperson of the Grand Jury

Therefore, it is ordered that the charge(s) or accusation(s) made against the
above named person be and some (is) (are) dismissed, and said individual is
discharged. Any bail deposited by or on behalf of said person shall be returned by
the Clerk of the Court as provided by law.
Dated: 11 / 13 / 15

ENTERED THIS 13 DAY OF
Nov . 20 15                                    CIRCUIT COURT JUDGE
BY MAILING COPIES TO
ALL COUNSEL OF RECORD
JOELL HORSLEY, CLERK
LAWRENCE CIRCUIT COURT
BY S.H.                           D.C.





Kentucky State Police, Post    14
5975 State Route 60
Ashland, KY  41102-
2/17/2016

Robert Watson
McBrayer, McGinnis, Leslie & Kirkland
9300 Shelbyville Road, STE 110
Louisville, KY                    40222

To Whom It May Concern   /   Robert Watson

We have the report on file but are not permitted to release copies of such investigations.
We hope, however that the following information will be adequate for your purposes.

**Offense(s)**

DEATH INVESTIGATION

**Complaintant:**          FUGITT, GREG
**Location:**              LOUISA, LAWRENCE
**Date and Time Reported:** May 29 2015  8:30PM
**Investigating Officer:**  CARTER, C

**Property Involved:**

Stolen Property: NONE
Other Property: NONE

**Remarks:** Billy J. Collins Jr, DOB 4/22/59, was arrested on Friday, May 29, 2015 by Louisa Police Department. While in
custody, Collins initiated not only a physical altercation but also a barricade/stand-off incident with law enforcement
where force was applied to gain control. During the incident Collins' suffered from a medical emergency and died
shortly thereafter.

There is a $2.00 fee for this report.
Please make your check payable to: Kentucky State Treasurer, and mail it to the address shown above.

Sincerely

KSP 313                                                    Rev. 02/16/2007





**KENTUCKY STATE POLICE**
**KYIBRS SUPPLEMENTARY REPORT**

**ORI:**   **KYKSP1400**                          **Incident Number:**   **14-15-0262**

**Offense(s):**   **DEATH INVESTIGATION**

### SUPPLEMENT

**SUPPLEMENT:**  On Thursday, April 28, 2016 I attempted to make contact with Mr. Mike Wilson the Lawrence County Coroner reference obtaining a copy of the Medical Examiner's report for this investigation. I was unable to speak with him. I left a voicemail message to contact myself at Post 14. As of Friday, May 6, 2016 I had not heard from Mr. Wilson.

On Friday, May 6, 2016 I made contact with the State Medical Examiner's Office in Frankfort, Kentucky and requested the above mentioned documentation. I was informed I must submit a written request to their office. I completed the request and faxed the copy to their office. I have attached a copy of the written request to this investigation.

I will update the status of this investigation as I obtain further information.

**STATUS OF CASE:**  Open

**ATTACHMENTS:**  1.) Copy of written request

| Det. Daniel Cook | 914 | 8hrs. | 05/06/16 | 164 |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |

14-15-0262_42



# KENTUCKY STATE POLICE

MATTHEW G. BEVIN
Governor

919 Versailles Road
Frankfort, Kentucky 40601
www.kentuckystatepolice.org

JOHN C. TILLEY
SECRETARY

RICHARD W. SANDER
COMMISSIONER

May 6, 2016

To whom it may concern:

My name is Detective Daniel Cook, Unit 914 with the Kentucky State Police, Post 14 in Ashland. I am requesting a copy of the Medical Examiner's Report and Autopsy Report for a Mr. Billy Collins Jr. His autopsy was performed on May 30, 2015. The case was from Lawrence County, Kentucky. Thank you for your assistance in this matter. If you have any questions, I can be contacted at telephone number 606-928-6421. Thank you again.

Sincerely,

Det. Daniel Cook, U/914

14-15-0262-43



KentuckyUnbridledSpirit.com

An Equal Opportunity Employer M/F/D

5025641699



FRANKFORT, KY 40601
Phone: 502-564-4545

Date:  5-9-16

Regarding:  B. Collins

Phone number for follow-up: 502/564-4545

Please let me Know if you
need anything additional.

14-15-0262-44

I. Atherosclerotic Cardiovascular Disease.
   A.   Grade IV (85% stenosis) coronary atherosclerosis, right coronary artery.
   B.   Grade II-III (50% stenosis) coronary atherosclerosis, left anterior descending.
   C.   Status post stent placement, right coronary artery.
II. Cardiomegaly (410 grams).
III. Emphysema.
IV. Postmortem Toxicology.
   A.   Blood.
       1.   Cyclobenzaprine 21.6 ng/mL.
       2.   Caffeine positive.
   B.   No other tested drugs or ethanol detected in blood or urine.
V. Vitreous Humor Electrolytes – Normal Postmortem Pattern.
VI. Perimortem Struggle with Law Enforcement Offices Including Conducted Electrical Weapon
    Use.

OPINION – Based on information provided to me and postmortem examination findings, the death in this 56-year-old, white male, Billy Collins, is attributed to atherosclerotic cardiovascular disease. Cardiomegaly, emphysema, and physical struggle are contributory to the death.

Code: 414, 425.4, 492.8, and E 960 V

12/10/15
_____
Date

_____
Medical Examiner

Recommended information for Parts I and II on Certification of Death:

| 25. TIME OF DEATH PRONOUNCED | 26. DATE PRONOUNCED DEAD *(Month, Day, Year)* | 27. WAS CASE REFERRED TO MEDICAL EXAMINER/CORONER? *(Yes or No)* |
|---|---|---|
| 10:27 PM | 5-27-2015 | Yes |

| 28. PART I. Enter the diseases, injuries, or complications that caused death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock or heart failure. List only one cause on each line. | Approximate interval between onset and death |
|---|---|
| **IMMEDIATE CAUSE** (Final disease or condition resulting in death)     a. ATHEROSCLEROTIC CARDIOVASCULAR DISEASE | |
| DUE TO (OR AS A CONSEQUENCE OF:) | |
| Sequentially list conditions if any leading to immediate cause.    b. | |
| **Enter UNDERLYING CAUSE** DUE TO (OR AS A CONSEQUENCE OF:) | |
| (Disease or injury that initiated events resulting in death) LAST.    c. | |
| DUE TO (OR AS A CONSEQUENCE OF:) | |
| d. | |
| DUE TO (OR AS A CONSEQUENCE OF:) | |

| GAUSE OF DEATH | PART II. Other significant conditions contributed to death but not resulting in the underlying cause gives in Part I. CARDIOMEGALY, EMPHYSEMA, AND PHYSICAL STRUGGLE | 28a. WAS AUTOPSY PERFORMED? Yes | 28b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF DEATH (Yes or No) Yes |
|---|---|---|---|

| 29. MANNER OF DEATH | 30a. DATE OF INJURY | 30b. TIME OF INJURY | 30c. INJURY AT WORK (Yes or No) | 30d. DESCRIBE HOW INJURY OCCURRED. |
|---|---|---|---|---|
| ☐ Natural    ☐ Pending Investigation | | | | |
| ☐ Accident | 30e. PLACE OF INJURY - At home, farm, street, factory, office building, etc. (Specify) | | 30f. LOCATION (street and number or Rural Route number, City or Town) | |
| ☐ Suicide    ☐ Could not be determined | | | | |
| ☒ Homicide | | | | |

[Portion of FORM V.S. NO. 1-A (Rev. 9/88)]

2

Case: 0:16-cv-00069-HRW Doc #: 65-2 Filed: 05/28/17 Page: 45 of 144 - Page ID#: 1044

Collins is performed at the Centralized Laboratory Facility, Frankfort, Kentucky on May 30, 2015, at 1:30 p.m. by William Ralston, M.D. Forensic Autopsy Technician is Mr. Steven Hunt.

## EXTERIOR OF THE BODY

The body is received with a white sheet wearing blue plaid boxers and blue underwear. A previously-cut blue T-shirt is present with the body. A conducted electrical weapon barb is attached to the T-shirt. The body is that of a well-developed, well-nourished white male appearing consistent with the given age of 56 years. The body has a measured height of 69 inches and a weight of 235 pounds.

The scalp is bald. The pupils are equal, round, and measure 0.4 cm. They are viewed through transparent corneae. The sclerae and conjunctivae are clear. The irides are brown. The nose is free of foreign material. The ears are free of foreign material and atraumatic. The anterior natural dentition is present and in fair repair. Several teeth are noted to be missing. Over the hair-bearing portion of the face is a brown mustache and a patch of hair under the lower lip. The superficial lymph nodes are not enlarged. The trachea is in the midline. The chest is symmetrical without abnormal mobility. The abdomen demonstrates a vertically oriented well-healed linear midline scar as well as a horizontally oriented well-healed linear within the right lower quadrant. The external genitalia are normal male. There is no evidence of peripheral edema, deformity, or fracture.

Rigor mortis is well formed in major muscle groups. Livor mortis is present over the posterior aspects of the body except over pressure points.

## EVIDENCE OF MEDICAL TREATMENT

A vascular access line is present within the left hand. EKG pads are present. An intraosseous line is present within the right shoulder. Gauze is present over the right antecubital fossa.

## EVIDENCE OF INJURY

Over the vertex of the head are several abrasions measuring up to 1 inch. Periorbital ecchymosis is noted on the left. On the right upper eyebrow is a 5/16 inch laceration. Over the left face is a 1 ¼ x 1 ¼ inch area of linear abrasions measuring up to 1 x 1/16 of an inch. Over the left forehead and temporal scalp is a 2 x 2 ½ inch area of vertically oriented contusions measuring up to ½ inch in width. Over the left parietal scalp are three linear contusions measuring 1 x 1/8 of an inch, 4 ½ x 5/16 of an inch, and 1 ½ x 1/16 of an inch. Suffusion is noted of the upper chest, neck, and head.

Over the right upper back is a 2 x 3/16 inch abrasion.

Centered 51 inches superior to the left heel and in the midline back is a ¼ inch injury and conducted electrical weapon barb. Centered 42 inches superior to the left heel and 1 inch to the left of the posterior midline in the left medial back is a ¼ inch injury consistent with conducted electrical

3

the midline in the left upper abdomen is a 1 ¼ x ¼ inch abraded contusion. Within the left upper abdomen is a ¾ x ½ inch purple contusion. Within the left abdomen are a 2 x 1 ½ inch pink contusion and a 1 x ¾ inch pink contusion. Within the right abdomen is an 8 x 5 inch area of pink contusion. Over the anteromedial aspect of the left thigh is a vertically oriented 12 x 1 ½ inch area of purple discoloration. Over the medial aspect of the right ankle is a 2 x 3 ½ inch area of purple discoloration.

Over the posterior aspect of the right forearm is a 1 x ¼ inch purple contusion and a 2 ½ x ½ inch and a 2 ½ x ½ inch abraded contusion vs. purpura. Additionally over the ulnar aspect of the right forearm is a ½ x ½ inch superficial abrasion. Over the left $5^{th}$ finger is a 3/16 inch superficial abrasion. Over the anterior aspect of the left wrist is a 3/16 inch abrasion and two ¾ x 1/8 inch superficial abrasions separated by uniform ½ inch.

Over the posterior aspect of the left forearm are multiple nondescript superficial abrasions and purpura vs. contusions. Over the ulnar aspect of the left wrist is a ¼ inch superficial abrasion.

## INTERIOR OF THE BODY

A "Y" incision is carried through a midline panniculus measuring up to 1 ½ inches through suture and a thin reddish musculature into an abdominal cavity lined with glistening serosa and containing no free fluid. Multiple abdominal adhesions are present. Generally, the intra-abdominal viscera maintain their usual in situ relations. The vermiform appendix is not identified. The diaphragm displays no abnormality.

The mediastinum is in the midline. The lungs demonstrate marked emphysematous changes and adhesions bilaterally. No free fluid is in either smooth pleural space.

## CARDIOVASCULAR

The heart is enlarged and weighs 410 gm. The epicardial surface contains a normal amount of glistening, yellow adipose tissue. The cardiac chambers are of proportionate capacity. The mural and valvular endocardia are smooth and glistening. No abnormality of the valves is appreciated. The papillary muscles and projecting myocardial muscle bundles are of normal prominence. The chordae tendinae display no abnormality. The coronary ostia are in their usual location and give rise to normally distributed coronary arteries. On section, grade IV (85% stenosis) coronary atherosclerosis is noted within the right coronary artery. Additionally stents are noted within the proximal right coronary artery. Within the left anterior descending artery is grade II-III (50% stenosis) coronary atherosclerosis. On section, the firm, brown myocardium is of normal consistency. No focus of scar or acute hemorrhage is demonstrated.

The systemic aorta is of normal caliber and elasticity. The intimal surface is smooth and glistening. The ostia of the large branches are of normal distribution and dimension. Exploration and inspection of the large veins reveals no evidence of antemortem thrombus.

4

## LIVER AND GALLBLADDER

The liver weighs 2,190 gm. The capsule is intact, smooth and shiny. On section, the hepatic substance is homogeneously brown and of normal consistency. No focal abnormal markings are demonstrated.

The smooth-walled gallbladder contains 10 cc. of bile. Stone is not demonstrated. Exploration and inspection of the large bile ducts reveal them to be of normal distribution and dimension. They are patent and free of stone.

## PANCREAS

The pancreas is in its usual location and on section is composed of normally lobulated, yellow/tan, soft substance. No focus of calcification is demonstrated.

## ADRENALS

The adrenal glands are in their usual location and are of normal size and shape. On section, their smooth yellow outer cortical rims overlie zones of deeper brown cortical and gray medullary substances.

## GENITOURINARY

The kidneys are of similar size and shape. The kidneys weigh 150 and 160 gm, right and left respectively. The capsules are removed easily to reveal smooth, medium brown cortical surfaces. On section, the cortices and medullae are well demarcated. The usual arcuate markings are preserved. No abnormalities of the calyces, pelves, cortices or medullae are demonstrated. The ureters are patent.

The bladder lumen contains approximately 20 cc. of urine which is submitted to AIT, Indianapolis, Indiana. The openings of the ureters into the bladder are normal. The bladder mucosa is light tan and finely wrinkled.

The prostate gland is of normal size and shape. On section, it is composed of firm, white, almost rubbery substance. No focus of nodularity or yellow discoloration is demonstrated.

## SPLEEN

The spleen weighs 170 gm. The capsule is smooth, shiny and intact. On section, no focal abnormal markings are demonstrated. The usual follicular and trabecular architecture is preserved.

## ALIMENTARY

5

Examination and palpation of the spine, shoulder girdle and pelvis fail to reveal fracture. Examination and palpation of the ribs reveals fractures of the anterior aspects of left ribs 3-6, right ribs 2-4 and the sternum at the $3^{rd}$ intercostal space.

## NECK

No soft tissue hemorrhage is within the strap muscles. The hyoid bone and thyroid cartilages are intact. The larynx and trachea are of average caliber and are patent, lined with hyperemic mucosa. The vocal cords display no abnormality, and the thyroid gland is normal.

## THYROID

The thyroid gland demonstrates no abnormality.

## HEAD

The scalp is reflected in the usual manner. The calvarium is intact. The dura is of normal tenseness. The superior sagittal sinus is patent and in the midline. The leptomeninges are glistening and translucent. The brain is of normal convolutional pattern and weighs 1,600 gm.

### SEE NEUROPATHOLOGY REPORT

Examination of the base of the skull, after removal of the brain and dura, fails to reveal fracture.

## ADDITIONAL PROCEDURES

A double "Y" incision is made over the posterior aspect of the body and reveals focal areas of hemorrhage within the midline lumbar back, the left lower thoracic back, the right scapula, and the lower cervical neck.

## DISPOSITION OF EVIDENCE

The following items are maintained at the OACME:

1. Identification and documentation photographs and diagrams.
2. DNA standard card.
3. Blood for short-term storage.
4. Tissue sections for stock and paraffin embedding.
5. Central nervous system tissue for neuropathologic examination

6

5025641699    Frankfort ME Office    1:57 a.m.    05-09-2016    8/19

1. Fingernail clippings.
2. Conductive electrical weapon barbs (3).
3. Clothing.
4. DNA standard card
5. Conducted electrical weapon wire/lead.

## MICROSCOPY

Heart: Myocyte hypertrophy

Lungs: Congestion, anthracosis, pigment laden macrophages, alveolar thickening and fibrosis, fat emboli, emphysematous changes, atelectasis, aspirated gastric contents, and edema

Liver: Moderate steatosis

Kidneys: Congestion

Brain: See "Neuropathology" report.

7

14-15-0202-51

COLLINS, BILLY

MEC-2015-333

## NEUROPATHOLOGY REPORT

### GROSS EXAMINATION

Examination central nervous system tissue is performed after fixation at the Northern Kentucky Regional Medical Examiner's Office in Ft. Thomas, Kentucky. The dura is not submitted. The leptomeninges are fibrotic with moderate congestion of the pia-arachnoid vessels. The mildly edematous 1,595 gram brain is symmetrical and of normal convolutional pattern.

Examination of the arteries at the base of the brain reveals them to be of normal distribution and dimension. They are smooth-walled, collapsed and transparent. The cranial nerves are normally distributed. The uncinate gyri are grooved. The cerebellar tonsils are slightly molded.

Multiple coronal sections of the brain at approximate levels of 2 centimeters reveal normal relations of gray and white matter. No focal abnormal markings are demonstrated. The corpus callosum is intact. The hippocampi are small. The ventricles are minimally compressed. The lining ependyma is smooth and glistening. There is 0.9 cm diameter calcified mass in the area of the choroid plexus in the right lateral ventricle. The basal ganglia, thalami, hypothalamus, and substantia nigra are soft but otherwise normal.

Multiple horizontal sections of the midbrain, pons and medulla oblongata and cerebellum reveal normal architecture of these structures without focal abnormal markings.

There is no evidence of acute trauma.

The spinal cord and attached dura are submitted. Upon opening of the dura, no discernible abnormality of the spinal cord, nerve roots and the cauda equina is seen. Serial sectioning of the spinal cord fails to demonstrate intrinsic diagnostic abnormality.

6. Intraventricular mass / right lateral ventricle
7. Right frontal lobe
8. Right frontal lobe
9. Right temporal lobe
10. Right parietal lobe
11. Right occipital lobe
12. Right hippocampus
13. Left hippocampus
14. Basal ganglia
15. Thalamus
16. Hypothalamus
17. Midbrain
18. Pons
19. Medulla
20. Dentate cerebellum

**MICROSCOPIC EXAMINATION**

20 H&E stained slides are examined. In sections of the cortex, the gray matter has the usual number and distribution of neurons. The overlying leptomeninges are fibrotic. There are no inflammatory lesions. The underlying white matter has normal cellularity and is without focal abnormality. There is mild parenchymal edema. Focal vascular congestion is seen. The hippocampi fail to disclose diagnostic abnormality. There is a calcified mass within the choroid plexus (section 6). The central gray nuclei contain normal numbers of neurons in the various nuclear groups. In the section of the cerebellum, the folia are normally formed with the usual number and density of Purkinje cells and granular neurons. There are no lesions of the dentate nucleus. Sections of the midbrain, pons and medulla show vascular congestion and edema but are otherwise unremarkable. Corpora amylacea are present; they are concentrated mainly around blood vessels and cortical and ventricular surfaces.

Sections of the spinal cord disclose vascular congestion and edema. Corpora amylacea are present in the cord parenchyma.

**NEUROPATHOLOGY DIAGNOSIS**

1. Mild cerebral edema and vascular congestion

9

5025641699   Frankfort ME Office

12:33 a.m.   05-09-2016   11 /19

10

Greg Balko, M.D.
Neuropathologist

5025641699·    Frankfort ME Office        2:38 a.m.   05-09-2016     12/19

NAME OF DECEDENT: Billy Collins

AGE: 56    SEX: Male    RACE: White

LOCATION WHERE DEATH OCCURRED: Tlmc ER

DATE OF DEATH: 5-29-2015 TIME OF DEATH: 10:27 AM ___ PM ✗

Louisa, ky

TYPE OF DEATH THAT IS SUSPECTED: Homicide

HISTORY: (WHAT HAPPENED) WBS ARRESTED And Transported to
Louisa Blue Griffin / Became Unruly WBS Handcuffed or/p
Tased 3times Became Blue And Unrespossive.
Transport by EMS to Tlmc ER.

POLICE AGENCY: KSP ___ INVESTIGATOR: DET Chris Corrolls

If prescription drug related, state name of physicians and pharmacies on prescriptions:

Medication: ___ PHYSICIAN: ___

Medication: ___ PHYSICIAN: ___

Medication: ___ PHYSICIAN: ___

Medication: ___ PHYSICIAN: ___

606
232
9811

Signed: _____
Coroner or Deputy Coroner
Lawrence
County

CORONER: Please keep pink copy and send white and yellow copy to Medical Examiner.

(Rev. 02/06)

5025641699-    Frankfort ME Office    12:52 a.m.    05-09-2016    13/19

**Date Received:** 06/04/2015
**Date Reported:** 06/24/2015

| Laboratory Specimen No: | 40497851 |
| --- | --- |
| Container(s): 01:GRT | Blood,IVC |

100 Sower Blvd, Ste. 202
Frankfort, KY 40601
FX: 502-564-1699

**Date Collected:** 05/30/2015 13:30
**Test(s):** 70510    Comprehensive Drug Panel
99310    Forensic Info

| Analyte Name | Result | Concentration | Units | Therapeutic Range | Loc |
| --- | --- | --- | --- | --- | --- |
| » Investigator: | Lawrence - Wilson | | | | |
| » Pathologist: | Ralston | | | | |
| » Submitting Official: | Ralston | | | | |
| AMPHETAMINES | Negative | | | | |
| BARBITURATES | Negative | | | | |
| BENZODIAZEPINES | Negative | | | | |
| CANNABINOIDS | Negative | | | | |
| COCAINE/METABOLITES | Negative | | | | |
| FENTANYL | Negative | | | | |
| METHADONE/METABOLITE | Negative | | | | |
| OPIATES | Negative | | | | |
| OXYCODONE/METABOLITE | Negative | | | | |
| PHENCYCLIDINE | Negative | | | | |
| PROPOXYPHENE/METABOLITE | Negative | | | | |
| ALCOHOL | Negative | | | | |
| Methanol | Negative | | | | |
| Ethanol | Negative | | | | |
| Acetone | Negative | | | | |
| Isopropanol | Negative | | | | |
| ANALGESICS | POSITIVE | | | | |
| Cyclobenzaprine | POSITIVE | | | | |
| Cyclobenzaprine, Quant | POSITIVE | 21.6 | ng/mL | 3 - 36 | |
| Naloxone | POSITIVE | | | | |

COLLINS, BILLY
Laboratory Case #: 2954343
Printed Date/Time: 06/24/2015, 09:01

Page 1 of 5

111-IC-02102-S6

| ANTIBIOTICS | Negative |
| ANTICONVULSANTS | Negative |
| ANTIDEPRESSANTS | Negative |
| ANTIHISTAMINES | Negative |
| ANTIPSYCHOTICS | Negative |
| CARDIOVASCULAR AGENTS | Negative |
| ENDOCRINE AGENTS | Negative |
| GASTROENTEROLOGY AGENTS | Negative |
| NARCOTICS | Negative |
| NEUROLOGY AGENTS | Negative |
| SEDATIVES/HYPNOTICS | Negative |
| STIMULANTS | POSITIVE |

Caffeine          POSITIVE

Analyte is qualitatively POSITIVE, but has not been confirmed by an
alternate analytical method.

| UROLOGY AGENTS | Negative |

Specimens will be kept for at least one year from the date of initial report

COLLINS, BILLY
Laboratory Case #: 2954343
Printed Date/Time: 06/24/2015, 09:01

Page: 2 of 5

5025641699

Frankfort ME Office 

3:13 a.m.   05-09-2016   15/19

COLLINS, BILLY
Laboratory Case #: 2954343
Printed Date/Time: 06/24/2015, 09:01

| | Concentration | Units | Therapeutic Range | Loc |
|---|---|---|---|---|
| ALCOHOL | Negative | | | |
| AMPHETAMINES | Negative | | | |
| BARBITURATES | Negative | | | |
| BENZODIAZEPINES | Negative | | | |
| BUPRENORPHINE/METABOLITE | Negative | | | |
| CANNABINOIDS | Negative | | | |
| CARISOPRODOL/METABOLITE | Negative | | | |
| COCAINE/METABOLITES | Negative | | | |
| FENTANYL | Negative | | | |
| METHADONE/METABOLITE | Negative | | | |
| OPIATES | Negative | | | |
| PHENCYCLIDINE | Negative | | | |
| PROPOXYPHENE/METABOLITE | Negative | | | |
| TRAMADOL/METABOLITE | Negative | | | |

RS-02102-FUI

| | Concentration | Units | Therapeutic Range | Loc |
|---|---|---|---|---|
| Sodium | 154 | MMOL/L | | (1) |
| Potassium | 10.4 | MMOL/L | | (1) |
| Chloride | 122 | MMOL/L | | (1) |
| Glucose | 38 | mg/dL | | (1) |
| Urea Nitrogen | 16 | mg/dL | | (1) |
| Creatinine | 0.1 | mg/dL | | (1) |

< Volatile Testing Not Performed    >

Due to negative blood, tissue, and/or urine volatile (Acetone, Ethanol, Isopropanol, and Methanol) results, volatile testing was not performed on the vitreous specimen.

Performing Location(s):

(1)    LabCorp Dublin
       6370 Wilcox Road , Dublin, OH  43016-1296
       Medical Director: Patricia Canfield , MD,  License #: 36D0327333

COLLINS, BILLY
Laboratory Case #: 2954343
Printed Date/Time: 06/24/2015, 09:01

5025641699          Frankfort ME Office                       3:30 a.m.     05-09-2016          17/19

The Specimen Identified by the Laboratory Specimen Number has been handled and analyzed in accordance with all applicable requirements.

Laboratory Director

Andrea Terrell, Ph.D., DABCC

COLLINS, BILLY

Laboratory Case #:2954343

Print Date/Time:06/24/2015, 09:01

Page: 5 of 5

Case Reviewer

No Testing Performed     ^     v     Confirmation     Units     Therapeutic Range     Loc

1U-15-02102-1n





Vitreous Humour _____
Gastric Contents _____

Spleen _____
Other _____

**MICROBIOLOGY REQUIREMENTS:**

Lung _____
Blood _____

Influenza _____
Other _____

**OTHER STUDIES:**
x-Ray:   Yes ☐   No ☐
DNA Card _____
Mayo _____

Remarks:

I. Await further studies

II. Atherosclerotic cardiovascular disease
   A. Grade IV (85% stenosis) coronary atherosclerosis, RCA
   B. Grade II-III (51% stenosis) coronary atherosclerosis, LAD
   C. S/p stent placement, RCA

III. Cardiomegaly (411 g)

IV. Emphysema

V. Perimortem struggle with law enforcement officers including CEW use

Resident: _____

Medical Examiner: _[signature]_

**WHITE – Office File     GREEN – Coroner     CANARY – Administration     PINK - Police**

111 +C -D2102 .112



## KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

**ORI:**   **KYKSP1400**                          **Incident Number:**   **14-15-0262**

**Offense(s):**   **DEATH INVESTIGATION**

### SUPPLEMENT

**SUPPLEMENT**:   On Monday, May 09, 2016 I received a fax containing the requested documentation from the Medical Examiner's Office. I have attached a copy of the autopsy report to this investigation.

I will update the status of this investigation as I obtain further information.

**STATUS OF CASE:**  Open

**ATTACHMENTS:**  1.) Copy of autopsy report

| Det. Daniel Cook | 914 | 8hrs. | 05/10/16 | |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |

14-15-0262 - 63



## KENTUCKY STATE POLICE
## KYIBRS SUPPLEMENTARY REPORT

**ORI:**   **KYKSP1400**                              **Incident Number:**   **14-15-0262**

**Offense(s):**   **DEATH INVESTIGATION**

### SUPPLEMENT

**SUPPLEMENT:**  On Tuesday, June 21, 2016 I reviewed this investigation.  The Lawrence County Grand Jury has returned a no true bill for this case. A copy of the no true bill is attached. The autopsy report and death certificate are also attached to this investigation.

I have completed a Post level destruction order for all evidence associated with this case. I request this investigation be CLOSED.

**STATUS OF CASE:** Closed

**ATTACHMENTS:** None

| Det. Daniel Cook | 914 | 8hrs. | 06/21/16 | |
|---|---|---|---|---|
| **Officer Making Report** | **Badge No.** | **Time Spent** | **Date** | **Reviewed By** |

14-15-0262 - 64

# KENTUCKY STATE POLICE

# MEMORANDUM

TO:        POST 14 PROPERTY OFFICER

FROM:   Det Daniel Cook

DATE:   6/21/2016

SUBJECT:   DISPOSAL OF EVIDENCE OF NO VALUE OR CONTRABAND NOT
                  ENTERED IN COURT.

THE FOLLOWING EVIDENCE MAY BE DESTROYED:

| CASE OR CITATION NUMBER | TYPE OF EVIDENCE |
|---|---|
| 14-15-0262 | Any and All evidence |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Requesting Officer Det. R. Cook u/914
Date Destroyed:
Destroyed By:

14-15-0262-05

# KYIBR REPORT: OFFENDER SUPPLEMENT

**KSP RECORDS**

## COMMONWEALTH OF KENTUCKY

| SUSPECT SEQ. # | NAME: KEEFER, MASON | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| 3 of 4 | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|---|
| CITY: LOUISA | STATE: KY   ZIP CODE: 41230 | | | RESIDENT |

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|
| | MALE | WHITE | NOT HISPANIC | | | | |

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|---|
| of | | | 1 | 4 | 8 | |
| | ARRESTEE ARMED WITH | | 2 | 5 | 7 | |
| | | | 3 | 6 | 9 | |

| SUSPECT SEQ. # | NAME: WILHITE, DOUGLAS JR | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| 4 of 4 | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|---|
| CITY: LOUISA | STATE: KY   ZIP CODE: 41230 | | | RESIDENT |

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|
| | MALE | WHITE | NOT HISPANIC | | | | |

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|---|
| of | | | 1 | 4 | 7 | |
| | ARRESTEE ARMED WITH | | 2 | 5 | 8 | |
| | | | 3 | 6 | 9 | |

| SUSPECT SEQ. # | NAME: | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|---|
| CITY: | STATE:   ZIP CODE: | | | |

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|---|
| of | | | 1 | 4 | 8 | |
| | ARRESTEE ARMED WITH | | 2 | 5 | 7 | |
| | | | 3 | 6 | 9 | |

| SUSPECT SEQ. # | NAME: | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|---|
| CITY: | STATE:   ZIP CODE: | | | |

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|---|
| of | | | 1 | 4 | 7 | |
| | ARRESTEE ARMED WITH | | 2 | 5 | 8 | |
| | | | 3 | 6 | 9 | |

**SUSPECT/ARRESTEE DATA**

 

# KYIBRS REPORT
## COMMONWEALTH OF KENTUCKY

**KSP RECORDS**

**VICTIM DATA**

| VICTIM SEQUENCE | | VICTIM NAME | | PHONE |
|---|---|---|---|---|
| 1 of 1 | COLLINS, BILLY J JR | | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

Address Unknown ☐ ADDRESS: | VICTIM TYPE: **INDIVID**

| CITY: LOUISA | | STATE: KY | ZIP CODE: 41230 | KY RESIDENT: **RESIDENT** |
|---|---|---|---|---|

| DATE OF BIRTH | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER |
|---|---|---|---|
| MALE | WHITE | NOT HISPANIC | YES ☐ |

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| VICTIM OF OFFENSE(S) | AGG ASSAULT/ HOMICIDE CIRC | ADDTL JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| 03014 | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|

**SUSPECT/ARRESTEE DATA**

| SUSPECT SEQ. # | NAME: WILBURN, STEVEN | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| 1 of 4 | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: LOUISA | STATE: KY | ZIP CODE: 41230 | RESIDENT |
|---|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|
| | MALE | WHITE | NOT HISPANIC | | | | |

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | |
|---|---|---|---|---|---|---|
| of | | | 1 | 4 | 8 | |
| | ARRESTEE ARMED WITH | | 2 | 5 | 7 | |
| | | | 3 | 6 | 9 | |

| SUSPECT SEQ. # | NAME: MILLER, JORDAN | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| 2 of 4 | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: LOUISA | STATE: KY | ZIP CODE: 41230 | RESIDENT |
|---|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|
| | MALE | WHITE | NOT HISPANIC | | | | |

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | |
|---|---|---|---|---|---|---|
| of | | | 1 | 4 | 7 | |
| | ARRESTEE ARMED WITH | | 2 | 5 | 8 | |
| | | | 3 | 6 | 9 | |

**WITNESS DATA**

| WITNESS SEQUENCE | WITNESS NAME | PHONE |
|---|---|---|
| of | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: | DATE OF BIRTH |
|---|---|

| CITY: | STATE: | ZIP CODE: | SSN: |
|---|---|---|---|

*SUPPLEMENT*  **KYIBRS REPORT**  **KSP RECORDS**

COMMONWEALTH OF KENTUCKY

## ADMINISTRATIVE

| AGENCY ORI/NAME | KSP1400 KY STATE POLICE, POST 14 | | INCIDENT NUMBER | KY 14-15-0262 | | | |
|---|---|---|---|---|---|---|---|

| INCIDENT DATE/TIME | EXACT/ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | CLEARED |
|---|---|---|---|---|---|---|
| 05/29/2015 20:30 TO 05/29/2015 21:31 | ESTIMATE | 05/29/2015 | 21:31 | 22:12 | 23:01 | 02:35 |

REPORTED BY: **FUGITT, GREG**  HOW REPORTED

LICENSE/ID STATE:  LICENSE/ID NUMBER:  **OTHER AGENCY**

ADDRESS: **215 NORTH MAIN CROSS ST**

CITY:  STATE: **KY** ZIP CODE: **41230** PHONE NUMBER:

| EXACT LOCATION OF OFFENSE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **LOUISA POLICE DEPARTMENT** | | | | | | SECTOR NO: | | |
| ADDRESS: **215 NORTH MAIN CROSS ST STE** | | | | | | | | |
| CITY: **LOUISA** | | | | | | STATE: **KY** | ZIP CODE: | **41230** |
| COUNTY: **LAWRENCE** | | LATITUDE | **38 DEG** | **7.021 MIN** | LONGITUDE | **82 DEG** | **36.257 MIN** | |

## OFFENSE DATA

| SEQUENCE # | 1 OF 1 | LOCATION TYPE: **GOVERNMENT/PUBLIC BUILDING** | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|---|

OFFENSE DESCRIPTION: **NON-CRIMINAL DEATH**

| OFFENSE CODE: **03014** | ASCF CODE: **0** | KRS CODE: ***.*** | CLASS: | DEGREE: **O** | COUNTS: **1** |
|---|---|---|---|---|---|

| BIAS MOTIVATION: **NONE (NO BIAS)** | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

OFFENDER SUSPECTED OF USING: **DRUGS/NARCOTICS**  COURT ORDER TYPE:

| SEQUENCE # | OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

OFFENDER SUSPECTED OF USING:  COURT ORDER TYPE:

| SEQUENCE # | OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

OFFENDER SUSPECTED OF USING:  COURT ORDER TYPE:

## PROPERTY DATA

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|

### GENERAL

| PROPERTY DESCRIPTION | | | | |
|---|---|---|---|---|
| OWNER APPLED NUMBER | | | SERIAL NUMBER | |
| MAKE | | MODEL | | OWNER |

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|

### GENERAL

| PROPERTY DESCRIPTION | | | | |
|---|---|---|---|---|
| OWNER APPLED NUMBER | | | SERIAL NUMBER | |
| MAKE | | MODEL | | OWNER |

| TOTAL STOLEN VALUE: | $0.00 | TOTAL RECOVERED VALUE: | $0.00 | TOTAL VEHICLES STOLEN: | 0 | TOTAL VEHICLES RECOVERED: | 0 |
|---|---|---|---|---|---|---|---|

## STATUS

| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY |
|---|---|---|---|---|---|
| CLOSED | 06/21/2016 | EXCEPTIONALLY CLEARED | PROS DECLINED | 11/13/2015 | YES ☐ |

| SUBMITTING OFFICER | INVESTIGATING OFFICER | UNIT/BADGE # | REVIEWED BY | TIME SPENT |
|---|---|---|---|---|
| C CARTER | D COOK | 914 | B CRAMER | 8 hrs |

County _____

# EVIDENCE/RECOVERED PROPERTY

OWNER _Billy Collins Jr_  CASE/CITATION NO _14-15-0262_

OWNER ADDRESS _Louisa, KY_  LAB NO _____

DATE/TIME RECOVERED _5-24-15  2330 hs_  LOCATION RECOVERED _____

DATE/TIME OWNER NOTIFIED _____  LOCATION STOLEN _____

DATE/TIME CHECKED NCIC/LINK _____  LOCATION OBTAINED _TRMC/LPD_

MAY PROPERTY BE RELEASED ___YES ___NO _✓_ CONDITIONAL  LOCATION STORED _Post 14_

CONDITIONS OF RELEASE _Court Order/ Case Close_  STATE/FEDERAL FORFEITURE ___YES ___NO

EVIDENCE/PROPERTY OBTAINED _____  ADDRESS _____

## EVIDENCE/PROPERTY INFORMATION

| ITEM NUMBER | NUMBER OF ITEMS | DESCRIPTION OF EVIDENCE/PROPERTY (Make, model, color, vin, serial #, condition, identifying marks, etc.) |
|---|---|---|
| 1 | 1 | 1 taser probe w/ wire connected located under deceased @ TRMC @ 2330 |
| 2 | 1 | 1 Spent taser cartridge on ramp with no barb @ 0034 |
| 3 | 1 | 1 spent taser cartridge from banister, no probes @ 0037 |
| 4 | 1 | 1 taser barb from foyer @ 0039 |
| 5 | 8 | 8 pieces of taser wire - no barbs - center of foyer |
| 6 | 1 | 1 spent taser cartridge from office with wires extending into foyer with no barbs @ 0043 |
| 7 | 1 | 1 taser wire near City Hall door @ 0044 |

CASE OFFICER _____  UNIT NO. _____  DATE ___/___/___

## CHAIN OF CUSTODY   FINAL DISPOSITION DATE ___/___/___

| ITEM NUMBER | DATE/ TIME | RELINQUISHED BY | RECEIVED BY | PURPOSE OF RELEASE |
|---|---|---|---|---|
| 1-7 | 5/20/15 5/30/15  0150 | 701 | SP 0509 | Temp Storage A/164 |
| 1-7 | 6/1/15  1130 | 701 | Evid Dep | E. Under Storage |
| 1-7 | 6/10/15 1070 | EL-15 | EVID. 124 | STORAGE |
| 1-7 | 6/24/16 1100 | Evid | 124 | dest. per memo |
| | | Evidence Destroyed | | |
| | By: | 124 | | |
| | Date: | 6-24-16 | | |
| | Method: | Fire | | |

County _Lawrence_

# EVIDENCE/RECOVERED PROPERTY

OWNER _Billy Collins Jr_    CASE/CITATION NO _14-5-0262_

OWNER ADDRESS _Louisa, KY_    LAB NO _____

DATE/TIME RECOVERED _5-29-15  2330 hrs_    LOCATION RECOVERED _____

DATE/TIME OWNER NOTIFIED _____    LOCATION STOLEN _____

DATE/TIME CHECKED NCIC/LINK _____    LOCATION OBTAINED _TRMC/LPD_

MAY PROPERTY BE RELEASED ___YES ___NO _✓_ CONDITIONAL   LOCATION STORED _Post 14_

CONDITIONS OF RELEASE _Court Order / Case Closure_   STATE/FEDERAL FORFEITURE ___YES ___NO

EVIDENCE/PROPERTY OBTAINED _____    ADDRESS _____

## EVIDENCE/PROPERTY INFORMATION

| ITEM NUMBER | NUMBER OF ITEMS | DESCRIPTION OF EVIDENCE/PROPERTY (Make, model, color, vin, serial #, condition, identifying marks, etc.) |
|---|---|---|
| 8 | 1 | 1 probe located behind door/exit 0046 |
| 9 | 2 | 1 piece of whistle chain & 1 handcuff key 0046 |
| 10 | 3 | 1 black baseball cap 1 pair flipflops, 1 tazer wire 0057 |
| 11 | 1 | Longer piece of whistle chain 0054 |
| 12 | 1 | Short piece of whistle chain 0054 |
| 13 | 3 | 1 pair of black gloves, 1 pair steel hinge cuffs 1 pair black nsp cuffs 0056 |
| 17 | 4 | 1 pair of denim jeans, 1 zippo holster, 1 brown belt, 1 pocket watch 2330 |
| 18 | 7 | 3 plastic cups containing taser probes, 1 cup containing taser wire, DNA card, 2 envelopes fingernail clippings 1520 hrs |

CASE OFFICER _____   UNIT NO._____   DATE___/___/___

## CHAIN OF CUSTODY    FINAL DISPOSITION DATE___/___/___

| ITEM NUMBER | DATE/ TIME | RELINQUISHED BY | RECEIVED BY | PURPOSE OF RELEASE |
|---|---|---|---|---|
| 8-13, 17, 18 | 5/30/15 0150 | 701 | SP6809 | Trsp Stor. 4/164 |
| 8-13, 17, 18 | 6/1/15 1630 | 701 | Evid. Prop | Evid. Storage |
| 8-13 17+18 | 6/10/15 1020 | EC15 | EVID/124 | STORAGE |
| 8-13  17 +18 | 6-24-16 1100 | Evid | 124 | Dest. Per memo |
| | | | | |
| | | **Evidence Destroyed** | | |
| | | By: ___124___ | | |
| | | Date: ___6-24-16___ | | |
| | | Method: ___Fire___ | | |

KSP-41 (Revised 11/92)

County _LAWRENCE_

# EVIDENCE/RECOVERED PROPERTY

OWNER _BILLY COLLINS JR. (DECEASED)_  CASE/CITATION NO _14-15-02102_

OWNER ADDRESS _LOUISA, KY_  LAB NO _____

DATE/TIME RECOVERED _05-30-15  1500 HRS_  LOCATION RECOVERED _OWERS PERSON_

DATE/TIME OWNER NOTIFIED _-NA-_  LOCATION STOLEN _____

DATE/TIME CHECKED NCIC/LINK _-NA-_  LOCATION OBTAINED _Autopsy_

MAY PROPERTY BE RELEASED ___YES ___NO _✓_ CONDITIONAL LOCATION STORED _____

CONDITIONS OF RELEASE _PENDING FINAL INV._  STATE/FEDERAL FORFEITURE ___YES _✓_ NO

EVIDENCE/PROPERTY OBTAINED _____  ADDRESS _____

## EVIDENCE/PROPERTY INFORMATION

| ITEM NUMBER | NUMBER OF ITEMS | DESCRIPTION OF EVIDENCE/PROPERTY (Make, model, color, vin, serial #, condition, identifying marks, etc.) |
|---|---|---|
| 14 | 1 | BLUE SUPERMAN T-SHIRT |
| 15 | 1 | PLAID SHORTS |
| 16 | 1 | BLUE HANES BRIEFS |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

CASE OFFICER _Det Chris Cark_  UNIT NO. _701_  DATE _6 / 1 / 15_

## CHAIN OF CUSTODY   FINAL DISPOSITION DATE____/____/____

| ITEM NUMBER | DATE/ TIME | RELINQUISHED BY | RECEIVED BY | PURPOSE OF RELEASE |
|---|---|---|---|---|
| 14-16 | 5/30/15 1530 | MF | 701 | SP (6809 Typ Story Al/6Y |
| 14-16 | 6-1-15 1342 | 701 | Dry Locker | Storage |
| 14-16 | 6-24-16 1100 | EVID | 124 | Destroyed Per Memo |
| | | | | |
| | | | Evidence Destroyed | |
| | | By: | 124 | |
| | | | | |
| | | Date: | 6-24-16 | |
| | | Method: | Fire | |

KSP-41 (Revised 11/92)

# Louisa Police Department

| Policy # LPD 08-01 | Related Policies: LPD 08-02 |
|---|---|
| **Response to Resistance** | |
| *This policy is for internal use only and does not enlarge an employee's civil liability in any way. The policy should not be construed as creating a higher duty of care, in an evidentiary sense, with respect to third party civil claims against employees. A violation of this policy, if proven, can only for the basis of a complaint by this department for non-judicial administrative action in accordance with the laws governing employee discipline.* | |
| Applicable State Statutes: K.R.S. 503.090 | |
| CALEA Standard:  **1.3.1, 1.3.2, 1.3.5, 1.3.6., 1.3.7, 1.3.10,  26.1.1** | |
| Date Implemented:  January 12, 2010 | Review Date:  March 28, 2014 |
| Supersedes:  All | |

I.  **Purpose:** The purpose of this policy is to direct officers in the appropriate use of force.

II.  **Policy:** The policy of this department is to protect and serve all citizens while at the same time respecting the rights of suspects and balancing the need for officer safety in use of force events.   It is the policy of this department that officers will use only reasonable force to bring an incident or event under control.   Reasonable force is only that force which is necessary to accomplish lawful objectives.  All uses of force must be objectively reasonable.

III.  **Definitions:**

A.  **Deadly Force:** Any force that is likely to cause serious bodily harm or death.

B.  **Non-Deadly Force:** All uses of force other than those that are likely to cause serious bodily harm or death.

C.  **Imminent:** Impending or about to occur.

D.  **Objectively Reasonable:** The amount of force that would be used by other reasonable and well-trained officers when faced with the circumstances that the officer using the force is presented with.

E.  **Reasonable Belief:** Reasonable belief means that the person concerned, acting as a reasonable person believes that the prescribed facts exist.

F.  **Serious Bodily Harm: (18 U.S.C. § 1365 (h) (3)):** the term "serious bodily injury" means bodily injury which involves

a.  a substantial risk of death;

b.  extreme physical pain;

c.  protracted and obvious disfigurement; or

1

    **d.** protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

**G. Electronic Control Device**: Tasers or stunguns (electronic control weapons) that disrupt the central nervous system of the body.

## IV. Procedure:

**A.** In determining the appropriate level of force officers should apply the levels of force under the department's trained use of force continuum along with the following three factor test:

    **a.** How serious is the offense the officer suspected at the time the particular force used?

    **b.** What was the physical threat to the officer or others?

    **c.** Was the subject actively resisting or attempting to evade arrest by flight?

**B. Force Options:** Officers have several force options that will be dictated by the actions of the suspect upon the appearance of the police officer. Officers may be limited in their options due to the circumstances and actions of the subject. For example, an officer who immediately observes a subject with a firearm unjustifiably threatening another may immediately respond with deadly force without considering other force options.

    **a. Command Presence:** Visual appearance of officer where it is obvious to the subject due to the officer's uniform or identification that the officer has the authority of law.

    **b. Verbal Commands:** Words spoken by the officer directing the subject as to the officer's expectations.

    **c. Soft Empty Hand Control:** Officer's use of hands on the subject to direct the subject's movement; Techniques that have a low potential of injury to the subject.

    **d. Chemical Spray:** Where subject exhibits some level of active resistance/active aggression, officers may use chemical spray to temporarily incapacitate the subject.

    **e. Electronic Control Devices:** Where subject exhibits some level of active resistance/active aggression an officer may use an electronic control device to temporarily incapacitate the subject.

    **f. Hard Hand Control:** Punches and other physical strikes, including knees, kicks and elbow strikes that have the possibility of creating mental stunning and/or motor dysfunction.

    **g. Impact Weapons:** Batons, ASP/Expandable Baton may be utilized in cases where the officers believe the use of these weapons would be reasonable to bring the event under control. Examples would be where other options have been utilized and failed or where based on the officer's perception at the time, the other options would not be successful in bringing the event to a successful conclusion.

    **h. Canine:** Use of canine to bite and hold subject to prevent escape or to gain control of a subject who is actively aggressing toward officer(s). Prior to deployment of a canine, a warning in the form of an announcement shall be made.

    **i. Deadly Force:** Force that is likely to cause serious bodily harm or death.

2

C. **Deadly Force:** The use of deadly force is objectively reasonable when:

    a. The officer is faced with an imminent threat of serious bodily harm or death to him/herself, or some other person who is present, or;

    b. To prevent the escape of an individual in cases where the officer has probable cause to believe that the subject has committed a violent felony involving the infliction or threatened infliction of serious bodily harm or death <u>AND</u> by the subject's escape they pose an imminent threat of serious bodily harm or death to another.

    c. Officers should warn the subject prior to using deadly force where feasible.

D. Kentucky statutory law provides:

    a. The use of physical force by an officer upon another person is justifiable when the officer, acting under official authority, is making or assisting in making an arrest, and he:

        i. Believes that such force is necessary to effect the arrest;

        ii. Makes known the purpose of the arrest or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested; and

        iii. Believes the arrest to be lawful.

    b. The use of deadly physical force by a defendant upon another person is justifiable only when:

        i. The officer, in effecting the arrest, is authorized to act as a peace officer; and

        ii. The arrest is for a felony involving the use or threatened use of physical force likely to cause death or serious physical injury; **and**

        iii. The officer believes that the person to be arrested is likely to endanger human life unless apprehended without delay.

E. Once the subject's active resistance has ceased and control has been gained an officer is no longer authorized to use force. Officers should immediately provide any necessary medical assistance to the subject to the degree to which they are trained and provide for emergency medical response where needed.

F. Discharge of Firearms Restrictions:

    a. Warning Shots are prohibited

    b. Discharge of firearms is prohibited when the officer is presented with an unreasonable risk to innocent third parties.

    c. When a moving vehicle is involved, use of deadly force by discharging a firearm is dangerous, can be ineffective, and should not occur when there is an unreasonable risk to the safety of persons other than the subject. Whenever possible, officers should avoid placing themselves in a position where use of deadly force is the only alternative.

    d. Even when deadly force is justified, firearms shall not be discharged at a vehicle unless:

3

     i.    The officer has a reasonable belief that an occupant of the vehicle poses an imminent threat of death or serious physical injury to the officer or another person, or

     ii.   The officer has a reasonable belief that an occupant is using the vehicle in a manner that poses an imminent threat of death or serious physical injury to the officer or another person, and there is no avenue of escape.

G. **Less-Lethal Weapons/Tactics:** Prior to deployment of any less-lethal weapon, officers must be trained and certified in the proper use of the weapon from both the technical and legal aspects. All deployments must be consistent with departmental use of force training and policy.

  a.  **Chemical Spray:**

     i.    Chemical Spray shall not be deployed as a compliance technique for a person who is passively or verbally non-compliant. Active resistance/active aggression shall be required.

     ii.   Chemical Spray shall never be used as a punitive measure.

     iii.  Officers should never spray from a pressurized can directly into a subject's eyes from a close distance due to the potential for eye injury as a result of the pressurized stream. Officers should never spray directly into a subject's eyes from closer than three feet or the distance recommended by the manufacturer of the spray (whichever is shorter) unless deadly force would be justified.

     iv.  Officers shall consider alternatives to chemical spray when attempting to control a subject in a crowded-enclosed area due to the innocent over-spray that may cause the onset of panic.

     v.   Officers shall consider alternatives to chemical spray when the event is inside a building, particularly where the building has a closed-ventilation system due to the potential impact on innocent persons who may have to be evacuated (temporarily) from the locations.

     vi.  Once control is gained, officers should immediately provide for the decontamination of the subject.

     vii.  If the person shows any signs of physical distress or does not recover in a reasonable amount of time, officers should immediately direct an emergency medical response and render first-aid at the degree for which they are trained.

  b.  **Electronic Control Devices**

     i.    An electronic control device as a force option is the same level of force as chemical spray.

     ii.   Electronic Control Device must be worn on the weak-side in either a weak-hand draw or cross-draw position.

     iii.  Electronic Control Device deployment shall not be considered for the passively resistant subject. Active resistance/active aggression shall be required.

     iv.  Flight from an officer, standing alone, is not a jusitifcation for the use of an electronic control device. Officers should consider the nature of the offense suspected, the level of suspicion with respect to the person fleeing, and the

risk of danger to others if the person is not apprehended immediately.

v.    Officers must be trained concerning ability of electrical charge to act as an ignition for combustible materials. (Note: Officers have been seriously injured and or killed after deploying a Electronic Control Device in the presence of open natural gas during a suicidal person call)

vi.    Multiple Electronic Control Device deployments against an individual may increase the likelihood of serious injury where the individual is suffering from other symptoms such as cocaine intoxication. Policy and training should encourage officers to minimize the successive number of discharges against an individual where possible.

vii.    The agency recognizes however, particularly where back-up officers are unavailable, that multiple applications may be necessary to gain or maintain control of a combative individual.

viii.    No more than one officer should deploy an electronic control device against a single individual at the same time.

ix.    A contributing factor to serious injury or death is the level of a subject's exhaustion. Studies recommend that when an officer believes that control of a subject will be necessary and met with resistance, deployment of the Electronic Control Device should be considered early on in the event so that the person has not reached a level of exhaustion prior to the Electronic Control Device's use.

x.    In cases where subject is actively resisting an officer's attempt to take them into custody but not threatening the officer with an assault, it is recommended that the Electronic Control Device be used in the "push stun mode."

xi.    The preferred targeting is the center mass of the subject's back, however it is recognized that it is not always possible to get behind the subject.

xii.    Where back-targeting is not possible, frontal targeting should be lower center mass. Intentional deployments to the chest shall be avoided where possible.

xiii.    Officers who are aware that a female subject is pregnant shall not use the Electronic Control Device unless deadly force would be justified due to the danger created by the secondary impact or the possibility of muscle contractions leading to premature birth.

xiv.    Officers shall make all reasonable efforts to avoid striking persons in the head, neck, eyes or genitals.

xv.    Officers are prohibited from using the device as punitive measure.

xvi.    Electronic Control Devices shall not be used against a person who is in physical control of a vehicle in motion unless deadly force would be justified based on an existing imminent threat.

xvii.    A warning prior to discharge is preferred but not always necessary for this type of force to be considered reasonable. Model policies as well as courts have noted that giving a subject, who is assaultive toward the officer, a warning may enhance the danger to the officer and the subject by giving the subject time to avoid the deployment. See: Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004).

xviii. Officers shall make all efforts to warn other officers that a deployment is about to occur.

xix. The device shall never be used on a handcuffed person to force compliance unless the subject is actively resistant and control cannot be otherwise accomplished.

xx. Officers should consider the location and environment of the subject. i.e. Is the subject at the top of a stairwell such that when incapacitated by the Electronic Control Device-they fall down the stairs causing a collateral injury. Officers shall avoid using the Electronic Control Device in cases where the subject is elevated i.e. roof, fire escape, tree, bridge, stairwell, etc. such that the secondary impact may cause serious injury.

xxi. Officers should be aware that a subject's heavy clothing may impact the effectiveness of the electronic control device.

xxii. Officers should consider whether the subject has been exposed to combustible elements that may be on their person such as gasoline. The use of a Electronic Control Device on such persons may cause an ignition and fire.

xxiii. Officers should consider the particular subject and any vulnerabilities they may have such as: a person who is small in stature or very frail will be more dramatically impacted; some agencies have been criticized as well as sued for use on pregnant women, the very young and the elderly.

xxiv. Alternative tactics shall be utilized where the officer has prior information that the subject suffers from a disability which would increase the danger to that person by using the Electronic Control Device. i.e. A person at the scene tells an officer that the subject has a heart condition.

xxv. Deployed probes that have been removed from a suspect should be treated as a bio-hazard.

xxvi. Removal shall be conducted by trained personnel. Where EMS is available, their services may be utilized for the removal of darts that have penetrated the skin as long as such removal can be accomplished without causing further injury or pain to the subject.

xxvii. All persons who have been the subject of an Electronic Control Device deployment shall be monitored for a period of time with focus on symptoms of physical distress. Any person who appears to be having any form of physical distress following the deployment of a ECD, shall be transported to a medical facility for a medical examination. It should be noted that studies indicate that persons who suffer from excited delirium may not be immediately impacted and the onset of difficulty may occur a period of time after the police control event.

xxviii. Mandatory Medical Clearance at Hospital:

(a) Persons struck in a sensitive area-eyes, head, genitals, female breasts.

(b) Where the probes have penetrated the skin and EMS cannot safely remove the darts in accord with this policy.

(c) Persons who do not appear to have fully recovered after a short period of

time (10 minutes or less). However, officers who observe unusual physical distress should immediately call for medical assistance and should not wait the ten-minute recovery period,

(d) Persons who fall into one of the vulnerable classes such as juveniles, pregnant women, persons who are small in stature, persons who officers become aware have a pre-existing medical condition that increases danger and the elderly.

(e) Subject who request medical assistance.

**xxix.** Documentation:

(a) All deployments of an Electronic Control Device shall be documented including those cases where a subject complies once threatened with such a device. By documenting the non-discharge uses, an agency establishes officer judgment and control as well as the deterrent effect of this tool.

(b) Photographs of the effected area, shall be taken following the removal of darts from the subject to document any injury. Where the push-stun method has been used, photographs are extremely important due to the increased potential for this method to cause scarring.

(c) Supervisory personnel shall be notified and review all Electronic Control Device deployment for consistency with policy and training.

(d) Darts/Cartridges shall be properly stored and maintained as evidence following a discharge.

(e) Officers are required to complete a "response to active resistance form" which shall be reviewed by a supervisor following the ECD use.

(f) All deployments shall be reviewed by the agency as well as training personnel.

(g) Where there is any indication of lasting injury, claim or complaint, internal data from device shall maintained.

(h) All ECD units data will be downloaded following all deployment/activations have been reported as required.

c. **Impact Weapons:** Batons, ASP/Expandable Baton

i.   Impact weapons may be utilized in cases where the officers believe the use of these weapons would be reasonable to bring the event under control.

ii.  Examples would be where other options have been utilized and failed or where based on the officer's perception at the time, the other options would not be successful in bringing the event to a successful conclusion.

iii. Officers shall not intentionally strike a person in the head with an impact weapon unless deadly force would be justified.

| Unit | Serial Number | Expiration Date | Issue Date | Used |
|------|---------------|-----------------|------------|------|
| 1186 | C3100W1F8 | Dec-15 | 11/28/11 | Training |
| 221 | C3100W1N2 | Dec-15 | 2/8/11 | Training |
| 826 | C3100W1FF | Dec-15 | 2/9/11 | 7.14.14 |
| 523 | C3100W1FK | Dec-15 | 10/17/11 | Training |
| PR | C3100VCCM | Dec-15 | 2/8/11 | Training |
| PR | C3100W1D1 | | | Training |
| 523 | C3100VR8E | | 2/11/12 | |
| 322 | C3100wm22 | Dec-15 | 6/7/14 | Training |
| 1224 | C3102M1VN | Jan-18 | 6/7/14 | Training |
| 234 | C3100W1M9 | Dec-15 | 6/7/14 | Training |
| 322 | C3102M1FA | Jan-18 | 6/7/14 | Training |
| 234 | C3102M1VX | Jan-18 | 6/7/14 | Training |
| 1224 | C3102M20P | Jan-18 | 6/7/14 | Training |
| | 7 Carts in PR | | | |
| | 5 Batts in PR | | | |
| 1224 | 3C102M1N4 | Jan-18 | 6/7/14 | |
| 322 | C3102M0FV | Jan-18 | 6/7/14 | |
| 234 | C3100VR8H | Jan-18 | 6/7/14 | |
| 826 | C3102M0WE | Jan-14 | 7.14.14 | |

| MAKE | MODEL | SERIAL | ASSIGNMENT | ISSUE | New Battery |
|------|-------|--------|------------|-------|-------------|
| Taser | X_26 | X00-373303 | 322 – | 6/7/14 | 80% 6/7/14 |
| Taser | X_26 | X00-373302 | 1224 | 6/7/14 | 96% 6/7/14 |
| Taser | X_26 | X00-373260 | 234 | 6/7/14 | 89% 6/7/14 |
| Taser | X_26 | X00-452549 | | PR | |
| Taser | X_26 | X00-373256 | 826 | 12/6/08 | 3/5/2013 |
| Taser | X_26 | X00-429031 | 523 – | 10/17/11 | |
| Taser | X_26 | X00-424114 | 221 | 12/10/08 | |

# Louisa Police Department



Training and Personnel Files
For
Sgt. Steven Wilburn
&
Ptl. Jordan Miller

# Louisa Police Department



**215 North Main Cross St.**
**Louisa, Ky. 41230**
**Ph:606-638-4058**
**Fx:606-638-1102**

*Chief Greg A. Fugitt*                                              *Mayor Teddy Preston*

Mayor Preston,

　　　As you know I have been contemplating the ideal of promoting another officer to the position of Sergeant to help assist with the evening shifts and training of younger officers. As of October 9, 2013 I have decided on promoting Officer Steven Wilburn to that position. Based on his outstanding performance in handling our departments' field training program, ability to take instructions from myself, and his overall work performance I felt he was best for that position. As we discussed that position comes a raise, I am requesting a rate of $1.50 increase should be added to his hourly pay. Please let me know if you have any questions.

Greg A. Fugitt
Chief of Police

Approved
10-25/13
Teddy Preston - MAYOR

from 11.63 to 13.13

Fax: (606) 638-1418

Ted Preston
MAYOR

K.T. Adkins
CHIEF OF POLICE

# APPLICATION FOR EMPLOYMENT

THIS APPLICATION MUST BE PRINTED IN INK. ALL SPACES MUST HAVE AN ENTRY. IF "NO" OR "NONE" APPLIES SO STATE. IF ADDITIONAL SPACE IS NEEDED OR DESIRED. ATTACH A SEPARATE SHEET OF PAPER AND NUMBER YOUR REMARKS ACCORDING TO THE NUMBER OF THE QUESTION REFERRED TO IN THE APPLICATION.

Patrolman

TITLE OF POSITION DESIRED     SOCIAL SECURITY NUMBER

1. NAME IN FULL  Wilburn     Stevn     Dwayne
                 LAST        FIRST      MIDDLE        MAIDEN

2. *SEX  Male     W     21

3. ADDRESS:                     Louisa
   COUNTY  Lawrence     ZIP CODE  41230

4. PHONE: AREA CODE  606  NUMBER

5. DRIVER'S LICENSE NUMBER _____ STATE  KY

6. PLACE OF BIRTH: CITY  Louisa  COUNTY Lawrence STATE  KY

7. DATE OF BIRTH  05-23-1986  BIRTH CERTIFICATE _____

8. PHYSICAL DESCRIPTION  5'11"          BLK     BRN
                         HEIGHT  WEIGHT  HAIR    EYES

9. MARITAL STATUS ( SINGLE,MARRIED,DEVORCED,ETC)  Married

* THIS INFORMATION GATHERED FOR STATISTICAL PURPOSSES ONLY.

10. GIVE LOCATION ADDRESS AND DATES OF EACH RESIDENCE FOR THE PAST TEN (10) YEARS.

Louise KY 91230      12/07 - Present
Louis, KY 91230      5/07 - 12/07
Louise KY 91230      95 - 07

11. HAVE YOU EVER BEEN CITED TO COURT, FINED OR INCARCERATED AS A RESULT OF A TRAFFIC OR CRIMINAL CHARGE? IF YES, PLEASE SPECIFY WHAT CHARGES, DATES, LOCATIONS, AND BY WHAT COURT. ___NO___

12. HAVE YOU BEEN INVOLVED IN A MOTOR VEHICLE ACCIDENT AS AN OPERATOR WHICH RUSULTED IN INJURY OR PROPERTY DAMAGE OF $250 OR MORE? ___NO___ GIVE DETAILS IN EACH CASE BY LISTING DATES, LOCATIONS, DAMAGES, AND/OR INJURIES INCURRED AND ACTIONS TAKEN BY POLICE, COURTS OR THE DIVISION OF DRIVERS LICENSING OF THE STATE WHERE ACCIDENT OCCURRED. ___N/A___

13. HAVE YOU EVER BEEN A DEFENDANT IN ANY COURT ACTION OTHER THAN AS SPECIFIED IN NO.11? IF YES, GIVE DETAILS. ___NO___

14. MILITARY SERVICE: GIVE DATES, BRANCH OR SERVICE, TYPE OF DISCHARGE, HIGHEST RANK HELD AND DUTIES. ___N/A___

15. WERE YOU EVER DEMOTED OR COURT-MARTIALED WHILE IN MILITARY SERVICE? ___
   IF YES, GIVE DETAILS. ___N/A___

16. WERE YOU EVER DISCHARGED FROM MILITARY SERVICE WITH A SERVICE CONNECTED DISABILITY? _____ N/A _____ IF YES, GIVE DETAILS _____

17. DESCRIBE ANY PHYSICAL DEFECTS, VISION STATUS (with or without glasses) COLOR BLINDNESS OR DEFORMITIES _____ Glasses _____

18. FATHER'S NAME _Phil Wilburn_   MOTHER'S NAME _Loretta Wilburn_
ADDRESS _____, _Louisa_ ADDRESS _____ 11 _____

19. SPOUSES' FULL NAME _Heather Colleen Wilburn_
ADDRESS _____, _Ln; Louisa KY 41230_

20. NUMBER OF CHILDREN _____ 1 _____   NUMBER OF DEPENDENTS _____ 2 _____

21. INDICATE TOTAL EXTENT YOU ARE FINANCIALLY OBLIGATED TO OTHERS. $_____
COMPLETE ADDRESSES OF ALL CREDITORS ( attach separate sheet if necessary ) _____

22. HAVE YOU EVER BEEN DECLARED BANKRUPT? _____ NO _____ IF YES, ATTACH SEPARATE SHEET GIVING FULL DETAILS.

23. GIVE NAMES OF CLUBS, SOCIETIES, AND OTHER ORGANIZATIONS OF WHICH YOU ARE A MEMBER. _____ LFD _____

24. ARE YOU NOW, OR HAVE YOU EVER BEEN, A MEMBER OF ANY ORGANIZATION, ASSOCIATION, MOVEMENT, GROUP, OR COMBINATION OF PERSONS WHICH ADVOCATED THE OVERTHROW OF OUR CONSTITUTIONAL FORM OF GOVERNMENT, OR OF ANY ORGANIZATION, ASSOCIATION, MOVEMENT, GROUP OR COMBINATION OF PERSONS, WHICH HAS ADOPTED A POLICY OF ADVOCATING OR APPROVING THE COMMISSION OF ACTS OF FORCE OR VIOLENCE TO DENY OTHER PERSONS THEIR RIGHTS UNDER THE CONSTITUTION OF THE UNITED STATES OR OF SEEKING TO ALTER THE FORM OF GOVERNMENT OF THE UNITED STATES BY UNCONSTITUTIONAL MEANS? _____ NO _____

25. LIST FIVE (5) PERSONAL REFFERENCES THAT ARE AT LEAST TWENTY-ONE (21) YEARS OF AGE, WHO YOU HAVE KNOWN WELL DURING THE PAST THREE (3) YEARS.

| | NAME | ADDRESS | YEARS KNOWN |
|---|---|---|---|
| 1 | George Williams | | 16 |
| 2 | Rick May | | 4 |
| 3 | Nick Hughes | | 8 |
| 4 | Ben Adkins | | 10 |
| 5 | Casey Mays | | 4 |

26. EDUCATION / TRAINING:

| NAME AND LOCATION OF SCHOOL (GIVE COMPLETE ADDRESS) | DATES FROM | TO | DIPLOMAS / DEGREES RECEIVED |
|---|---|---|---|
| ELEMENTARY Louisa Elem | | | |
| HIGH SCHOOL LCHS | | June '05 | Diploma |
| COLLEGE ACTC | | | |
| Colier Dr. Ashland KY | Aug 2005 | Present | |
| SPECIAL TRAINING | | | |

27. LIST ANY SPECIAL SKILLS YOU HAVE  CPR, Cert. title + F.F.

28. EMPLOYMENT HISTORY:  COMPLETE IN DETAIL GIVING NAMES AND ADDRESSES. ( BEGIN WITH PRES -ENT OR LAST EMPLOYERS, INCLUDE TIME IN SERVICE AND ACCOUNT FOR PERIODS OF UNEMPLOYMENT).

ALL EMPLOYMENT MUST BE LISTED



| NAME AND ADDRESS OF EMPLOYER | POSITION AND KIND OF WORK | FROM | TO | SALARY |
|---|---|---|---|---|

NAME _US. Army Corps of Engineers_

STREET _708 Yatesville Dam Rd_   _Co-OP Park Ranger_   _10/07_   _03/08_   _12.73/hr_

CITY & STATE _Louisa KY 41230_

NAME _Lew Co. Fiscal Court_

STREET _Main Cross St_   _911 Dispatcher_   _06/05_   _10/07_   _8.80/hr_

CITY & STATE _Louisa KY_

NAME _City of Louisa_

STREET _215 N. Main Cross_   _Code Enforcement_   _07/07_   _09/07_   _8/hr_

CITY & STATE _Louisa KY_

IF ADDITIONAL SPACE IS NEEDED, USE EXTRA SHEET OF PAPER.

29. MAY WE CONTACT YOUR PRESENT EMPLOYER? _Yes_ IF NO, PLEASE STATE WHY.

30. HAVE YOU EVER BEEN DISMISSED OR DENIED EMPLOYMENT BY ANY LAW ENFORCEMENT AGENCY? _No_ IF YES, PLEASE EXPLAIN ON SEPARATE SHEET OF PAPER.

31. POLICE OFFICERS- In order to be considered for permanent employment. Applicant Must successfully complete six (6) months probationary period and successfully complete Police Officers Basic Training at the Kentucky Department of Criminal Justice Training at Richmond, Kentucky ( this is a sixteen week course ).

32. Initial duty assignments will be made according to the needs of the Louisa Police Department. Employment may be terminated with or without cause at any time during the probationary period or during Police Officer Basic Training course immediately following appointment as a PATROLMAN. For a period of six (6) months from date of appointment.

33. HIRING PRACTICE- Any person seriously considered for employment with the City of Louisa must successfully complete a physical examination by a physician designated by the CITY and said physical shall be at the City's expense. Physical forms used by the Police Academy shall be the standard form used for Police Officers of the City of Louisa.

I CERTIFY THAT I HAVE READ, UNDERSTAND, AND ACCEPT THE CONDITIONS EXPRESSED IN THE
FOREGOING PARAGRAPH. I FURTHER CERTIFY THAT ALL OF THE INFORMATION I HAVE
PROVIDED ON THIS APPLICATION FORM AND ANY ATTACHED PAGES IS TRUTHFUL AND
ACCURATE TO THE BEST OF MY KNOWLEDGE. I UNDERSTAND THAT MY BACKGROUND WILL BE
EXTENSIVELY INVESTIGATED BY A LOUISA POLICE OFFICER AND/OR THE LOUISA COUNCIL, AND I
CONSENT TO SUCH INVESTIGATION.

_____
SIGNATURE OF APPLICANT AS USUALLY WRITTEN

NOTE: THIS APPLICATION MUST BE NOTARIZED IN THE SPACE BELOW.

SUBSCRIBED AND DULY SWORN TO BEFORE ME BY THE ABOVE NAMED APPLICANT, THIS
5TH DAY OF March , 20 08 AT CITY ( or Town ) OF
Louisa , COUNTY OF Lawrence
AND STATE OF Kentucky

_____
SIGNATURE OF OFFICER/ NOTARY

_____
OFFICIAL TITLE

AFFIX OFFICIAL IMPRESSION SEAL
    BELOW

# Louisa Police Department
## Probationary Officer Review

| | |
|---|---|
| Probationary Officer: Steven Wilburn | Eval. Period: Feb. 1 through March 1<br>Report Date: March 17<sup>th</sup> |
| Field Training Officer: Sgt. Greg Fugitt | |

## CRITICAL PERFORMANCE TASKS:

**1. Stress Control**    Rating: ☒ 1 ☐ 3 ☐ 5
Task Reference Numbers: **104**
Justification/Other: **Improper voice inflections, i.e. too soft.**

**2. Decision Making/Problem Solving**    Rating: ☐ 1 ☒ 3 ☐ 5
Task Reference Numbers: 213,216
Justification/Other: Is able to grasp the information, develop a solution and apply it in a timely manner. Solicits other opinions/views

**3. Driving Skill: Moderate Stress/Emergency**    Rating: ☐ 1 ☒ 3 ☐ 5
Task Reference Numbers: 307,309,310
Justification/Other: Maintains control of the vehicle. Appropriate use of emergency equipment. Exercises appropriate responsibility to other traffic and traffic control devices.

**4. Field Performance: Non-Stress Conditions**    Rating: ☒ 1 ☐ 3 ☐ 5
Task Reference Numbers: 401
Justification/Other: Seemingly confused and disoriented as to what action should be taken when confronted with a routine task.

**5. Field Performance: Stress Conditions**    Rating: ☒ 1 ☐ 3 ☐ 5
Task Reference Numbers: 501
Justification/Other: Performance deteriorates in stressful conditions, under reacts.

**6. Officer Safety**    Rating: ☒ 1 ☐ 3 ☐ 5
Task Reference Numbers: 620
Justification/Other: Slow to handcuff when arresting

**7. Prisoner Control or Investigative Detention**    Rating: ☒ 1 ☐ 3 ☐ 5
Task Reference Numbers: 705
Justification/Other: Fails to maintain position of advantage to prevent attack or escape.

**8. Location**    Rating: ☐ 1 ☐ 3 ☒ 5
Task Reference Numbers: 0818,819,820,821

Justification/Other: Remembers location from prior runs. Rarely needs to use street guide or map. s aware of shortcuts and utilizes them to save time. Knows locations by name of business or land mark.

| 9. Self-Initiated Field Activity | Rating: | 1 | ☒ 3 | 5 |
|---|---|---|---|---|

Task Reference Numbers: 0911,0912,0915

Justification/Other: Is Independently Motivated. Has initiated activities during all available time. Stays up-dated on current criminal information, such as wants and warrants lists or vehicle theft hot sheets

| 10. Vehicle/Pedestrian Stops | Rating: | 1 | ☒ 3 | 5 |
|---|---|---|---|---|

Task Reference Numbers: 1009,1010,1014

Justification/Other:  Notifies dispatch of the location, license/pedestrian in question, make / model / race-gender age of the subject and reason for stop when necessary. Records information on his/her log. Uses proper approach.

| 11. Interview/Interrogator Skills | Rating: | 1 | ☒ 3 | 5 |
|---|---|---|---|---|

Task Reference Numbers: 1106,

Justification/Other: Recognizes and investigates the incident by obtaining a complete understanding of the facts

## FREQUENT PERFORMANCE TASKS:

| 12. Driving Skill: Non-Stress (Normal) | Rating: | 1 | 3 | ☒ 5 |
|---|---|---|---|---|

Task Reference Numbers: 1215,1216,1217

Justification/Other: Sets good example of lawful, courteous driving.  Displays dexterity and coordination while driving a police vehicle, i.e. operating radio, checking businesses and observing surrounding activity.  Is not involved in accidents.

| 13. Radio | Rating: | 1 | 3 | ☒ 5 |
|---|---|---|---|---|

Task Reference Numbers: 1321,1322,1324,1326,1328

Justification/Other: Always follows policy, direction and radio procedure. Uses radio with ease in all receiving and sending situations. Transmissions are well planed and need not be repeated. Uses previously broadcast information to his/her advantage. Rarely misses any radio traffic.

| 14. Report Writing | Rating: | 1 | ☒ 3 | 5 |
|---|---|---|---|---|

Task Reference Numbers: 1416,1417,1422

Justification/Other: Knows most standard forms and understands format.  Completes forms accurately and thoroughly with little assistance. Completes reports and forms in appropriate time. Uses computerized systems in a timely manner.

| 15. Arrest | Rating: | 1 | ☒ 3 | 5 |
|---|---|---|---|---|

Task Reference Numbers: 1505,1506

Justification/Other: : Has a good working knowledge of the law and applies probable cause to the situation, before an arrest is made. Can explain his /her action in a written or oral report.

| 16. Accident Investigation | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers: 1606,1607,1608,1609

Justification/Other:  Probationary officer properly assess the situation and acts accordingly.  He/She utilizes squad car or other means to properly protect the scene. Obtains the necessary information for completing the investigation. Properly explains process to individuals and provides them with necessary paperwork or information

**KNOWLEDGE:**

| 17. Departmental Policies & Procedures | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers: 1704

Justification/Other:  Familiar with most commonly applied department policies, regulations and procedures and complies with them.

| 18. Criminal Laws | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers: 1805

Justification/Other:  Has a working knowledge of commonly encountered criminal offenses.

| 19. Motor Vehicle Laws | Rating: | ☐ 1 | ☐ 3 | ☒ 5 |
|---|---|---|---|---|

Task Reference Numbers: 1908

Justification/Other:  Outstanding knowledge of commonly encountered offenses and lesser known offenses.

| 20. Patrol Procedures | Rating: | ☐ 1 | ☐ 3 | ☒ 5 |
|---|---|---|---|---|

Task Reference Numbers: 2009,2010

Justification/Other:   Has exceptional knowledge of patrol procedures and tactics.  Does an exceptional job of patrolling area.

| 21. Acceptance of Criticism/Feedback | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers: 2106

Justification/Other:  Accepts criticism in a positive manner.

| 22. Attitude Towards Police Work | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers: 2212,2213,2214,

Justification/Other:  Expresses an active interest in law enforcement. Maintains clean equipment and necessary forms.  Has resource material at hand when needed.

| 23. Relationship with Citizens | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers: 2311,2312,2313,2314

Justification/Other:  Courteous. Friendly and empathetic. Communicates in a professional and unbiased manner."Service" oriented. At ease and does not feel threatened by presence of persons with different cultural background.

| 24. Relationship with Department Members | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers:  2408,2409,2410

Justification/Other:  Understands and maintains a good relationship with superiors and other officers. Is accepted as a group member. Shows respect towards the roles or duties of other department personnel.

**APPEARANCE**

| 25. General Appearance | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers:  2508,2509,2510,2511,2512

Justification/Other:  Uniform neat, clean.Uniform fits and is worn properly. Weapon, equipment and leather is clean and operative. Hair is within regulations.  Shoes are shined.

**REVIEW**

Probationary Officer: _AH. 8t  0-w_          Date: _3-20-09_

Field Training Officer: _Sgt. G. Lyott_       Date: _3-19-09_

1st Line Supervisor: _____        Date: _____

Chief of Police: _Phll Clap_                 Date: _3-19-09_

# Louisa Police Department
## Probationary Officer Review

| | |
|---|---|
| Probationary Officer: Steven D. Wilburn | Eval. Period: March 1 through April 24 |
| | Report Date: April 24, 2009 |
| Field Training Officer: Greg A. Fugitt | |

## CRITICAL PERFORMANCE TASKS:

| **1. Stress Control** | **Rating:** ☐ 1 ☒ 3 ☐ 5 |
|---|---|

Task Reference Numbers: **0110,0111,0112,0113,0114**

Justification/Other: **Speaks with authority in a calm, clear voice. Proper selections of words and knowledge of when and how to use them.Obtains and maintains control through the use of proper amounts and techniques of force application.Maintains composure and bearing.Uses correct amount of physical force for the situation**

| **2. Decision Making/Problem Solving** | **Rating:** ☐ 1 ☐ 3 ☒ 5 |
|---|---|

Task Reference Numbers: 0211,0212,0213,0214,0215,0216,0218,0219,0220,0221,0222

Justification/Other:  : Is able to reason out a problem, relate what is taught and experienced.Good perception and ability to make own decision. Is able to grasp the information, develop a solution and apply it in a timely manner. Maintains flexibility. Listen to all sides before making his/her  decision. Solicits other opinions/views. Excellent perception in foreseeing problems and arriving at advance solutions.Relates past solutions to present problems. Uses his/her training and experience to quickly understand the problem. Develops an appropriate course of action. Is able to make decisions correctly under normal and stressful conditions.

| **3. Driving Skill:  Moderate Stress/Emergency** | **Rating:** ☐ 1 ☒ 3 ☐ 5 |
|---|---|

Task Reference Numbers: 0307,0308,0309,0310

Justification/Other:  Maintains control of the vehicle.Evaluates driving situations and reacts properly, i.e. proper speed for conditions.Appropriate use of emergency equipment. Exercises appropriate responsibility to other traffic and traffic control devices.

| **4. Field Performance:  Non-Stress Conditions** | **Rating:** ☐ 1 ☐ 3 ☒ 5 |
|---|---|

Task Reference Numbers: 0413,0414

Justification/Other:  Properly assesses aspects of routine situations including the more complex ones. Is able to perform in unusual situations and takes appropriate action.

| **5. Field Performance:  Stress Conditions** | **Rating:** ☐ 1 ☒ 3 ☐ 5 |
|---|---|

Task Reference Numbers:  0511,0506,0508

Justification/Other:  Maintains calm and self control, even in the most extreme situations: Exhibits calm and controlled attitude.Demonstrates acceptable reaction to the situation.

| 6. Officer Safety | Rating: | 1 | | 3 | ☒ 5 |
|---|---|---|---|---|---|

Task Reference Numbers:  0624,0625,0626,0629,0636,0637,0639

Justification/Other:  Performs searches and pat-downs,Safely recovers evidence Safely writes citations and handles radio communications Safely and effectively conducts arrest situations, field interviews, and disturbances.Utilizes survival tactics, cover and concealment.  Tactical planning prior to call or exit of vehicle. Proper use of hand signals when necessary

| 7. Prisoner Control or Investigative Detention | Rating: | 1 | ☒ 3 | | 5 |
|---|---|---|---|---|---|

Task Reference Numbers:  0710,0713,0714,0715,0718,0721,0722

Justification/Other:  Displays an awareness of potential danger from prisoners, suspicious persons, suspects, etc. Conducts visual and physical searches. Proper handcuffing is used. Uses proper transportation for suspect and citizens. Is alert to changing conditions. Encourages prisoner to willingly cooperate. Recognizes evidence during search. .

| 8. Location | Rating: | 1 | | 3 | ☒ 5 |
|---|---|---|---|---|---|

Task Reference Numbers:

Justification/Other:  : Remembers location from prior runs. Rarely needs to use street guide or map. Is aware of shortcuts and utilizes them to save time.  Knows locations by name of business or land mark. Considerations are made in directions when in a tactical situation.

| 9. Self-Initiated Field Activity | Rating: | 1 | | 3 | ☒ 5 |
|---|---|---|---|---|---|

Task Reference Numbers:  0917.0918,0919,0920,0921

Justification/Other:  Continuous productivity throughout the shift. Makes quality arrests from observed activity. Catalogs, maintains and uses information given at roll call and briefings for reasonable cause to stop vehicles and persons. Is always looking for new ways to complete his/her patrol activity more effectively. When confronted with a problem is able to identify root causes and not just symptoms, takes control and acts.

| 10. Vehicle/Pedestrian Stops | Rating: | 1 | | 3 | ☒ 5 |
|---|---|---|---|---|---|

Task Reference Numbers:  1008,1009,1010,1011,1012,1013,1014,1016,1017

Justification/Other:  Chooses the proper location for the contact. Notifies dispatch of the location, license/pedestrian in question, make / model / race-gender age of the subject and reason for stop when necessary. Records information on his/her log. Takes a position of advantage behind the vehicle/pedestrian. Uses all lighting to his/her advantage. Maintains visual contact. Uses proper approach. Recognizes a dangerous situation when it develops and takes necessary action to remove him/her or citizens from the danger. Knows the location of cover and/or concealment and uses it if needed. Is able to for-see a dangerous situation and is able to over come the danger and complete his/her goal.

| 11. Interview/Interrogator Skills | Rating: | 1 | ☒ 3 | | 5 |
|---|---|---|---|---|---|

Task Reference Numbers: 1106,1107,1108,1109

Justification/Other: Recognizes and investigates the incident by obtaining a complete understanding of the facts. Separates facts from opinions. Maintains control of the proceeding. Connects evidence with suspect when apparent.

## FREQUENT PERFORMANCE TASKS:

| 12. Driving Skill: Non-Stress (Normal) | Rating: | ☐ 1 | ☐ 3 | ☒ 5 |
|---|---|---|---|---|

Task Reference Numbers: 1215,1216,1217,1218

Justification/Other: Sets good example of lawful, courteous driving. Displays dexterity and coordination while driving a police vehicle, i.e. operating radio, checking businesses and observing surrounding activity. Is not involved in accidents. Uses defense driving in emergencies and avoids what would have been an accident

| 13. Radio | Rating: | ☐ 1 | ☐ 3 | ☒ 5 |
|---|---|---|---|---|

Task Reference Numbers: 1321,1322,1323,1324,1325,1326,1328

Justification/Other: Always follows policy, direction and radio procedure. Uses radio with ease in all receiving and sending situations. Has clear voice even under stress situations. Transmissions are well planed and need not be repeated. Aware of, and reacts to, traffic in adjoining beats. Uses previously broadcast information to his/her advantage. Rarely misses any radio traffic.

| 14. Report Writing | Rating: | ☐ 1 | ☐ 3 | ☒ 5 |
|---|---|---|---|---|

Task Reference Numbers: 1424,1425,1426,1428,1429

Justification/Other: Consistently completes even detailed forms without assistance and makes proper form selection. Completes reports or other forms in no more time than that of a skilled, veteran officer. Reports and forms are very neat and legible. Prepares complete and detailed accounts of what occurred from beginning to end. Written and organized so that any reader understands what occurred.

| 15. Arrest | Rating: | ☐ 1 | ☐ 3 | ☒ 5 |
|---|---|---|---|---|

Task Reference Numbers:

Justification/Other: Has a working knowledge of most laws or codes and can apply them to the situation. Understands elements of search. Enhance the probable cause with field test or proper evidence collection at crime scenes. Is able to explain actions in detail on paper or in court.

| 16. Accident Investigation | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers:

Justification/Other: Probationary officer properly assess the situation and acts accordingly. He/She utilizes squad car or other means to properly protect the scene. Obtains the necessary information for completing the investigation. Properly explains process to individuals and provides them with necessary paperwork or information

## KNOWLEDGE:

| 17. Departmental Policies & Procedures | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers: 1704,1705,

Justification/Other:  Familiar with most commonly applied department policies, regulations and procedures and complies with them. Is willing and able to look up unknown subjects or material.

| 18. Criminal Laws | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers:  1805,1806,1808

Justification/Other:  : Has a working knowledge of commonly encountered criminal offenses. Relates elements to observed criminal activity. Outstanding knowledge of criminal codes and ability to apply it to both normal and unusual criminal activity.

| 19. Motor Vehicle Laws | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers:  1904,1905,1906

Justification/Other:  Has a working knowledge of commonly encountered offenses. Relates elements to observed traffic activity. Knows where to find lesser known violations.

| 20. Patrol Procedures | Rating: | ☐ 1 | ☐ 3 | ☒ 5 |
|---|---|---|---|---|

Task Reference Numbers:  2006,2007,2009,2010

Justification/Other:  Has knowledge of patrol procedures and tactics and applies knowledge to duties. Actively patrols his/her beat. Has exceptional knowledge of patrol procedures and tactics.Does an exceptional job of patrolling area

| 21. Acceptance of Criticism/Feedback | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers:  2106,2107,2108

Justification/Other:  Accepts criticism in a positive manner. Applies criticism to further learning processes and to improve performance. Accepts responsibility for acts.

| 22. Attitude Towards Police Work | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers:  2212,2213,2214,2215,2216

Justification/Other:  Expresses an active interest in law enforcement.  Maintains clean equipment and necessary forms. Has resource material at hand when needed. Completes homework on time. Familiar with crime profiles.

| 23. Relationship with Citizens | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers: 2311,2312,2313,2314,2315,2317,2318,2319

Justification/Other:  Courteous. Friendly and empathetic.Communicates in a professional and unbiased manner. "Service"oriented.  At ease and does not feel threatened by presence of persons with different cultural background. Serves their needs objectively. Aware and empathetic to citizens. perceptions of problems. Follows up on public inquires and request.  Is impartial and Non-discriminatory while being objective.

| 24. Relationship with Department Members | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers:  2408,,2409,2410

Justification/Other:  Understands and maintains a good relationship with superiors and other officers. Is accepted as a group member. Shows respect towards the roles or duties of other department personnel.

## APPEARANCE

| 25.  General Appearance | Rating: | ☐ 1 | ☐ 3 | ☒ 5 |
|---|---|---|---|---|

Task Reference Numbers:  2508,2509,2510,2511,2512,2514,2515,2516,2517

Justification/Other:  Uniform neat, clean. Uniform fits and is worn properly. Weapon, equipment and leather is clean and operative. Hair is within regulations. Shoes are shined. Tailored, clean uniform. Spit-shined shoes and leather. Brass well shined. Command bearing.

## REVIEW

Probationary Officer: _Ptl. Std-Wi_          Date: _04-24-09_

Field Training Officer: _Sgt. Greg A. Fugitt_          Date: _4/24/09_

1st Line Supervisor: _____          Date: _____

Chief of Police: _A Phillip Clee_          Date: _4/27/09_

# Department of Criminal Justice Training
## Basic Training Branch
## Recruit Progress Report




| | | |
|---|---|---|
| **Class #** | 399 |
| **Recruit** | Steven D. Wilburn |
| **Agency** | Louisa P.D. |
| **Evaluation Period** | Weeks 1-6 |

| | Exceeds Expectations | Meets Expectations | Needs Improvement | Fails to Meet Expectations | Comments |
|---|---|---|---|---|---|
| Conduct | EE | ME | NI | FE | |
| Attitude | EE | ME | NI | FE | |
| Appearance | EE | ME | NI | FE | |
| Relationships With Others | EE | ME | NI | FE | |
| Completion of Assignments | EE | ME | NI | FE | |
| Written Communication Skills | EE | ME | NI | FE | |
| Verbal Communication Skills | EE | ME | NI | FE | |
| Leadership | EE | ME | NI | FE | |
| Academic Exam 1 | EE | ME | NI | FE | Scored 82% on Test 1. |
| Academic Exam 2 | EE | ME | NI | FE | Scored 96% on Test 2. |
| Physical Fitness | EE | ME | NI | FE | |
| Defensive Tactics | EE | ME | NI | FE | |
| Vehicle Operations | EE | ME | NI | FE | All training in this area has been completed. |
| CJIS: MDT | EE | ME | NI | FE | Scored 90% on written test. |
| PBLE Presentation: Report Calls | EE | ME | NI | FE | |
| PBLE Presentation: Disorder | EE | ME | NI | FE | |

Additional Comments:

Recruit Wilburn has successfully completed all areas of training up to this point.  He did exceptionally well on the second academic test and currently has an overall GPA of 89%.  He has successfully completed MDT training.

Completed by: _____
Class Coordinator

Approved by: _____
Section Supervisor

I have reviewed this report and have been afforded an opportunity to discuss it with a class coordinator.  My signature does not necessarily express agreement.

_____
Recruit

# Department of Criminal Justice Training
## Basic Training Branch
### Recruit Progress Report




| | |
|---|---|
| Class # | 399 |
| Recruit | Steven D. Wilburn |
| Agency | Louisa P.D. |
| Evaluation Period | Weeks 7-12 |

| | Exceeds Expectations | Meets Expectations | Needs Improvement | Fails to Meet Expectations | Comments |
|---|---|---|---|---|---|
| Conduct | EE | ME | NI | FE | |
| Attitude | EE | ME | NI | FE | |
| Appearance | EE | ME | NI | FE | |
| Relationships With Others | EE | ME | NI | FE | |
| Completion of Assignments | EE | ME | NI | FE | |
| Written Communication Skills | EE | ME | NI | FE | |
| Verbal Communication Skills | EE | ME | NI | FE | |
| Leadership | EE | ME | NI | FE | |
| Academic Exam 3 | EE | ME | NI | FE | Scored 80% on Test 3. |
| First Aid/AED/CPR | EE | ME | NI | FE | Passed |
| Physical Fitness | EE | ME | NI | FE | |
| Defensive Tactics | EE | ME | NI | FE | |
| PBLE Presentation: Vehicle Stops | EE | ME | NI | FE | |
| Breath Test | EE | ME | NI | FE | Scored 84% on written test. |
| DUI Detection | EE | ME | NI | FE | Scored 88% on written test. |
| Practical Examination 1 | EE | ME | NI | FE | |

Additional Comments:

Recruit Wilburn has successfully completed all areas of training up to this point. He is doing well academically and currently has an overall GPA of 86%. He completed Breath Test/DUI training with an average of 86% on the two written tests.

Completed by: _____
Class Coordinator

Approved by: _____
Section Supervisor

I have reviewed this report and have been afforded an opportunity to discuss it with a class coordinator. My signature does not necessarily express agreement.

_____
Recruit





### Department of Criminal Justice Training
### Basic Training Branch
### Recruit Progress Report

| | |
|---|---|
| *Class #* | *399* |
| *Recruit* | *Steven D. Wilburn* |
| *Agency* | *Louisa P.D.* |
| *Evaluation Period* | Weeks 13-18 |

| | Exceeds Expectations | Meets Expectations | Needs Improvement | Fails to Meet Expectations | Comments |
|---|---|---|---|---|---|
| Conduct | EE | ME | NI | FE | |
| Attitude | EE | ME | NI | FE | |
| Appearance | EE | ME | NI | FE | |
| Relationships With Others | EE | ME | NI | FE | |
| Completion of Assignments | EE | ME | NI | FE | |
| Written Communication Skills | EE | ME | NI | FE | |
| Verbal Communication Skills | EE | ME | NI | FE | |
| Leadership | EE | ME | NI | FE | |
| Academic Exam 4 | EE | ME | NI | FE | Scored 82% on Test 4. |
| Academic Exam 5 | EE | ME | NI | FE | Scored 85% on Test 5. |
| Physical Fitness | EE | ME | NI | FE | |
| Defensive Tactics | EE | ME | NI | FE | |
| Firearms | EE | ME | NI | FE | |
| PBLE Presentation: Criminal Investigations | EE | ME | NI | FE | |
| PBLE Presentation: Patrol Activities | EE | ME | NI | FE | |
| Practical Examination 2 | EE | ME | NI | FE | |
| NPE: Presentation | EE | ME | NI | FE | |

**Additional Comments:**

Recruit Wilburn has successfully completed Basic Training.  He had an overall GPA of 85% for the five academic exams.  He did an exceptional job on his NPE portfolio assignment.

Completed by: _____
Class Coordinator

Approved by: _____
Section Supervisor

I have reviewed this report and have been afforded an opportunity to discuss it with a class coordinator.  My signature does not necessarily express agreement.

## JUSTICE AND PUBLIC SAFETY CABINET
## DEPARTMENT OF CRIMINAL JUSTICE TRAINING
## MEMORANDUM

**To:**        **Jerry Huffman**
              **Evaluation Supervisor**
              **Basic Training Branch**

**From:**      **Bruce Rawlings**
              **Basic Training Instructor**
              **Coordinator, Class 399**

**Subject:**   **Certificate of Acknowledgement**

**Date:**      **January 9, 2009**

**CC:**        **Steven D. Wilburn**
              **Flag Detail**
              **Class 399**

As Coordinator of Basic Training Class 399, I am recommending a certificate of recognition for Mr. Steven D. Wilburn.

Steven D. Wilburn volunteered to be part of the permanent flag detail for Class 399. In doing so, Mr. Wilburn gave a greater amount of his time to ensure that proper etiquette and performance were followed for the flag ceremony for the duration of their detail.

As a participant of this detail, each recruit dedicated his time to ensure that the flags were raised and lowered each day of the week for the four weeks of their detail. In leading the flag ceremonies on Fridays, the recruits afforded the appropriate respect to the American Flag and Law Enforcement Memorial. An additional duty of the detail was the general upkeep of the Law Enforcement Memorial.

If Mr. Wilburn continues his duties as an officer with the same professionalism he has displayed at the academy, he will be an asset to his agency.

| Fullname | Completed | Course No. | Description | Hours | Location | Grade | Prior Year |
|---|---|---|---|---|---|---|---|
| Wilburn Steven | 2/3/2006 | 102D-05R | Telecommunications Academy | 168.0 | Richmond | Pass | |
| Wilburn Steven | 9/24/2008 | 094TDLB-07J | Len Mobile Data Terminal Access - On-Line | 0.0 | Richmond | Pass | |
| Wilburn Steven | 10/3/2008 | 0472B-06J | Breath Test Operator - Basic | 0.0 | Richmond | Pass | |
| Wilburn Steven | 1/9/2009 | 022B-08J | Law Enforcement Basic Training | 768.0 | Richmond | Pass | |
| Wilburn Steven | 3/6/2009 | 1407-07JR | Advanced Patrol Skills | 40.0 | Ashland | Pass | |
| Wilburn Steven | 7/15/2009 | 1543DL-09A | Mandatory Training-On-Line- Work Zone Safety | 4.0 | Richmond | Pass | |
| Wilburn Steven | 9/30/2011 | 032S-DL | Mandatory Training - On-Line | 5.0 | Online | Pass | |
| Wilburn Steven | 1/18/2012 | 0890-12J | Legal Update: Penal Code | 24.0 | Richmond | Pass | |
| Wilburn Steven | 1/20/2012 | 1026-11J | Legal Update: Constitutional Procedure | 16.0 | Richmond | Pass | |
| Wilburn Steven | 3/23/2012 | 1204-10JR | Rapid Deployment | 40.0 | Richmond | Pass | |
| Wilburn Steven | 4/15/2013 | 032SDL-12J | Mandatory Training - Online | 7.5 | Online | Pass | |
| Wilburn Steven | 10/11/2013 | 1411-13J | Police Training Officer | 40.0 | Richmond | Pass | |
| Wilburn Steven | 3/21/2014 | 1044DL-14J | DUI/SFST Refresher Online | 8.0 | Online | Pass | |
| Wilburn Steven | 1/7/2015 | 1640-13A | Advanced Roadside Impaired Driving Enforcement | 16.0 | Ashland | Pass | |
| Wilburn Steven | 3/13/2015 | 0472-15J | Basic Breath Test Operator | 40.0 | Richmond | Pass | 2014 |

# Emergency Management Institute



# FEMA

This Certificate of Achievement is to acknowledge that

## STEVEN D. WILBURN

has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

### IS-00700
### National Incident Management System
### (NIMS) an Introduction

*Issued this 14th Day of June, 2005*

Stephen G. Sharro
*Director, Training Division*

0.3 CEU

DETACH THIS STUB

# Peace Officer Professional Standards
# Certification



## STEVEN D. WILBURN

**Meets all legal requirements for and is therefore entitled to the classification as a certified peace officer in the Commonwealth of Kentucky respective of the stipulations of Kentucky Revised Statutes 15.382 et seq. In testimony whereof, I have caused these letters to be made patent and the Seal of the Kentucky Law Enforcement Council to be hereunto affixed. Done at Richmond the 9th day of January in the year 2009.**

## Certification Number:     13267

**J. Michael Brown**
Secretary
Kentucky Justice and Public Safety Cabin

**William F. Walsh**
Chair
Kentucky Law Enforcement Council

**John W. Bizzack**
Commissioner
Department of Criminal
Justice Training

**Larry D. Ball**
Executive Director
Kentucky Law Enforcement Cc

# Department of Criminal Justice Training

## Kentucky Justice & Public Safety Cabinet

The Department of Criminal Justice Training, upon recommendation
of the Basic Training Staff, hereby confers upon

### STEVEN D. WILBURN

who has completed the curriculum and fulfilled all the other
requirements therefore, this certificate of graduation in

## LAW ENFORCEMENT BASIC TRAINING

with all the rights, privileges, and honors thereunto appertaining.

Given at Richmond, Kentucky, on the ninth day of January in
the year of our Lord two thousand and nine.



_____
Governor of Kentucky

_____
Secretary, Justice & Public Safety

_____
Commissioner, Criminal Justice Training

_____
Training Director

DEPARTMENT OF

# CRIMINAL JUSTICE TRAINING

KENTUCKY JUSTICE AND PUBLIC SAFETY CABINET

*Certificate of Completion*

## STEVEN D. WILBURN

*Is hereby awarded this certificate
under provisions of Chapters 15 and 15A
of the Kentucky Revised Statues, for successful
completion of a law enforcement training course entitled*

**ADVANCED  PATROL  SKILLS**



MARCH 2-6, 2009
_____
Dates

_____
Commissioner

ASHLAND, KY
_____
Location

_____
Coordinator

# *Federal Law Enforcement Training Center*



# Homeland Security

## Certificate of Completion

### Steven Wilburn

*For successfully completing*
*Introduction to Bias Crimes / Community Relations*
*in the Office of State and Local Training*
*Domestic Terrorism and Hate Crimes Training Program (DTHCTP)*

Instructor(s): Scottie Saltsman    Edward Lingenfelter
Total Hours of Training: 3
Dates:  8/26/2008-8/26/2008



Instructor(s) Signature



# TRAINING CERTIFICATE

This will certify that

# STEVEN WILBURN

has successfully completed the PPCT Management Systems course requirements for

## PPCT Defensive Tactics Basic Certification

| | |
|---|---|
| Course Location | Richmond, KY |
| Course Dates | 08/11/08 – 01/09/09 |
| Course # | R08-468-WS |
| Expiration | January 9, 2010 |
| Instructor | Jeff Knox |

Bruce K. Siddle

PPCT Management Systems, Inc.
Founder

DEPARTMENT OF

# CRIMINAL JUSTICE TRAINING

KENTUCKY JUSTICE CABINET

*Certificate of Completion*

## STEVEN D. WILBURN

Is hereby awarded this certificate
under provisions of Chapters 15 and 15A
of the Kentucky Revised Statutes, for successful
completion of a law enforcement training course entitled

## BREATH TEST OPERATOR - BASIC

29 SEP 2008 TO 03 OCT 2008
Dates

_____
Commissioner

RICHMOND, KY
Location

_____
Coordinator

DEPARTMENT OF

# CRIMINAL JUSTICE TRAINING

KENTUCKY JUSTICE AND PUBLIC SAFETY CABINET

*Certificate of Completion*

## STEVEN D. WILBURN

*Is hereby awarded this certificate
under provisions of Chapters 15 and 15A
of the Kentucky Revised Statues, for successful
completion of a law enforcement training course entitled*

## POLICE TRAINING OFFICER

OCTOBER 7-11, 2013

Dates

_____
Commissioner

RICHMOND, KY

Location

_____
Coordinator





# TASER Conducted Electrical Weapon
## TASER Certified End User Certificate

### SGT Steven Wilburn

*This certifies that the above named individual Steven Wilburn has completed the training required and has passed a written examination in the use of the TASER ___X26___ Conducted Electrical Weapon. By accepting this User Certificate, the Student accepts the terms of the TASER Training Materials License Agreement, incorporated herein by reference, and agrees to be bound by its terms as a Licensee of TASER International, Inc. This certification must be renewed annually.*

Instructor: ___James Frint___ Date 6/7/2014
(name)



# TASER® CEW End User Certification Form

### PRINT LEGIBLY AND CLEARLY PLEASE!

**Which CEW were you certified in (Check all that apply):**   ☐ M26   ☒ X26/P   ☐ X2

Rank: _Sgt._       Name: _Steven D. Wilburn_

Agency: _Louisa PD_       Email: _swilburn@louisapd.org_

Phone: _606-638-4058_       Fax: _606-638-4058_

Address/State/Zip: _215 N. Main Cross St. Louisa KY 41230_

Number of test answers correct:   _50_ out of 50 for the X26/P and X2 (80% minimum = 40 correct)

_45_ out of 45 for the M26 (80% minimum = 36 correct)

Instructor to initial that student has successfully completed the following practical application tests:

_✓_  Demonstration of proper finger positions for aiming and firing.

_✓_  Control TASER CEW adequately when commanded "Arm - Spark - Safe" at random.

_✓_  Demonstrate the ability to load and unload the TASER CEW under stress.

_✓_  Remove and reinstall batteries in TASER CEW correctly.

_✓_  Hit targets from various distances and place both probes in the preferred target zones

_____  Utilize the ARC switch to re-energize deployed probes and to give a warning arc (X2 only)

I hereby certify that the above named applicant has passed the appropriate TASER Certification Test with a minimum score of 80% and has met the above criteria for sufficient knowledge and skills in the use of the TASER CEW system checked above and is hereby certified as a user of this system.

Attested by Certifying Instructor: _James Frint_       _[signature]_
                                    (Print Name)              (Signature)

Date: _6-7-14_       Location: _Louisa Police Dept._

### *Keep this Form for Department Training Records*

© 2013 TASER International, Inc.
TASER® and the Globe & Lightning Bolt Logo are trademarks of TASER International, Inc.

# DEPARTMENT OF
# CRIMINAL JUSTICE TRAINING
### KENTUCKY JUSTICE AND PUBLIC SAFETY CABINET

## Certificate of Completion

# STEVEN D. WILBURN

*Is hereby awarded this certificate
under provisions of Chapters 15 and 15A
of the Kentucky Revised Statues, for successful
completion of a law enforcement training course entitled*

## RAPID DEPLOYMENT



| MARCH 19-23, 2012 | RICHMOND, KY |
|---|---|
| *Dates* | *Location* |

| *John W. Bizzack* | *Bill Fallue* |
|---|---|
| *Commissioner* | *Coordinator* |

**ALICE**
TRAINING INSTITUTE

# CERTIFICATE OF TRAINING

AWARDED TO:

## Steven Wilburn

Who has successfully completed the:

### Advanced A.L.I.C.E. Training

March 17, 2015

Completion Date

Chad Cunningham

Class Location

Instructor

**ALICE**
TRAINING INSTITUTE

## INSTRUCTOR LEVEL

Consisting of: 16 Training Hours

Louisa Police Department
215 North Main Cross
Louisa, KY 41230
(606)638-4058
www.louisapd.org



RECEIVED

JAN 17 2014

CITY OF LOUISA

Any person must meet the following minimum qualifications to become a police officer for the City of Louisa.

- Be a Citizen of the United States
- Be at least twenty-one (21) years of age
- Be a high school graduate or have successfully completed a GED examination
- Possess a valid drivers license
- Not have been convicted of any felony offense
- Not prohibited by federal or state law from possessing a firearm
- Have not received a dishonorable discharge, bad conduct discharge, or general discharge under other than honorable conditions, if having served in any branch of the Armed Forces of the United States
- Not have had certification as a peace officer permanently revoked in any state
- Live in Kentucky & within 10 miles of the city limits (for take home vehicle)

Selection Process (not necessarily administered in order)

1. Written Examination
2. Physical Agility Examination
3. Psychological Suitability Screening
4. Background Investigation
5. Polygraph Investigation
6. Oral Interview
7. Medical Examination
8. Drug Screening

If you have any questions, feel free to speak to any of our officers or contact me at (606)638-4058 or by email at gfugitt@louisapd.org.

Thank you,

Greg A. Fugitt
Chief of Police

**Louisa Police Department**
215 North Main Cross
Louisa, KY 41230
(606)638-4058
www.louisapd.org

## Application for Employment

This application must be printed in black ink only.
If additional space is needed, attach separate sheet(s) as necessary.

Date: _1/16/14_

Name: _Thaddus Jordan Miller_          Social Security Number: _____

Position: _____

*Sex: _M_          Race: _White_          Age: _22_

Address: _____ City: _LOUISA_ County: _LAWRENCE_
Zipcode: _41230_

Home Phone: _____          Other Phone: _____

Email: _____@gmail.com_

Driver's License Number: _____ State: _KY_ Date of Birth: _____

Place of Birth: City _LOUISA_ County _LAWRENCE_ State _KY_

Height: _5'10_          Weight: _250_ Hair: _Brown_ Eyes: _Brown_

Marital Status (Married, Single, Divorced, etc.): _Single_

* Optional (For Statistical Purposes Only)

Provide all previous addresses from the past 10 years.

| Street | City | State | Zip | Date: From | To |
|--------|------|-------|-----|-----------|-----|
| | LOUISA | KY | 41230 | | Present |
| | | | | | |
| | | | | | |
| | | | | | |

Have you ever been cited to court, fined or incarcerated as a result of a traffic or criminal charge?  If yes, please specify what charges, dates, locations, and court.
NO

Have you ever been involved in a motor vehicle collision as an operator which resulted in injury or property damage of $250 or more?  Give details in each case by listing dates, locations, damages, and/or injuries incurred and actions taken by police, courts or the division of drivers licensing of the state where the accident occurred.
NO

Have you ever been a defendant in any court action?
No

Have you served in any branch of the military?  If so, list dates, branch or service, type of discharge and rank.
NO

Were you ever demoted or court-martialed while in military service?  If so, give details.
NO

Were you ever discharged from military service with a service connected disability?  If yes, list details.
NO

Describe any physical defects, vision status, color blindness or deformities.
NONE

Father's Name: Richard Miller  Address: _____
City: LOUISA  State: KY

Mother's Name: _Michelle Miller_ Address: _____
City: _Louisa_____ State: _KY___

Spouse's Name: _N/a_____ Address: _____
City: _____ State: _____

Number of Children: _0___    Number of Dependents: _0__

Indicate total extent you are financially obligated to others: $ _0_____

List complete addresses and phone numbers of all creditors:

| Address | City | State | Zip | Phone |
|---------|------|-------|-----|-------|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Have you ever declared bankruptcy?  If so, list details.
_NO_____

List names of all clubs, societies, and other organizations to which you are a member.

_AFCA (American Football Coaches Association), Lawrence County_
_High School Football Coaching Staff._

Are you now, or have you ever been, a member of any organization, association, movement, group, or combination of persons which advocated the overthrow of our constitutional form of government or of any organization, association, movement, group or combination of persons, which has adopted a policy of advocating or approving the commission of acts of force or violence to deny other persons their rights under the constitution of the United States or of seeking to alter the form of Government of the United States by unconstitutional means?
_NO_____

_____

List five personal references that are at least 21 years of age, who you have known well during the past three years.

| Name | Address | City/State | Years Known | Phone Number |
|------|---------|------------|-------------|--------------|
| Tim Ellis |  | Louisa, KY | 12 |  |
| Travis Feltner |  | Louisa, KY | 9 |  |
| Joey Cecil |  | Louisa, KY | 5 |  |

| RANDY BOWEN | | Louisa Ky | 5 | |
| Eddie Dixon | | Louisa KY | 7 | |

Education/Training

| Name | Address | From | To | Diploma/Degree |
|---|---|---|---|---|
| LAUREN COUNTY HIGH | 100 Bulldog LANE | 2006 | 2010 | Diploma |
| Alice Lloyd College | 100 Purpose Rd, Pippa Passes KY | 2010 | 2011 | — |
| Ashland Community College | 1400 College Drive, Ashland KY 41101-367 41854 | 2011 | 2013 | Degree |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

List any special skills or certifications you have: _____

Previous Employers

| Name | Address | From | To | Salary | Position |
|---|---|---|---|---|---|
| LAURENCE COUNTY E 911 | 122 South Main Cross St. | Jun 2010 | Aug 2010 | 9.00 | Maintenance |
| LAWRENCE COUNTY PARK | 77 wilderness Rd | Jun 2011 | Aug 2011 | 9.00 | Maintenance |
| FOOD CITY | 4301 Hwy 2565 | Aug 2011 | present | 8.15 | Fuel clerk |
| | | | | | |
| | | | | | |
| | | | | | |

May we contact your present employer?  If not, please state why.
Yes

Have you ever been dismissed or denied employment by any law enforcement agency?  If yes, please explain.
no

Police Officers:  In order to be considered for permanent employment, applicant must successfully complete Police Officers Basic Training at the Kentucky Department of Criminal Justice Training located in Richmond, Kentucky (this is an eighteen (18) week course) and a six (6) month probationary period following the graduation date.

Initial duty assignments will be made according to the needs of the Louisa Police Department.  Employment may be terminated with or without cause at any time during the probationary period or during Police Officer Basic Training.

Any person seriously considered for employment with the City of Louisa must successfully complete a physical examination by a physician designated by the city at the expense of the city.  Physical forms used by the Police Academy shall be the standard form used for Police Officers of the City of Louisa.

I certify that I have read, understand, and accept the conditions expressed in the foregoing application. I further certify that all of the information I have provided on this application and any additional pages attached is truthful and accurate to the best of my knowledge. I understand that my background will be extensively investigated by a Louisa Police Officer and I consent to such investigation.

_Thaddeus Jordan Matlen_
Signature of Applicant

This application must be notarized in the space below.

Subscribed and duly sworn to before me and the above named applicant, this _17th_ day of _January_, 20_14_ at city or town of _Louisa_, county of _Lawrence_ and state of _Kentucky_.

_Kathy Longph_
Signature of Officer/Notary    #474482

_Notary_
Official Title

3

| POPS | **COMPLIANCE SECTION** |
|------|------------------------|
|      | *PEACE OFFICER PROFESSIONAL STANDARDS CHECKLIST* |

| | |
|---|---|
| Department of Criminal Justice Training<br>Compliance Department<br>Funderburk Building<br>521 Lancaster Ave.<br>Richmond, KY 40475-3102<br>Phone: 859-622-5924 | **INSTRUCTIONS:** This is a copy of a checklist that will be used during an audit conducted by the Compliance Section. Proof of each item must be retained in the applicant/officer's POPS file. |

**Name of Applicant/Officer** _Miller, Thaddeus J._

**Date of Birth** _____  **SSN** _____

**Agency Name/Department** _Boise PD_

**Hire/Transfer Date** _3-14-14_

| ITEM | YES | NO | N/A |
|------|-----|----|----|
| 1.  Citizen of the United States (Birth Certificate)  *KY* | ✓ | | |
| 2.  Minimum of 21 Years of Age | ✓ | | |
| 3.  High School Graduate or G.E.D.  *2010* | ✓ | | |
| 4.  Valid Operators License | ✓ | | |
| 5.  Fingerprint Cards Completed & Mailed to KSP  *3-26-14* | ✓ | | |
| 6.  Absence of Felony | | | |
| 7.  No Prohibition on Firearm Possession (Federal or State) | ✓ | | |
| 8.  Code of Ethics Distributed and Signed | ✓ | | |
| 9.  Has not Received a Dishonorable Discharge or General Discharge under other than Honorable Conditions  *upk* | ✓ | | ✓ |
| 10. Medical Exam Complete (Forms G-1, G-2)  *3-13-14* | ✓ | | |
| 11. Valid Negative Drug Screen Report (10-panel)  *3-14-14* | ✓ | | |
| 12. Background Investigation (Form H-1) | ✓ | | |
|       A.  Criminal Offenses | ✓ | | |
|       B.  Credit Report | ✓ | | |
|       C.  Employment | ✓ | | |
|       D.  References | ✓ | | |
|       E.  Education | ✓ | | |
| 13. Interview Conducted by Agency Executive or Designee | ✓ | | |
| 14. No Revocation of Certification in Another State as a Peace Officer | ✓ | | |
| 15. Suitability Screener Results  *2-28-14* | ✓ | | *Suitable* |
| 16. Passed Physical Fitness Standards  *2-25-14* | ✓ | | |
| 17. Polygraph Results  *3-13-14* | ✓ | | |
| 18. Records Retention/Documentation | ✓ | | |

**Comments:** _Form D, F_

_____  _____
Investigator                                            _4-7-14_   Date

Revised July 2010

# Peace Officer Professional Standards Certification



KLEC

KENTUCKY
LAW ENFORCEMENT COUNCIL

## THADDUS MILLER

Meets all legal requirements for and is therefore entitled to the classification as a certified peace officer in the Commonwealth of Kentucky, respective of the stipulations of Kentucky Revised Statutes 15.382 et seq. In testimony whereof, I have caused these letters to be made patent and the Seal of the Kentucky Law Enforcement Council to be hereunto affixed; Done at Richmond the 29th day of August in the year 2014.

## Certification Number:   20284



J. Michael Brown
Secretary
Kentucky Justice and Public Safety Cabinet



Keith Cain
Chair
Kentucky Law Enforcement Council



# TRAINING CERTIFICATE



# THAD

has successfully completed PPCT Management Systems course requirements for

## PPCT Defensive Tactics Basic Certification

| | |
|---|---|
| Course Location | **DOCJT, Richmond, KY** |
| Course Dates | 04/14/2014 – 08/29/2014 |
| Course # | R14-124 |
| Expiration | **August 29, 2015** |
| Instructor | Joe Jumper |

*Bruce K. Siddle*

**PPCT Management Systems, Inc.**
Founder



## TASER® CEW End User Certification Form

### PRINT LEGIBLY AND CLEARLY PLEASE!

**Which CEW were you certified in (Check all that apply):**  ☐ M26  ☒ X26/P  ☐ X2

Rank: _Patrolman_          Name: _Thaddeus J. MILLER_

Agency: _LOUISA POLICE DEPARTMENT_   Email: _Jmiller@LouisaPD.org_

Phone: _606-232-6353_     Fax: _____

Address/State/Zip: _767 HWY 1185  LOUISA, KY 41230_

Number of test answers correct:  _50_  out of 50 for the X26/P and X2 (80% minimum = 40 correct)

_45_  out of 45 for the M26 (80% minimum = 36 correct)

Instructor to initial that student has successfully completed the following practical application tests:

_✓_   Demonstration of proper finger positions for aiming and firing.

_✓_   Control TASER CEW adequately when commanded "Arm - Spark - Safe" at random.

_✓_   Demonstrate the ability to load and unload the TASER CEW under stress.

_✓_   Remove and reinstall batteries in TASER CEW correctly.

_✓_   Hit targets from various distances and place both probes in the preferred target zones

_✓_   Utilize the ARC switch to re-energize deployed probes and to give a warning arc (X2 only)

I hereby certify that the above named applicant has passed the appropriate TASER Certification Test with a minimum score of 80% and has met the above criteria for sufficient knowledge and skills in the use of the TASER CEW system checked above and is hereby certified as a user of this system.

Attested by Certifying Instructor: _James Frink_ _____
                                    (Print Name)          (Signature)

Date: _6-7-14_     Location: _Louisa PD_

### *Keep this Form for Department Training Records*

© 2013 TASER International, Inc.
TASER® and the Globe & Lightning Bolt Logo are trademarks of TASER International, Inc.



# TASER Conducted Electrical Weapon
## TASER Certified End User Certificate

### Jordan Miller

*This certifies that the above named individual Jordan Miller has completed the training required and has passed a written examination in the use of the TASER ___X26___ Conducted Electrical Weapon. By accepting this User Certificate, the Student accepts the terms of the TASER Training Materials License Agreement, incorporated herein by reference, and agrees to be bound by its terms as a Licensee of TASER International, Inc. This certification must be renewed annually.*

*Instructor:___James Frint_____ Date 6/7/2014*
*(name)*

Case: 0:16-cv-00068-HRW   Doc #: 65-1   Filed: 05/26/17   Page: 125 of 144 - Page ID#: 1124
Training Completed (Not Official Transcript)

Page 1 of 1



| Fullname | Completed | Course No. | Description | Hours | Location | Grade | Prior Year |
|----------|-----------|------------|-------------|-------|----------|-------|------------|
| Miller Thaddus | 5/21/2014 | 094TDLB-13J | Len Mobile Data Terminal Access - Online | 0.0 | Richmond | Pass | |
| Miller Thaddus | 6/6/2014 | 0472B-12J | Breath Test Operator - Basic | 0.0 | Richmond | Pass | |
| Miller Thaddus | 8/29/2014 | 030B-12JR2 | Law Enforcement Basic Training | 768.0 | Richmond | Pass | |
| Miller Thaddus | 1/7/2015 | 1640-13A | Advanced Roadside Impaired Driving Enforcement | 16.0 | Ashland | Pass | |
| Miller Thaddus | 1/15/2015 | 032SDL-14J | Mandatory Training - Online 2014 | 6.0 | Online | Pass | |

**Department of Criminal Justice Training**
**Basic Training Branch**
**Recruit Progress Report**

**D⦁CJT**
DEPARTMENT OF
**CRIMINAL JUSTICE TRAINING**

| | |
|---|---|
| Class # | 457 |
| Recruit | Thaddus Miller |
| Agency | Louisa PD |
| Evaluation Period | Weeks 1-6 |

| CATEGORY | RATING | COMMENTS |
|---|---|---|
| Conduct | Meets Expectations | |
| Attitude | Meets Expectations | |
| Appearance | Meets Expectations | |
| Relationships With Others | Meets Expectations | |
| Completion of Assignments | Meets Expectations | |
| Written Communication Skills | Meets Expectations | |
| Verbal Communication Skills | Meets Expectations | |
| Leadership | Meets Expectations | |

| EXAMINATIONS | Initial Score | Retest Score | Rating | COMMENTS |
|---|---|---|---|---|
| Physical Fitness Entry Test | Pass | | Meets Expectations | 36 % |
| Academic Exam 1 | 80 | | Meets Expectations | |
| Academic Exam 2 | 72 | | Meets Expectations | |
| Vehicle Operations Practical | Pass | | Exceeds Expectations | |
| CJIS: MDT | Pass | | Meets Expectations | 70 % |
| PBLE Presentation: Report Calls | Pass | | Meets Expectations | |
| PBLE Presentation: Disorder | Pass | | Meets Expectations | |
| Work Zone Safety: Online Training | Pass | | Meets Expectations | 90 % |

| | | |
|---|---|---|
| ☒ Injury / Illness | Medical attention not required. | Agency notified. Call for update, if needed. |
| ☐ Absences | | |
| ☐ Discipline | | |
| ☐ Recruit Recognition | | |
| ☐ Class Leadership | | Leadership Status |

Additional Comments: Recruit Miller has successfully completed all training through week six of the academy. His academic GPA after the first two written examinations is 76 %. All Vehicle Operations training as well as the MDT and Work Zone Safety online courses have been completed.

Completed by: _Jon Unhd_
Class Coordinator

Approved by: _R.W. Ramsey_
Section Supervisor

I have reviewed this report and have been afforded an opportunity to discuss it with a class coordinator. My signature does not necessarily express agreement.

_Thaddeus P. Miller_
Recruit

**Department of Criminal Justice Training**
**Basic Training Branch**
**Recruit Progress Report**




| | |
|---|---|
| Class # | *457* |
| Recruit | *Thaddus Miller* |
| Agency | *Louisa PD* |
| Evaluation Period | *Weeks 7-12* |



| CATEGORY | RATING | COMMENTS |
|---|---|---|
| Conduct | Meets Expectations | |
| Attitude | Meets Expectations | |
| Appearance | Meets Expectations | |
| Relationships With Others | Meets Expectations | |
| Completion of Assignments | Meets Expectations | |
| Written Communication Skills | Meets Expectations | |
| Verbal Communication Skills | Meets Expectations | |
| Leadership | Meets Expectations | |

| EXAMINATIONS | Initial Score | Retest Score | Rating | Comments |
|---|---|---|---|---|
| Practical Exam I | Pass | | Meets Expectations | |
| Academic Exam 3 | 88 | | Meets Expectations | |
| BTO Written and Practical | Pass | | Meets Expectations | |
| DUI Written and Practical | Pass | | Meets Expectations | |
| CPR/AED Written Practicals | Pass | | Meets Expectations | |
| First Aid Written and Practicals | Pass | | Meets Expectations | |
| Physical Training Midpoint Evaluation | Fail | | Fails to Meet Expectations | |
| Vehicle Stops: PBLE Presentation | Pass | | Meets Expectations | |

| | | |
|---|---|---|
| ☐ Injury / Illness | | |
| ☐ Absences | | |
| ☒ Discipline | Conduct Violation.  Call if update needed. | Counseled |
| ☐ Recruit Recognition | | |
| ☐ Class Leadership | | Leadership Status |
| **Graduation Date: 08-29-14** | | |

Additional Comments: Recruit Miller has completed all training through week 12 of the academy. They currently have a GPA of 80 % on the academic examinations. They made an 88 % on the overall Breath Test Operator course and a 94 % on the final DUI Written Exam. They had a score of 46 % on their PT Midpoint Test which reflects an increase of 10 % since the beginning of training.  A score of 80 % or higher on the PT Exit Test would qualify them for the Excellence in Physical Fitness Award. He made 96 % on his First Aid/CPR/AED Written Exam.

Completed by: *Jon Vabel*
Class Coordinator

Approved by: *R.W. Ramsey*
Section Supervisor

I have reviewed this report and have been afforded an opportunity to discuss it with a class coordinator.  My signature does not necessarily express agreement.

*Thaddus N. Mott*
Recruit

**Department of Criminal Justice Training**
**Basic Training Branch**
**Recruit Progress Report**





| | |
|---|---|
| Class # | *457* |
| Recruit | *Thaddus Miller* |
| Agency | Louisa PD |
| Evaluation Period | Weeks 13-18 |

| CATEGORY | RATING | COMMENTS |
|---|---|---|
| Conduct | Meets Expectations | |
| Attitude | Meets Expectations | |
| Appearance | Meets Expectations | |
| Relationships With Others | Meets Expectations | |
| Completion of Assignments | Meets Expectations | |
| Written Communication Skills | Meets Expectations | |
| Verbal Communication Skills | Meets Expectations | |
| Leadership | Meets Expectations | |

| EXAMINATIONS | Initial Score | Retest Score | Rating | Comments |
|---|---|---|---|---|
| Handgun: Day Qualification | Pass | | Meets Expectations | 70 % |
| Academic Exam 4 | 72 | | Meets Expectations | |
| Academic Exam 5 | 83 | | Meets Expectations | |
| Criminal Investigations: PBLE Presentation | Pass | | Meets Expectations | |
| Handgun: Low Level Light Qualification | Pass | | Meets Expectations | 84 % |
| Shot Gun: Day Range Qualification | Pass | | Exceeds Expectations | 95 % |
| Shot Gun: Low Level Light Qualification | Pass | | Meets Expectations | 94 % |
| Rifle: Day Range Qualification | Pass | | Exceeds Expectations | 100 % |
| Rifle: Low Level Light Qualification | Pass | | Meets Expectations | 94 % |
| Practical Exam II | Pass | | Meets Expectations | |
| Patrol Activities: PBLE Presentation | Pass | | Meets Expectations | |
| Defensive Tactics: Written and Practical | Pass | | Meets Expectations | |
| Physical Training Exit Test | Pass | | Meets Expectations | 48 % |
| NPE: Presentation | Pass | | Meets Expectations | |

| | | |
|---|---|---|
| ☐ Injury / Illness | | |
| ☐ Absences | | |
| ☐ Discipline | | |
| ☐ Recruit Recognition | | |
| ☐ Class Leadership | | Leadership Status |

Additional Comments: Recruit Miller has completed all requirements for graduation from Basic Training. He finished with a final GPA of 79 % for the five written academic examinations. His combined average for the six firearm qualification courses was 89.5 %.

Completed by: *John Vinhel*
Class Coordinator

Approved by: *R.W. Ramsey*
Section Supervisor

## Progress Report Guidelines

*Conduct:* Evaluates behavior during and after class hours.

Fails to Meet Expectations – Fails to follow rules; poor manners; disrespectful toward staff, peers or others; argumentative; violates local, state and federal laws.

Needs Improvement –Counseled concerning behavior.

Meets Expectations – No conduct violations; respectful toward others; follows rules; obeys local, state and federal laws

Exceeds Expectations – Displays outstanding behavior; consistently respectful of others; steadfastly conducts self in a professional manner; conduct is an example to others; invariably well-mannered.

*Attitude:* Evaluates mental and emotional outlook; optimism; point of view.

Fails to Meet Expectations – Displays a negative mental or emotional outlook; outspoken against rules or staff; rationalizes mistakes or shortcomings; argumentative; considers critique a personal attack.

Needs Improvement – Displays ambivalent mental/emotional outlook; neither critical nor supportive of others and rules and staff; uninvolved in academy setting.

Meets Expectations – Displays a positive mental/emotional outlook; supportive of others/staff; accepts constructive criticism/ correction in a positive manner; possesses a sincere desire to improve and become a professional law enforcement officer.

Exceeds Expectations – Displays an outstanding mental and emotional outlook; consistently optimistic, eager, friendly and well mannered; outspoken in support of policies/rules; actively solicits criticism/feedback to further learning and improve performance.

*Appearance:* Evaluates physical appearance, dress and demeanor.

Fails to Meet Expectations – Dirty shoes; dirty or wrinkled uniform; uniform fits poorly or is improperly worn; hair unkempt or in violation of rules; equipment dirty, missing or inoperative; poor hygiene.

Needs Improvement – Uniform is disheveled; hair is generally messy; equipment is at times operative and other times inoperative.

Meets Expectations – Uniform neat and clean; uniform fits and is worn properly; leather and equipment is clean and operative; hair within regulations; shoes are shined.

Exceeds Expectations – Uniform neat, clean and tailored; shoes, equipment clean/shined; displays command bearing; an example for others.

*Relationships with Others:* Evaluates interaction with peers, staff and others.

Fails to Meet Expectations – Patronizes staff or peers or is antagonistic toward them; insubordinate, argumentative, sarcastic; resists instructions; considers self as superior; belittles others; not a "team player"; prejudicial, subjective or biased.

Needs Improvement – Does not fully understand or follow the chain of command; makes little effort to interact with group.

Meets Expectations – Adheres to the chain of command; accepts role as a recruit; good peer and staff relationships; accepted as a team/group member; at ease with members of other ethnic or racial groups.

Exceeds Expectations – At ease with all, including staff; respects and supports position of staff; appreciates other team members; works team to accomplish goals; assists others; understands cultural differences and uses understanding to resolve situations; objective.

*Completion of Assignments:* Evaluates class assignments and effort

Fails to Meet Expectations – Fails to complete assignments; habitually tardy submitting assignments; fails to complete reading assignments prior to class; assignments are consistently incorrect and of poor quality; exerts little or no effort towards achieving potential.

Needs Improvement – Moderately prepared for class; assignments partially and/or incorrectly completed; exerts minimal effort towards achieving potential.

Meets Expectations – Usually well prepared for class; assignments are usually complete, thorough and timely; exerts needed effort to achieve.

Exceeds Expectations – Assignments are consistently complete, timely, correct and thorough; work sets an example for others; seeks additional reading and work for self-improvement; exerts maximum effort towards achieving potential.

*Written Communication Skills:* Evaluates writing skills.

Fails to Meet Expectations – Cannot adequately express thoughts; writing is unclear or illegible; consistently contains poor grammar, punctuation and spelling.

Needs Improvement – Adequately expresses thoughts; writing is at times unclear; contains poor grammar, punctuation and spelling.

Meets Expectations – Adequately expresses thoughts; usually uses proper grammar, punctuation and spelling; writing is clear and neat.

Exceeds Expectations – Excellent at expressing thoughts in written form; writing is consistently clear and neat, utilizes proper grammar, punctuation and spelling; reports set the example for others.

*Verbal Communication Skills:* Evaluates speaking and listening skills.

Fails to Meet Expectations – Unable or unwilling to communicate thoughts; fails to listen to others' point of view; inappropriately uses commands instead of communication; consistently speaks either too loudly or too softly; alienates others when speaking.

Needs Improvement – Lacks confidence; seldom listens to others' point of view; occasionally uses inappropriate volume for the situation.

Meets Expectations – Adequately expresses; listens to others' point of view; uses commands only in appropriate situations; speaks at appropriate volume for the situation; can speak without alienating others.

Exceeds Expectations – Communicates in an outstanding manner speaking one-on-one or to a group; listens to others' point of view; verbally inspires others into positive actions; appropriately uses command presence to verbally control situations in a positive manner.

*Leadership:* Evaluates the ability to guide others with motivation, excitement and enthusiasm

Fails to Meet Expectations – Demonstrates little or no motivation to either lead or follow; shows antagonism toward or resists leadership

Needs Improvement – Demonstrates marginal enthusiasm and motivation; will follow when directed.

Meets Expectations – Demonstrates proper enthusiasm and motivation; encourages others; will lead if asked; good follower.

Exceeds Expectations – Highly motivated; leads others in a remarkable manner; consistently encourages others toward better attitudes and professionalism; leads by example without domination.

# JUSTICE AND PUBLIC SAFETY CABINET
## DEPARTMENT OF CRIMINAL JUSTICE TRAINING
### MEMORANDUM

**To:**         **Rob Ramsey**  ℛℛ
               **Evaluation Section Supervisor**
               **Basic Training Branch**

**From:**      **James Vanhook**
               **Basic Training Instructor**
               **Coordinator, Class 457**

**Subject:**   **Certificate of Acknowledgement**

**Date:**      **August 29, 2014**

**CC:**         **Thaddus Miller**
               **Flag Detail**
               **Class 457**

---

As Coordinator of Basic Training Class 457, I am recommending a certificate of recognition for Mr. Thaddus Miller.

Thaddus Miller volunteered to be part of the permanent flag detail for Class 457. In doing so, Mr. Miller gave a greater amount of his time to ensure that proper etiquette and performance were followed for the flag ceremony for the duration of their detail.

As a participant of this detail, each recruit dedicated his time to ensure that the flags were raised and lowered for the four weeks of their detail. In leading the flag ceremonies on Fridays, the recruits afforded the appropriate respect to the American Flag and Law Enforcement Memorial. An additional duty of the detail was the general upkeep of the Law Enforcement Memorial.

If Mr. Miller continues his duties as an officer with the same professionalism he has displayed at the academy, he will be an asset to his agency.

# Louisa Police Department
## Probationary Officer Review

| Probationary Officer: Jordan Miller | Eval. Period: 9/20/14 through 10/14/14 |
|---|---|
| Field Training Officer: Steven Wilburn | Report Date: 10/14/14 |

## CRITICAL PERFORMANCE TASKS:

| 1. Stress Control | Rating: ☐ 1  ☒ 3  ☐ 5 |
|---|---|

Task Reference Numbers: **0110,0111,0112,0113,0114,0115**

Justification/Other:  **Speaks with authority in a calm, clear voice.  Proper selections of words and knowledge of when and how to use them.  Obtains and maintains control through the use of proper amounts and techniques of force application.   Maintains composure and bearing.  Uses correct amount of physical force for the situation.  Exhibits the ability to control the situation verbally**

| 2. Decision Making/Problem Solving | Rating: ☐ 1  ☒ 3  ☐ 5 |
|---|---|

Task Reference Numbers:  0211,0212,0213,0214,0215,0216

Justification/Other:  Is able to reason out a problem, relate what is taught and experienced. Good perception and ability to make own decision. Is able to grasp the information, develop a solution and apply it in a timely manner. Maintains flexibility. Listen to all sides before making his/her  decision. Solicits other opinions/views

| 3. Driving Skill:  Moderate Stress/Emergency | Rating: ☐ 1  ☒ 3  ☐ 5 |
|---|---|

Task Reference Numbers:  0307,0308,0309,0310

Justification/Other:   Maintains control of the vehicle. Evaluates driving situations and reacts properly, i.e. proper speed for conditions. Appropriate use of emergency equipment. Exercises appropriate responsibility to other traffic and traffic control devices

| 4. Field Performance:  Non-Stress Conditions | Rating: ☐ 1  ☒ 3  ☐ 5 |
|---|---|

Task Reference Numbers:  0409,0410,0411

Justification/Other:  Properly assesses routine situations and takes appropriate action. Able to perform physical skills as needed. Performs several associated actions at a time

| 5. Field Performance:  Stress Conditions | Rating: ☐ 1  ☒ 3  ☐ 5 |
|---|---|

Task Reference Numbers:  0506,0507,0508

Justification/Other:  Exhibits calm and controlled attitude. Does not allow the situation to further deteriorate. Demonstrates acceptable reaction to the situation

| 6. Officer Safety | Rating: ☐ 1  ☒ 3  ☐ 5 |
|---|---|

Task Reference Numbers:  0622,0623,0624,0625,0626,0627,0629,0630,0631

Justification/Other:  Utilizes good officer safety principles when in the .Contact. role
Utilizes good officer safety techniques while in the Cover Role
Performs searches and pat-downs. Safely recovers evidence
Safely writes citations and handles radio communications.
Responsible for surveillance and control of all other subjects. Safely and
effectively conducts arrest situations, field interviews, and disturbances.
Maintains a good defensive posture and consistently applies
principles of officer safety.  Properly uses safety training.

| 7. Prisoner Control or Investigative Detention | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers:  0710,0711,0712,0713,0714,0715

Justification/Other:  Displays an awareness of potential danger from prisoners, suspicious persons, suspects, etc. Follows accepted safety principles. Maintains a position of advantage/stance. Conducts visual and physical searches. Proper handcuffing is used. Uses proper transportation for suspect and citizens.

| 8. Location | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers:  0810,0811,0812,0813,0814,0815,0816

Justification/Other:  Is aware of location while on patrol. Properly uses the street guide or map. Can relate location to destination. Arrives within reasonable amount of time.  Can provide others, directions to his location. Provides needed directions under stress conditions. Knows sector and beat area.

| 9. Self-Initiated Field Activity | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers:  0908,0914

Justification/Other:  Recognizes, initiates and investigates suspicious activities and law violations. Generally able to choose a solution, and analyzes response for further action by student, other officers or other agencies

| 10. Vehicle/Pedestrian Stops | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers:  1008,1009,1010,1011,1012,1013,1014

Justification/Other:  Chooses the proper location for the contact. Notifies dispatch of the location, license/pedestrian in question, make / model / race-gender age of the subject and reason for stop when necessary.
Records information on his/her log. Takes a position of advantage behind the vehicle/pedestrian. Uses all lighting to his/her advantage. Maintains visual contact. Uses proper approach

| 11. Interview/Interrogator Skills | Rating: | ☐ 1 | ☒ 3 | ☐ 5 |
|---|---|---|---|---|

Task Reference Numbers:  1106,1107

Justification/Other:  Recognizes and investigates the incident by obtaining a complete understanding of the facts. Separates facts from opinions

FREQUENT PERFORMANCE TASKS:

| 12. Driving Skill:  Non-Stress (Normal) | Rating: | ☐ 1 | ☐ 3 | ☒ 5 |
|---|---|---|---|---|

Task Reference Numbers:  1215,1216,1217,1218

Justification/Other: Sets good example of lawful, courteous driving. Displays dexterity and coordination while driving a police vehicle, i.e. operating radio, checking businesses and observing surrounding activity. Is not involved in accidents. Uses defense driving in emergencies and avoids what would have been an accident.

| 13. Radio | Rating: | | 1 | ☒ | 3 | | 5 |
|---|---|---|---|---|---|---|---|

Task Reference Numbers: 1311,1312,1313,1314,1315,1316

Justification/Other: Follows policy and accepted procedure. Has good working knowledge of radio procedures. Uses short concise transmissions (proper voice control). Copies radio transmissions directed to him/her and is aware of traffic in adjuring beats. Rarely requires the dispatcher to repeat radio information. Knows and uses proper radio terms

| 14. Report Writing | Rating: | | 1 | ☒ | 3 | | 5 |
|---|---|---|---|---|---|---|---|

Task Reference Numbers: 1416,1417,1418,1419,1420,1421,1422

Justification/Other: Knows most standard forms and understands format. Completes forms accurately and thoroughly with little assistance. Completes reports and forms in appropriate time. Level of usage of grammar, spelling, and neatness are satisfactory. Errors in this area are rare and do not impair understanding. Converts field situations into a logical sequence of thought with all required information. Uses computerized systems in a timely manner.

| 15. Arrest | Rating: | | 1 | ☒ | 3 | | 5 |
|---|---|---|---|---|---|---|---|

Task Reference Numbers: 1505,1506,1507,1508

Justification/Other: Has a good working knowledge of the law and applies probable cause to the situation, before an arrest is made. Can explain his /her action in a written or oral report. Is able to explain the disposition of the action, to the subject, dispatch or others. Applies the law in a fair manner.

| 16. Accident Investigation | Rating: | | 1 | ☒ | 3 | | 5 |
|---|---|---|---|---|---|---|---|

Task Reference Numbers: 1606,1607,1608,1609

Justification/Other: Probationary officer properly assess the situation and acts accordingly. He/She utilizes squad car or other means to properly protect the scene. Obtains the necessary information for completing the investigation. Properly explains process to individuals and provides them with necessary paperwork or information

KNOWLEDGE:

| 17. Departmental Policies & Procedures | Rating: | | 1 | ☒ | 3 | | 5 |
|---|---|---|---|---|---|---|---|

Task Reference Numbers: 1704,1705

Justification/Other: Familiar with most commonly applied department policies, regulations and procedures and complies with them. Is willing and able to look up unknown subjects or material

| 18. Criminal Laws | Rating: | | 1 | ☒ | 3 | | 5 |
|---|---|---|---|---|---|---|---|

Task Reference Numbers: 1805,1806

| Justification/Other: Has a working knowledge of commonly encountered criminal offenses. Relates elements to observed criminal activity. |
| --- |

| 19. Motor Vehicle Laws | Rating: | | 1 | ☒ | 3 | | 5 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Task Reference Numbers: 1904,1905 | | | | | | | |

| Justification/Other: Has a working knowledge of commonly encountered offenses. Relates elements to observed traffic activity |
| --- |

| 20. Patrol Procedures | Rating: | | 1 | ☒ | 3 | | 5 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Task Reference Numbers: 2006,2007 | | | | | | | |

| Justification/Other: Has knowledge of patrol procedures and tactics and applies knowledge to duties. Actively patrols his/her beat |
| --- |

| 21. Acceptance of Criticism/Feedback | Rating: | | 1 | | 3 | ☒ | 5 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Task Reference Numbers: 2110,2111 | | | | | | | |

| Justification/Other: Seeks criticism/feedback in order to improve performance. Doesn't argue or blame others. |
| --- |

| 22. Attitude Towards Police Work | Rating: | | 1 | ☒ | 3 | | 5 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Task Reference Numbers: ,2212 | | | | | | | |

| Justification/Other: . Expresses an active interest in law enforcement |
| --- |

| 23. Relationship with Citizens | Rating: | | 1 | ☒ | 3 | | 5 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Task Reference Numbers: 2311,2312,2313,2314,2315 | | | | | | | |

| Justification/Other: Courteous. Friendly and empathetic. Communicates in a professional and unbiased manner. "Service" oriented. At ease and does not feel threatened by presence of persons with different cultural background. Serves their needs objectively |
| --- |

| 24. Relationship with Department Members | Rating: | | 1 | ☒ | 3 | | 5 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Task Reference Numbers: 2408,2409,2410,2411 | | | | | | | |

| Justification/Other: Understands and maintains a good relationship with superiors and other officers. Is accepted as a group member. Shows respect towards the roles or duties of other department personnel. Is a Team Player |
| --- |

## APPEARANCE

| 25. General Appearance | Rating: | | 1 | ☒ | 3 | | 5 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Task Reference Numbers: 2508,2509,2510,2511,2512 | | | | | | | |

| Justification/Other: Uniform neat, clean. Uniform fits and is worn properly. Weapon, equipment and leather is clean and operative. Hair is within regulations. Shoes are shined |
| --- |

**REVIEW**

Probationary Officer: _Thaddus A. White_     Date: _10/16/14_

Field Training Officer: _____     Date: _10-16-14_

1st Line Supervisor: _____     Date: _____

Chief of Police: _____     Date: _____

Keefer

Page 1 of 10



# TASER
### ─ PROTECT LIFE ─

## TASER Information

| | |
|---|---|
| Serial # | X00-571192 |
| Model # | X26 |
| X26 Software Version | 22 |
| Dataport CD Version | 17.8 |
| Record Date Range | All Data |
| Computer Time Zone | Eastern Standard Time *DST |
| Using Daylight Savings Time | Yes |

## Downloaded By

| | |
|---|---|
| Name | Mark Wheeler |
| Dept | Lawrence Co Sheriff Office |
| Rank | Chief Deputy |
| Windows Version | Microsoft® Windows NT(TM) Service Pack 2 |
| Report Generated | 05/29/15 23:23:07 (local) |

## Recorded Firing Data

| Seq | GMT Time | Local Time | Duration | Temp | Battery |
|---|---|---|---|---|---|
| 0001 | | Incomplete Time Change Record | | | |
| 0002 | 06/01/10 18:58:09 | 06/01/10 14:58:09 | Old Time | | |
| 0003 | 06/01/10 18:58:09 | 06/01/10 14:58:09 | New Time | | |
| 0004 | 06/01/10 18:59:12 | 06/01/10 14:59:12 | 5 | 26 | 99 |
| 0005 | 06/01/10 18:59:18 | 06/01/10 14:59:18 | 5 | 26 | 99 |
| 0006 | 06/01/10 18:59:24 | 06/01/10 14:59:24 | 5 | 26 | 99 |
| 0007 | 07/22/10 00:19:01 | 07/21/10 20:19:01 | 2 | 29 | 98 |

| 0316 | 04/12/00 17:28:10 | 04/12/00 13:28:10 | 1 | 26 | 97 |
| 0317 | 05/03/00 12:58:21 | 05/03/00 08:58:21 | 2 | 27 | 96 |
| 0318 | 05/24/00 17:28:05 | 05/24/00 13:28:05 | 1 | 28 | 96 |
| 0319 | 06/02/00 17:14:57 | 06/02/00 13:14:57 | 1 | 28 | 96 |
| 0320 | 06/24/00 17:00:22 | 06/24/00 13:00:22 | 5 | 28 | 96 |
| 0321 | 06/24/00 17:00:29 | 06/24/00 13:00:29 | 5 | 29 | 95 |
| 0322 | 06/24/00 17:00:42 | 06/24/00 13:00:42 | 5 | 29 | 95 |
| 0323 | 06/24/00 17:00:48 | 06/24/00 13:00:48 | 5 | 29 | 95 |
| 0324 | 06/24/00 18:52:27 | 06/24/00 14:52:27 | Old Time | | |
| 0325 | 05/30/15 02:48:56 | 05/29/15 22:48:56 | New Time | | |

End of Report.

Wilburn



# TASER

PROTECT LIFE

## TASER Information

| | |
|---|---|
| **Serial #** | X00-429031 |
| **Model #** | X26 |
| **X26 Software Version** | 22 |
| **Dataport CD Version** | 17.8 |
| **Record Date Range** | All Data |
| **Computer Time Zone** | Eastern Standard Time *DST |
| **Using Daylight Savings Time** | Yes |

## Downloaded By

| | |
|---|---|
| **Name** | Mark Wheeler |
| **Dept** | Lawrence Co Sheriff Office |
| **Rank** | Chief Deputy |
| **Windows Version** | Microsoft® Windows NT(TM) Service Pack 2 |
| **Report Generated** | 05/30/15 02:04:56 (local) |

## Recorded Firing Data

| Seq | GMT Time | Local Time | Duration | Temp | Battery |
|---|---|---|---|---|---|
| 0001 | 11/07/08 17:56:42 | 11/07/08 12:56:42 | Old Time | | |
| 0002 | 11/07/08 17:56:41 | 11/07/08 12:56:41 | New Time | | |
| 0003 | 11/07/08 17:58:17 | 11/07/08 12:58:17 | 5 | 27 | 99 |
| 0004 | 11/07/08 17:58:23 | 11/07/08 12:58:23 | 5 | 28 | 99 |
| 0005 | 11/07/08 17:58:34 | 11/07/08 12:58:34 | 5 | 28 | 99 |
| 0006 | 12/10/08 19:31:37 | 12/10/08 14:31:37 | 5 | 20 | 98 |
| 0007 | 12/11/08 13:26:47 | 12/11/08 08:26:47 | 3 | 20 | 98 |

| 0338 | 10/13/14 04:15:14 | 10/13/14 00:15:14 | 1 | 29 | 98 |
| 0339 | 10/16/14 03:44:19 | 10/15/14 23:44:19 | 2 | 26 | 97 |
| 0340 | 10/28/14 02:26:39 | 10/27/14 22:26:39 | 2 | 29 | 97 |
| 0341 | 11/07/14 06:20:14 | 11/07/14 01:20:14 | 5 | 28 | 97 |
| 0342 | 11/18/14 01:49:21 | 11/17/14 20:49:21 | 1 | 19 | 96 |
| 0343 | 11/28/14 06:22:06 | 11/28/14 01:22:06 | 5 | 28 | 96 |
| 0344 | 12/26/14 03:42:11 | 12/25/14 22:42:11 | 5 | 19 | 95 |
| 0345 | 12/30/14 05:13:48 | 12/30/14 00:13:48 | 2 | 28 | 95 |
| 0346 | 01/27/15 03:21:34 | 01/26/15 22:21:34 | 5 | 29 | 94 |
| 0347 | 02/24/15 03:15:48 | 02/23/15 22:15:48 | 1 | 25 | 94 |
| 0348 | 02/25/15 05:44:26 | 02/25/15 00:44:26 | 5 | 25 | 94 |
| 0349 | 04/04/15 20:21:07 | 04/04/15 16:21:07 | 5 | 24 | 93 |
| 0350 | 04/06/15 04:09:26 | 04/06/15 00:09:26 | 5 | 29 | 92 |
| 0351 | 04/06/15 04:09:58 | 04/06/15 00:09:58 | 4 | 30 | 92 |
| 0352 | 04/10/15 04:19:23 | 04/10/15 00:19:23 | 5 | 28 | 92 |
| 0353 | 05/30/15 01:31:58 | 05/29/15 21:31:58 | 5 | 30 | 91 |
| 0354 | 05/30/15 01:32:03 | 05/29/15 21:32:03 | 5 | 30 | 91 |
| 0355 | 05/30/15 01:34:27 | 05/29/15 21:34:27 | 5 | 32 | 90 |
| 0356 | 05/30/15 01:34:35 | 05/29/15 21:34:35 | 5 | 32 | 90 |
| 0357 | 05/30/15 01:34:55 | 05/29/15 21:34:55 | 5 | 32 | 89 |
| 0358 | 05/30/15 06:22:17 | 05/30/15 02:22:17 | Old Time | | |
| 0359 | 05/30/15 06:04:20 | 05/30/15 02:04:20 | New Time | | |

Page 18 of 1

End of Report.

Miller

## TASER — PROTECT LIFE

### TASER Information

| | |
|---|---|
| Serial # | X00-373303 |
| Model # | X26 |
| X26 Software Version | 22 |
| Dataport CD Version | 17.8 |
| Record Date Range | All Data |
| Computer Time Zone | Eastern Standard Time *DST |
| Using Daylight Savings Time | Yes |

### Downloaded By

| | |
|---|---|
| Name | Mark Wheeler |
| Dept | Lawrence Co Sheriff Office |
| Rank | Chief Deputy |
| Windows Version | Microsoft® Windows NT(TM) Service Pack 2 |
| Report Generated | 05/30/15 02:00:22 (local) |

### Recorded Firing Data

| Seq | GMT Time | Local Time | Duration | Temp | Battery |
|---|---|---|---|---|---|
| 0001 | 05/22/08 18:44:33 | 05/22/08 14:44:33 | Old Time | | |
| 0002 | 05/22/08 18:44:32 | 05/22/08 14:44:32 | New Time | | |
| 0003 | 05/22/08 18:45:05 | 05/22/08 14:45:05 | 5 | 27 | 99 |
| 0004 | 05/22/08 18:45:12 | 05/22/08 14:45:12 | 5 | 27 | 99 |
| 0005 | 05/22/08 18:45:18 | 05/22/08 14:45:18 | 5 | 27 | 99 |
| 0006 | 06/19/08 20:53:53 | 06/19/08 16:53:53 | 4 | 28 | 98 |
| 0007 | 12/06/08 14:10:42 | 12/06/08 09:10:42 | 2 | 19 | 97 |

| 0558 | 05/04/15 22:21:14 | 05/04/15 18:21:14 | 4 | 20 | 56 |
| 0559 | 05/05/15 03:04:19 | 05/04/15 23:04:19 | 5 | 26 | 56 |
| 0560 | 05/05/15 03:04:45 | 05/04/15 23:04:45 | 5 | 27 | 56 |
| 0561 | 05/14/15 23:11:05 | 05/14/15 19:11:05 | 5 | 21 | 55 |
| 0562 | 05/15/15 03:42:53 | 05/14/15 23:42:53 | 1 | 27 | 55 |
| 0563 | 05/15/15 04:21:53 | 05/15/15 00:21:53 | 2 | 27 | 55 |
| 0564 | 05/15/15 23:31:09 | 05/15/15 19:31:09 | 1 | 29 | 54 |
| 0565 | 05/16/15 01:32:13 | 05/15/15 21:32:13 | 1 | 31 | 54 |
| 0566 | 05/16/15 08:59:23 | 05/16/15 04:59:23 | 1 | 24 | 54 |
| 0567 | 05/30/15 02:35:22 | 05/29/15 22:35:22 | 5 | 27 | 54 |
| 0568 | 05/30/15 07:20:49 | 05/30/15 03:20:49 | Old Time | | |
| 0569 | 05/30/15 05:59:32 | 05/30/15 01:59:32 | New Time | | |

End of Report.

Dep Kiefer

## TASER Information

| | |
|---|---|
| Serial # | X00-571192 |
| Model # | X26 |
| X26 Software Version | 22 |
| Dataport CD Version | 17.8 |
| Record Date Range | All Data |
| Computer Time Zone | Eastern Standard Time *DST |
| Using Daylight Savings Time | Yes |

## Downloaded By

| | |
|---|---|
| Name | Mark Wheeler |
| Dept | Lawrence Co Sheriff Office |
| Rank | Chief Deputy |
| Windows Version | Microsoft® Windows NT(TM) Service Pack 2 |
| Report Generated | 05/29/15 23:23:07 (local) |

## Recorded Firing Data

| Seq | GMT Time | Local Time | Duration | Temp | Battery |
|---|---|---|---|---|---|
| 0001 | | Incomplete Time Change Record | | | |
| 0002 | 06/01/10 18:58:09 | 06/01/10 14:58:09 | Old Time | | |
| 0003 | 06/01/10 18:58:09 | 06/01/10 14:58:09 | New Time | | |
| 0004 | 06/01/10 18:59:12 | 06/01/10 14:59:12 | 5 | 26 | 99 |
| 0005 | 06/01/10 18:59:18 | 06/01/10 14:59:18 | 5 | 26 | 99 |
| 0006 | 06/01/10 18:59:24 | 06/01/10 14:59:24 | 5 | 26 | 99 |
| 0007 | 07/22/10 00:19:01 | 07/21/10 20:19:01 | 2 | 29 | 98 |

| 0316 | 04/12/00 17:28:10 | 04/12/00 13:28:10 | 1 | 26 | 97 |
| 0317 | 05/03/00 12:58:21 | 05/03/00 08:58:21 | 2 | 27 | 96 |
| 0318 | 05/24/00 17:28:05 | 05/24/00 13:28:05 | 1 | 28 | 96 |
| 0319 | 06/02/00 17:14:57 | 06/02/00 13:14:57 | 1 | 28 | 96 |
| 0320 | 06/24/00 17:00:22 | 06/24/00 13:00:22 | 5 | 28 | 96 |
| 0321 | 06/24/00 17:00:29 | 06/24/00 13:00:29 | 5 | 29 | 95 |
| 0322 | 06/24/00 17:00:42 | 06/24/00 13:00:42 | 5 | 29 | 95 |
| 0323 | 06/24/00 17:00:48 | 06/24/00 13:00:48 | 5 | 29 | 95 |
| 0324 | 06/24/00 18:52:27 | 06/24/00 14:52:27 | Old Time | | |
| 0325 | 05/30/15 02:48:56 | 05/29/15 22:48:56 | New Time | | |

End of Report.