UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION No. 16-68-HRW

ESTATE OF BILLY COLLINS, JR;
BILLY JOSEPH COLLINS, ADMINISTRATOR                    PLAINTIFF

vs.        PLAINTIFF'S RESPONSE TO DEFENDANTS' ROBERTS,
           KEEFER AND WILHITE MOTION FOR SUMMARY JUDGMENT

STEPHEN WILBURN, ET AL                                 DEFENDANTS

** ** ** ** ** **

Comes now the Plaintiff, Estate of Billy Collins and hereby responds to the Defendants' Roberts, Keefer and Wilhite, Motion for Summary Judgment by submitting the following memorandum. Plaintiff submits that there are genuine issues of material fact for trial on claims of: Excessive Force; Qualified Immunity; and a Failure or Inadequate Training.

MEMORANDUM

The Plaintiff has submitted sufficient facts for summary judgment to be denied. Defendants must be willing to concede the most favorable view of the facts to the plaintiff in a qualified immunity summary judgment motion. *Sheets v. Mullins, 287 F.3d* 581, 585 (6th Cir. 2002). Additionally, when a plaintiff testifies to a material fact, that is sufficient to defeat summary judgment. *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 904 (6th Cir. 2006).

The *Churchwell* Court explicitly held for purposes of summary judgment the court must "take the plaintiff's version of the facts as true" and that if that testimony creates a question of fact, summary judgment should not be granted.

There is a videotape or magnetic storage of the incident which can be shown to the jury and they can determine if there was excessive force under the circumstances.  The Plaintiff has pending a motion to file the videotape as part of the record.

The jury can also decide if the police department and the City of Louisa failed to adequately train the officers in using force, including the taser and to encounter and control mentally problematic suspects.  Plaintiff will also introduce the video of the incident in issue; post mortem photos of Plaintiff's decedent showing massive blunt trauma evidence far beyond than what was testified to by the officers at their depositions. The jury can extrapolate themselves whether or not the force used against Collins was reasonable, based upon the photos and the autopsy photos.

There are issues of fact regarding whether the governmental entities involved are put on notice of a single incident failure to train claim, or in the alternative whether the entities' had a policy that disregarded training in use of force and in particular to this case, failure to train in regard to handling and using force on mentally disturbed suspects.

The Plaintiff also intends to call his expert, Dr. George Kirkham in regard to use of force and training.  Plaintiff has pending a motion for the Court to clarify its order regarding the limitations at trial of the opinions of Kirkham.

Defendant Officer Wilburn encountered the Plaintiff's decedent Billy Collins when Collins' vehicle had went off the road and into a small ditch on the roadside. Wilburn responded. Wilburn checked Collins' license and found it to be suspended. (Wilburn depo pp 48-49). Wilburn got Collins out of the car and administered Collins a field sobriety test. Wilburn did not smell alcoholic beverage.  Collins performed adequately on the field sobriety test including the eye gaze nystagmus.  He was not arrested for DUI.  There wasn't any post mortem evidence of intoxication or drug or alcohol use.

When asked why did Wilburn arrest Collins, he stated: "well, during that time talking with him, he kept screaming and cussing at people going by and being loud. I repeatedly asked him not to do that.  And I believe I did inform him that he was going to be charged for being disorderly. (Wilburn depo 55). Deputy Wilhite, Chief Fugitt and Officer Jordan Miller stopped at the roadside briefly.  Wilburn was the supervising officer throughout the ordeal. (Id at 56).

Things became a little more dramatic when Wilburn took Collins to the police station in Louisa for booking. Officer

Wilhite testified that he was dispatched to the police station because of "issues with the arrestee." (Wilhite depo. P10). He said: "Upon arrival Sergeant Wilburn, Patrolman Miller and Deputy Keefer were at the door of the police department trying to gain entry due to the arrestee being inside the foyer of the police department door barricading himself against the door making it impossible to gain entry. (Id at 11).

Essentially, when Wilburn was trying to take Collins up the police station stairs Collins grabbed hold of the rails. Collins made it up to the door he opened himself and then leaned against it to impede the officers. Some of the officers went around the building and entered an area behind Collins. The officers deployed their Taser and struck Collins at least three times in the back. Wilhite said when he approached the door to the police station, he testified:

"As I approached the door way I could see the arrestee had been hit with a Taser but the probes didn't seem to have made contact, and Mr. Collins continued to hold the door shut. Sergeant Wilburn went to another door of the police department and gained access to the door behind Mr. Collins, and then deployed his Taser to the back of Mr. Collins making contact, allowing officers access through the doorway. As I made entry the arrestee pushed deputy Keefer back toward my direction  putting me against another door……….

Arrestee went to the floor, putting me against another door. I'm sorry, Arrestee went to the floor where he refused to release his hand to officers. This was a confined space and I wasn't able to move toward arrestee until Patrolman Miller had changed position. I then deployed my ASP.  As to strikes on Collins: "I'm not for sure who actually contacted him because there were several of them already at the fire department, given the close proximity there.( Id pp 11-12). Wilhite admits to striking

4

Collins. (Id p 13).

Of course Wilburn believes the force he used was appropriate for the circumstances. He doesn't know how many times Collins was struck or tased. The morgue photos show otherwise and show more extensive injuries than that testified to by the officers. This in and of itself creates a genuine issue of triable fact.

Wilburn further testified:

"When I went to get him out of the car began cursing at me, telling me he wasn't going to get out, started getting agitated at that point. I finally talked him into getting out of the car to go in so we could do the paperwork. And then as we were walking up to the door, he grabbed on to the banister. I kept asking him to let go of it and he kept cussing at me, yelling I then attempted to put a handcuff on him. I told him I was going to have to handcuff him and get him inside. And then when I was trying to put the---I got it on one wrist, and he tensed up and pulled it away from me. And then after that I warned him that if he didn't let get go I was going to pull my taser and then that's when if pulled it out and delivered a drive-stun to his shoulder." (Wilburn depo p.59-60).

And then later on p 69, Wilburn said:

Once they were trying to get him handcuffed, I believe after after I'd tased him from behind, and the other officers came in was trying to gain control of him to handcuff him, he went to the floor on his stomach face down, and then they attempted, kept trying to handcuff him, and he was struggling with them, pulling away. And then once they did get him handcuffed, he was face down at that point.

Actually, Collins was dying at that point from the beating and tasing from the officers involved.

Wilburn testified that he entered the back door and used his taser on Collins several multiple times. (p. 77).

Several officers used their ASP on Collins but Wilburn denies using it himself. Wilburn testified that Officer Jordan Miller

struck Collins more than once. (Wilburn pp 70-71) According to Wilburn Collins struck Wilburn in the chest and took a swing at him. (p. 76).

The evidence shows multiple injuries, a nearly busted out eye, extensive head injuries and other injuries which are consistent with blunt force trauma from the beating but that are inconsistent to the officers' testimony description of the number of times Collins was beat as well as the number of times he was tased. This also creates a genuine issue of material fact which precludes summary judgment.

Officer Mason Keefer testified that Wilburn called for backup when he went to the scene. Keefer was down the street at the Sheriff's Office. He arrived on the scene and could see Collins in the doorway. Collins was blocking the exit door of the police station. (Keefer depo pp 18-19). Keefer testified that he knew of no way to diffuse the situation.. (Id p. 21). Keefer shot Collins in the back with the Taser from outside the building to the inside. If Keefer did not know how to diffuse the situation then he was trained with deliberate disregard for the rights of others, and more particular, a disregard for the rights of the mentally disturbed. The City of Louisa should have had a training program in dealing with the mentally disturbed. This is an obvious need to train. It's willfully in disregard for the rights of the mentally disturbed, as well as an obvious need to implement more training on the use of force and taser.

6

Officer Jordan Miller also arrived on the scene. Miller went in the back door with Keefer. (Keefer depo p. 34-35). He says: At this point Wilhit, Patrolman Miller and myself forced the foyer door open and attempted to gain control of Billy." Keefer then struck Collins in the face. Of course, Keefer testified that he only struck Collins in the jaw a couple of times and then tased him once is inconsistent with the evidence or at least raises a genuine issue of material fact. (Keefer depo p. 35-36).

Miller testified that he was the last officer on the scene. He said he seen Collins fighting with Wilburn. At that point, Wilburn had already tased Collins at least once. Miller was the first to use the probes on Collins; then Keefer, then Wilhite. (Miller dep. p. 12). After Miller deployed his taser he said that's when Collins opened the door, went inside, and closed it off from the officers. Wilburn went around back, gained entry and deployed his taser. At that point, Miller, Keefer and Wilhite busted through the door. Miller struck Collins on the forearms. (Miller depo pp18-19). The post mortem photos shows multiple blunt trauma to Collins forearms as well as extensive damage done to his head. This was not done with a couple of punches and a couple of tases.

Perhaps more importantly summary judgment is not proper because the officers actions were so egregious and lacking in the proper use of force, including the taser, that the entities

7

involved had constructive knowledge that the officers involved were ill trained in particular with encountering mentally disturbed suspects. This is an obvious need to train its officers in encountering mentally disturbed persons.

The officers had heard of rumors of Collins being mentally deficient. Collins had been taken to Eastern State Psychiatric Hospital by the Sheriff's Office and this was common knowledge in the community. There is a videotape of the entire incident and the jury can decide the issues themselves.

### *Fourth Amendment Claim-Excessive Force*

Fourth Amendment excessive-force inquiries require a "careful balancing" of the force used "against the countervailing governmental interests at stake," and we have held that there is "simply no governmental interest in continuing to beat an arrestee after he has been neutralized, nor could a reasonable officer think there is." *Lawler v. City of Taylor*, 268 Fed. Appx. 384, 387, (6th Cir. 2008). *Marvin v. City of Taylor*, 509 F.3d 234, 245 (6th Cir. 2007)(applying Fourth Amendment to excessive force claims that occurred (1) at the scene of the arrest; (2) on arrival at the police station sally port; (3) in the booking room; (4) outside the cell; and (5) outside the police station at the blood draw at the outside clinic; Id.

The Court held in *Dunigan v. Noble* 390 F.3d 486 (6th Cir 2004), that the Court balances the nature and quality of the

intrusion on a persons fourth Amendment interests against the countervailing governmental interests at stake *Ciminilllo v. Striecher* 434 F.3d 461 (6th Cir 2006) quoting from Graham 490 US at 396.

### Standards of Liability

Collins submits that the Constitutional standard for the officers conduct is governed by the Fourth Amendment deliberate indifference test as a threshold of liability rather than the more stringent "shock the conscience" test which is required for a Fourteenth or Eleventh Amendment claims.

Factors considered in determining whether the use of force was reasonable include: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)(citing *Tennessee v. Garner*, 471 U.S. 1, at 8-9, 105 S.Ct. 1694 at 1699-1700). The officer's subjective intentions are irrelevant to the Fourth Amendment analysis. In the case at bar, Collins crime was disorderly conduct and operating on a suspended license. Disorderly conduct is a misdemeanor and which means he was making a noise and according to Wilburn he was somehow annoying people traveling along the highway.

9

In *Gerstein v. Pugh*, 420 U. S. 103, the Court decided that a pretrial detention challenge was governed by the Fourth Amendment, noting that the Fourth Amendment establishes the minimum constitutional "standards and procedures" not just for arrest but also for "detention," id., at 111, and "always has been thought to define" the appropriate process "for seizures of person[s] . . . in criminal cases, including the detention of suspects pending trial," id., at 125, n. 27. And in *Albright v. Oliver*, 510 U. S. 266, a majority of the Court again looked to the Fourth Amendment to assess pretrial restraints on liberty. Relying on Gerstein, the plurality reiterated that the Fourth Amendment is the "relevan[t]" constitutional provision to assess the "deprivations of liberty that go hand in hand with criminal prosecutions." Id., at 274; see id., at 290.

Deliberate indifference means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference," *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)

This Court first clearly stated that the Fourth Amendment protects a person at least through the time he remains in the custody of the arresting officers. *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002); *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988)). In Phelps, this Court acknowledged that the

Fourth Amendment protections do not magically evaporate at the moment of arrest. "Our cases refute the idea that the protection of the Fourth Amendment disappears so suddenly." Phelps, 286 F.3d at 300. This Court then expanded Fourth Amendment protections through the booking process. "The Fourth Amendment says that a governmental 'seizure' of an individual must be 'reasonable,' a rule that applies to an officer's use of force during a booking procedure." *Lawler v. City of Taylor*, 268 Fed.Appx. 384, 386 (6th Cir. 2008) *Phelps v. Coy*, 286 F.3d 295, 300-01 (6th Cir. 2002)). In Lawler the Court interpreted Phelps as extending Fourth Amendment protections based on the status of the arrestee (through the booking process), not on the presence of the arresting officer at the time of the use of force. Using the Fourth Amendment analysis, this Court in Lawler determined that there was a triable issue of fact whether the officer's throwing Lawler to the ground and striking his face and circumstances confronting the officer. Id.

Under the Fourth Amendment reasonableness standard, an officer's use of force must be objectively reasonable. Factors considered in determining whether the use of force was reasonable include: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 394,

11

109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Tennessee v. Garner*, 471 U.S. 1, at 8-9, 105 S.Ct. 1694 at 1699-1700). The officer's subjective intentions are irrelevant to the Fourth Amendment analysis. Graham, at 397. The Sixth Circuit has held that mere noncompliance is not active resistance. See *Goodwin v. City of Painesville*, 781 F.3d 314, 323-24 (6th Cir. 2015) (holding that refusal to comply with officer's command to step outside his apartment was not active resistance); *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013) ("If there is a common thread to be found in our caselaw on this issue, it is that noncompliance alone does not indicate active resistance; there must be something more." Id.

Therefore, the less demanding deliberate indifference standard applies to the force used. This Court has equated deliberate indifference with subjective recklessness, where a plaintiff must show that the official knew of and disregarded a substantial risk of harm to the plaintiff. *Ewolski v. City of Brunswick*, 287 F.3d 492, 513 (6th Cir. 2002). Deliberate indifference means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference," *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). A review of the video shows the officers hitting, punching and tasing Billy Collins; screams, thumps and Wilburn

12

attempting to put his hand over the camera. He has wires attached to him and is seen falling and more screaming. The video depicts a seriously disturbed man. A transcript of the video is attached hereto. It shows a seriously agitated and mentally disturbed man.

Subjective recklessness can "be proven circumstantially by evidence showing that the risk was so obvious that the official had to have known about it." *Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003). *Phelps v. Coy*, 286 F.3d 295 (6th Cir. 2002).

Deliberate indifference means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference," *Sperle v. Mich. Dep't of Corr.*, 297 F.3d. 483, 493 (6th Cir. 2002). Subjective recklessness can "be proven circumstantially by evidence showing that the risk was so obvious that the official had to have known about it." *Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003).

The Court's Memorandum Opinion (Doc # 57) filed herein on May 25, 2017, limited the scope of the testimony of Plaintiff's expert, Dr. George Kirkham. The Order by its very words, precludes summary judgment because the Court held that the Plaintiff's expert may not give opinions about the depictions on the video because "...an expert regardless of his credentials is no more able than a jury to view and interpret the video" (Doc #

13

57, p. 4) to decide whether or not there was excessive force used on Collins. Therefore, the Court's Order in essence holds that there are genuine issues of material fact which preclude summary judgment.

The Court's Order also states: "In this case, there is little need for Plaintiffs expert to tell the jury whether the officers actions were objectively reasonable under the circumstances because a video captures the incident. (id p. 5), The Court is saying that there are issues of fact on the video that a jury can decide whether there was excessive force on the video.

The Supreme Court's recent decision in *Manuel v. Joliet*, No. 14-9496 (U.S. Mar. 21, 2017), is one of the most recent §1983 case, or is the most recent §1983 Sixth Circuit case. The Court held that a Fourth Amendment claim may arise from unlawful pretrial detention, that plaintiff could pursue a §1983 claim for unlawful pretrial detention, and that the Fourth Amendment properly governed such a claim, where he spent forty-eight days in jail "based entirely on made-up evidence".  Therefore the law remains that a pre trial detainee like Collins herein is protected by the Fourth Amendment standard of deliberate indifference to the rights of the Plaintiff for §1983 liability to attache when dealing with a pre trial detainee.

### *Failure to Train (Monell Claims)*

14

For tortious conduct to provide a basis for a government body's §1983 liability, the deprivation of the plaintiff's right must have been committed pursuant to the government body's official policy. Without such a showing, government bodies are not subject to vicarious liability for the torts of their agents. *Monell v. N.Y. City Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978). An act performed pursuant to a "custom" that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. Id. at 690-691, 98 S. Ct. at 2035-2036. Under certain circumstances, a local government can be liable under §1983 for negligent hiring or its failure to train or supervise its employees. *City of Canton v. Harris*, 489 U.S. 378, 380, 109 S.Ct. 1197, 1199, 103 L. Ed. 2d 412 (1989). But to establish liability, a plaintiff must demonstrate that the governmental action was taken with "deliberate indifference" as to its known or obvious consequences. Id. at 388, 109 S. Ct., at 1204.

There are four methods to establish governmental entity liability. One, Plaintff may point to an officially adopted or promulgated policy. Second, they may point to a custom or practice that is not written or formally adopted but that is

15

a pervasive, long standing practice that had the force of law. The third method is often referred to as the "City of Canton method" after the U.S. Supreme Court case in *City of Canton v. Harris*, 489 U.S. 378 (1989). This method embodies a failure to train a failure to supervise, a failure to discipline, a failure to adequately screen, etc..

In another case from the Sixth Circuit, the U.S. Supreme Court had held that in the right situations the decisions or the acts of a final policy maker, even if only on a single occasion may be attributed to the entity for liability purposes under Section 1983. *Pembaur v. City of Cincinnati* 475 U.S. 469 (1989). In Pembaur, the Court held that a county prosecutor's decision to send the deputy into a premises to get a witness constituted a county policy even though it occurred only once. City of Canton involved a woman who was arrested and placed in the booking area where she kept falling over. The officers kept propping her up. She had to be hospitalized. The Court held a non-policy making official liable due to a deliberate indifference to the woman's health.

The Court indicated two ways the plaintiff may show the requisite objective deliberate indifference. First, the plaintiff may argue that their was an obvious need to train. Id at 390. In other words, a governmental may be liable for a

16

single incidence because there was such an obvious need to train and therefore it was deliberately indifferent not to have adequate training. In these cases the entity has constructive knowledge of a need to train.

In *Gregory v. City of Louisville* 444 F.3d 725 (6th Cir 2006), the Sixth Circuit held that there was an obvious need to train officers. Interestingly, the Tenth Circuit held that there was an obvious need to train with respect to taking emotionally disturbed persons into custody. *Allen v. Muskogee* 119 F.3d 837 (10th Cir. 1997).

Both Wilburn and Jordan Miller testified that there were rumors regarding Collins' mental health. Miller testified that he had heard that Collins had mental difficulties. Suffice it to say, when Wilburn, Wilhite, Keefer and Miller encountered Collins they knew that they were dealing with a mentally disturbed person and there lack of training was so obvious that a reasonable juror could conclude that this systematic failure to train officers with regard to encountering mentally disturbed individuals, is a deliberate indifference to others like Collins. There is an obvious need in Louisa and Lawrence County to train its law enforcement personnel with respect with dealing with mentally disturbed individuals. The entities herein have an obvious need to train in regard to dealing with individuals like Collins.

17

### *Qualified Immunity*

Once again, Defendants must be willing to concede the most favorable view of the facts to the plaintiff in a qualified immunity summary judgment motion. *Sheets v. Mullins*, 287 F.3d 581, 585 (6th Cir. 2002); *Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity provides government officials "breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (internal citations and quotation marks omitted). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citation omitted). To determine whether a police

18

officer is entitled to qualified immunity, this Court applies
a two-prong test: "(1) whether the facts, when taken in the
light most favorable to the party asserting the injury, show
the officer's conduct violated a constitutional right; and
(2) Whether the right violated was clearly when a reasonable
official would understand that what he is doing violates that
right.'" Id. The Plaintiff's expert is expected to testify
(depending on the Plaintiff's Motion for Clarification) to
the objective reasonable test and that a reasonable officer
would know that under the circumstances of an obvious,
agitated emotionally charged suspect. The severity of his
crime was they yelled and apparently according to Wilburn,
bothered people passing by in cars. He was charged with
Disorderly Conduct. There was absolutely no risk of flight.
Collins was less resisting than being into a mentally
disturbed incident. As Officer Miller testified: He did not
know how to diffuse the situation. Obviously, the rest of the
Defendants did not know how to diffuse the situation.

Collins has a clearly established Fourth Amendment right
to not be subjected to excessive force, which in this case
resulted in death. The video shows the officers  unreasonably
beating, punching and kicking the Plaintiff's decedent. A
reasonable officer would know that a reasonable official
would know what he is doing in such conduct would violate a

19

clearly established right.  Under the Fourth Amendment's reasonableness standard it is clear that the Defendants are not entitled to qualified immunity. Plaintiff has submitted sufficient facts for summary judgment to have been denied.

WHEREFORE, Collins requests an appropriate order from the Court and a hearing on this motion if necessary.

> CURTIS LEGAL SERVICES, PSC
> 1212 Bath Avenue, Suite 620
> P.O. Box 1455
> Ashland, Kentucky 41105
> Telephone (606)324-5435
> Fax (606)324-5496
>
>
> /s/ Michael J. Curtis
> Michael J. Curtis
> ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the foregoing has this 15th day of June, 2017, been electronically filed with the Court for service on:

Chris J. Gadansky
Robert T. Watson
McBRAYER, McGINNIS, LESLIE & KIRKLAND, PLLC
9300 Shelbyville Road, Suite 110
Louisville, KY 40222

Jonathan C. Shaw
PORTER, SCHMITT, BANKS & BALDWIN
P.O. Drawer 1767
Paintsville, KY 41240

> /s/ Michael J. Curtis
> Michael J. Curtis

20